Angela D. Dodd, IL #6201068
SECURITIES AND EXCHANGE
COMMISSION
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Tel: 312-353-7400
dodda@sec.gov

Bridget Fitzpatrick DC #474946
Hope Augustini ME #007989
SECURITIES AND EXCHANGE
COMMISSION
100 F Street, NE
Washington, DC 20549
Tel: 202-551-4678
fitzpatrickbr@sec.gov
augustinih@sec.gov

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:                                              CASE NO. 14-35043

SAMUEL E. WYLY,                                     CHAPTER 11

   DEBTOR.
_____/

**OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION TO DEBTOR'S BUDGET AND REQUEST TO PAY ORDINAIRY LIVING EXPENSES**

   The Securities and Exchange Commission ("SEC" or "Commission") objects to the relief requested by Samuel E. Wyly ("Debtor") for authority to pay ordinary living expenses and approval of his budget. The Commission respectfully requests that this Court enter an Order denying the Debtor' Motion for Order on Estate Administration and Revised Budget (60 Days) until his living expenses are fully substantiated and proved reasonable.

**BACKGROUND**

The Debtor masterminded a long running scheme in which he and his now deceased brother Charles J. Wyly, Jr. (jointly, "Wylys" or "Defendants") established a multitude of offshore trusts and subsidiary entities in the Isle of Man ("IOM"), used those offshore entities to trade secretly in shares of four public companies on whose boards the Wylys sat, and failed truthfully to disclose their beneficial ownership of that stock as they were required to do under the federal securities laws. SEC v. Samuel E. Wyly et al., No. 10-cv-05760 (S.D.N.Y.)("District Court"). On May 12, 2014, after a six-week trial, a jury unanimously returned a verdict finding the Wylys liable for nine different violations of the federal securities laws, including that they intentionally engaged in a thirteen-year scheme to commit securities fraud, sold unregistered securities, and committed and aided and abetted the commission of numerous securities reporting violations.

On September 25, 2014, the District Court issued an Opinion which ordered the Debtor to pay disgorgement of $123,836,958.76, plus prejudgment interest. The parties agree that prejudgment interest will amount to $74,281,866.04, resulting in a total ill-gotten gain of $198,118,824.80. The Court also issued an Order against the Estate of Charles J. Wyly, Jr. in which the Court ordered the Estate to disgorge $63,396,733.97 in ill-gotten gains, plus prejudgment interest.

On November 3, 2014, the District Court entered an Order imposing a temporary asset freeze, financial discovery and an accounting of the Wylys' assets. The District Court ordered that once the Debtor's assets are accounted for and under the jurisdiction and control of the Bankruptcy Court, the asset freeze order will be dissolved as to those assets. The District Court allowed the necessary and reasonable living expenses of relief defendants in the amount of

$15,000 per month plus medical expenses, reasonable legal fees, tuition, taxes and reasonable expenses related to responding to SEC discovery requests. Judge Scheindlin's $15,000 monthly allowance serves as an excellent benchmark for reviewing the Debtor's budget.

The Commission objects to the Debtor's request for authority to pay ordinary expenses because his budget does not contain sufficient detail as to receipts or expenditures, and many of the requested expenses are inflated or unnecessary.

## DISCUSSION

The question of what constitutes "ordinary course living expenses" in individual Chapter 11 cases turns on whether those expenditures are reasonable and necessary rather than unusual or extraordinary. In re Seely, 492 B.R. 284, 290 (Bankr. C.D. Cal. 2013). The bankruptcy court will not approve lavish spending by individual Chapter 11 debtors. See In re Villalobos, 2011 WL 4485793 at *8 (B.A.P. 9th Cir.)(rejecting payments for maintenance of luxury vehicles and tuition for debtor's grandchildren); In re Harp, 166 B.R. 740. 755-56 (Bankr. N.D. Ala. 1993)(rejecting expenditures for vacation home rentals, football brunches, and resort vacations); In re Osborne, 2013 WL 2385136 (Bankr. E.D.N.C. 2013)(rejecting a "rainy day fund" because it served as an incentive for debtors to live above their means and spend on luxuries). Individual Chapter 11 debtors should not assume that they will be allowed to maintain affluent lifestyles during their Chapter 11 proceedings. See In re Wood, 68 B.R. 613 (Bankr. D. Hawaii 1986). Courts will not approve extravagant expenditures even where the debtor can prove that they have been historically paid as part of their prepetition expenses. Villalobos, 2011 WL 4485793 at *9. Moreover, debtors may only make expenditures on their own debts or to maintain assets for which they owe a legal obligation. See In re Baker, 503 B.R. 751, 757 (Bankr. M.D. Fla. 2013)(denying expenses for health care for a family member who was not a legal dependent of

3

the debtor).  Finally, expenses must be clearly delineated, contain sufficient detail and support to allow the parties and the court to determine their reasonableness.  The Commission has conferred with counsel for the Debtor regarding these expenditures but has not been able to resolve all of its concerns.

The Debtor's projected expenditures for November and December total a whopping $1,959,420.  These expenses do not include expenses that he anticipates in the future such as his quarterly allocation of $393,000 for the Family Office and property taxes.  It appears that Debtor's expenses can only go up.

The initial issue that must be addressed with regard to the Debtor's budget is whether his receipts should include income from his wife's assets and whether he should be shouldering the entire costs of his home and properties.  It is the Commission's understanding that the Debtor is currently married to and residing with Cheryl Wyly.  The Commission further understands that Cheryl Wyly may hold significant assets.  Pursuant to Section 541(a)(2), property of the estate includes all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the debtor. 11 U.S.C. § 541(a)(2).  Under Texas law, property possessed by either spouse during marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a).  Accordingly, any consideration of the Debtor's assets and expenditures should be considered in light of his wife's duties to contribute to their income and expenses.  As a resident of the Dallas home, she enjoys the benefits of its maintenance and housekeeping.  The Commission questions whether Cheryl Wyly should be contributing to the maintenance, utilities and staff costs.

The Commission staff raised concerns with Debtor's counsel regarding the Debtor's annuity income.  The Debtor discloses that he has not received annuity income from four trusts (Moberly Limited; Locke Limited; Audubon Limited; and Yurta Faf Limited).  It appears that the Debtor annually grosses approximately $24 million from these trusts.  The Commission understands that those payments should have been made in October but that the trustees have declared the trusts have insufficient cash liquidity to pay out.  Additional information is necessary to assess the validity of denying the annuity payment, including historical information about payments from those trusts and an accounting of their current cash reserves.

The Debtor receives a salary from the firm that manages the Family Office, Highland Stargate.  There is no detail or justification for this salary.  This may create a conflict since the Debtor has requested authority to continue to employ Highland Stargate to provide financial, accounting, payroll, insurance management, tax, and record-keeping.

The maintenance costs for the Debtor's Dallas residence continue to be inflated. Debtor's counsel has pointed to the age and prominence of the home to justify the costs. However, the Commission understands that the home has been extensively renovated and updated, obviating the need for increased maintenance fees for an aging residence.  Its location across from the country club also does not account for the expenses.  The Commission questions whether the Debtor should be paying the mortgage for the Aspen bookstore when it is a cash loss business.  It may be more prudent to allow the bank to exercise its rights rather than continuing to operate the business.  Further, the budget should not contain a contingency payment of $1,800. Osborne, 2013 WL 2385136 (denying rainy day funds).

The Commission notes that the Debtor's legal expenses are included in the budget under the umbrella of "ordinary expenses." Such expenses are subject to the retention of counsel under Section 327 of the Bankruptcy Code and approval of those fees and expenses upon application. 11 U.S.C. § 327.

## CONCLUSION

WHEREFORE, the Commission respectfully requests that this Court enter an Order denying the Debtor's Motion for Order on Estate Administration and Revised Budget (60 Days) until his living expenses are fully substantiated and proved reasonable.

Dated: November 5, 2014

        Respectfully submitted,

        _/s/ Angela D. Dodd_____
        Angela D. Dodd
        Senior Bankruptcy Counsel
        Tel: 312-353-7400
        dodda@sec.gov

        COUNSEL FOR SECURITIES
        AND EXCHANGE COMMISSION
        Chicago Regional Office
        175 W. Jackson Blvd., Suite 900
        Chicago, IL 60604

## CERTIFICATE OF SERVICE

I certify that on November 5, 2014, a copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

                                                          /s/ Angela D. Dodd

                                                          Angela D. Dodd