

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed January 9, 2015**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 14-35043-BJH |
| SAMUEL E. WYLY, | § | (Chapter 11) |
| | § | (Jointly Administered) |
| DEBTOR. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is a motion to enforce the automatic stay (the "**Motion**") that the debtor, Caroline "Dee" Wyly ("**Dee**"), brought against the U.S. Securities and Exchange Commission (the "**SEC**") after it named her as a relief defendant in its amended complaint filed in a separate civil action pending in the Southern District of New York. Oral argument on the Motion was originally scheduled for December 17, 2014 and was continued to January 7, 2015 by agreement of the parties. Having concluded argument on the Motion, it is now ripe for ruling. Because this Court concludes that the automatic stay does not enjoin SEC actions for disgorgement against relief defendants, the Motion will be denied.

I. BACKGROUND

The relevant facts are not in dispute and are set forth in an agreed stipulation between the parties. Stipulation Undisputed Facts, ECF No. 358. In 2010, the SEC filed a complaint in the Southern District of New York against brothers Samuel E. ("**Sam**") Wyly and Charles J. Wyly, Jr., among others, alleging ten counts of securities fraud.[1] *SEC v. Wyly*, No. 1:10-CV-05760 (S.D.N.Y. filed July 29, 2010) (the "**SEC Action**"). One count was dismissed, and a jury returned a verdict for the SEC on the remaining nine counts. As a result of the verdict, the district court presiding over the SEC Action (the "**District Court**") ordered Sam Wyly to disgorge $123,836,958.76 plus interest and ordered the probate estate of Charles Wyly to disgorge $63,396,733.97 plus interest as an approximate measure of the taxes avoided by the securities fraud.[2] *SEC v. Wyly*, No. 1:10-CV-05760, (S.D.N.Y Oct. 9, 2014), ECF No. 481.

On October 19, 2014, Sam filed a voluntary petition under chapter 11 of title 11 of the U.S. Code (title 11 will be referred to as the "**Bankruptcy Code**"). A few days later, Dee filed this bankruptcy case (October 23, 2014). The two cases are jointly administered as case number 14-35043, with Sam's bankruptcy case as the lead case.

On October 29, 2014, the SEC filed an amended complaint in the SEC Action (the "**Amended Complaint**") naming several additional parties, including Dee, as relief defendants.[3]

---

[1] Charles Wyly passed away in 2011. Donald R. Miller, Jr., in his capacity as independent executor of the estate of Charles Wyly, was substituted as defendant.

[2] The District Court originally ordered the estate of Charles Wyly to disgorge a slightly different amount on September 25, 2014, but the order was subsequently modified. The District Court has also approved an alternate measure of disgorgement based on profits causally connected to securities laws violations, but the alternate measure is only to be imposed if an appellate court disallows the measure of disgorgement based on avoided tax liability. *SEC v. Wyly*, No. 1:10-CV-05760, 2014 WL 7238271 (S.D.N.Y. Dec. 19, 2014).

[3] Other than Dee, the relief defendants named in the Amended Complaint are Cheryl Wyly, Evan Acton Wyly, Laurie Wyly Matthews, David Matthews, Lisa Wyly, John Graham, Kelly Wyly O'Donovan, Andrew Wyly, Christiana Wyly, Martha Wyly Miller, Donald R. Miller, Jr., Charles J. Wyly III, Emily Wyly Lindsey, Jennifer Wyly Lincoln, and James W. Lincoln.

Am. Compl., *SEC v. Wyly*, No. 1:10-CV-05760, (S.D.N.Y. Oct. 29, 2014), ECF No. 505. The SEC did not accuse any of the relief defendants of wrongdoing in the Amended Complaint. Instead, it alleges that Sam or Charles passed the proceeds of securities fraud to the relief defendants and seeks disgorgement of any ill-gotten gains remaining in their possession.[4]

Believing that the filing of the Amended Complaint against her violated the automatic stay provided by § 362(a) of the Bankruptcy Code, Dee filed the Motion, in which she seeks to enforce the automatic stay and, as her remedy for the alleged stay violation, seeks an Order from this Court directing the SEC to dismiss her from the SEC Action. Caroline D. Wyly's Mot. Enforce Automatic Stay, ECF No. 180. The SEC filed a response to the Motion (the "**Response**"), arguing that litigating against Dee in the SEC Action falls into the "police and regulatory" exception to the automatic stay created by § 362(b)(4) of the Bankruptcy Code. SEC's Opp'n Debtor's Mot. Enforce Automatic Stay, ECF No. 280. Dee's reply brief (the "**Reply**") explained why she does not believe that the police and regulatory exception applies here. Br. Supp. Caroline D. Wyly's Mot. Enforce Automatic Stay, ECF No. 300. Dee also filed a supplement to her Reply (the "**Supplement**"). Supplement Br. Supp. Caroline D. Wyly's Mot. Enforce Automatic Stay, ECF No. 348.

## II. JURISDICTION

The U.S. District Court for the Northern District of Texas has subject matter jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334. Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151

---

[4] The District Court entered a freeze order on November 3, 2014 to prevent the dissipation of any allegedly ill-gotten gains held by primary or relief defendants (the "**Freeze Order**"). *SEC v. Wyly*, ECF No. 518. The Freeze Order explicitly did not apply to any assets of Sam or Dee listed in their bankruptcy schedules filed in their jointly administered cases in this Court, neatly avoiding duplication of judicial effort between the SEC Action and these bankruptcy cases. Dee has now filed her schedules in this bankruptcy case.

grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28. Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts for either entry of a final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings). So, as relevant here, this Court exercises jurisdiction over Dee's chapter 11 bankruptcy case pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984. Venue is proper here under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

After Dee filed the Motion here, the SEC sought to resolve the issue before the District Court in the Southern District of New York. Whether the automatic stay applies to halt litigation in another forum "is an issue of law within the competence of both the court within which the litigation is pending and the bankruptcy court supervising the reorganization." *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir. 1985) (citations omitted). In part because the Motion was already set for hearing here, the District Court declined to address the issue, concluding that "it should be the Bankruptcy Court that makes this determination." Order at 4, *SEC v. Wyly*, No. 1:10-CV-05760, (S.D.N.Y. Dec. 2, 2014), ECF No. 548.

### III. ANALYSIS

#### A. *The Police and Regulatory Exception to the Automatic Stay*

The automatic stay of § 362 of the Bankruptcy Code is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat. Bank v. N. J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503, (1986) (quotation marks omitted) (quoting legislative history from the enactment of the Bankruptcy Code). The automatic stay is an injunction created by the filing of a petition under title 11 and arises automatically upon the filing of that petition. 11 U.S.C. § 362(a).

The stay explicitly enjoins a set of specific acts against a debtor in bankruptcy or a bankruptcy estate, including the commencement of judicial proceedings against the debtor. 11 U.S.C. § 362(a)(1). The automatic stay prevents a race among the debtor's creditors to reach the debtor's assets by providing breathing room for the debtor to reorganize her affairs. *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). The stay benefits all creditors by ensuring an equitable distribution of estate assets. *Id.*

The automatic stay is not unlimited, however. Section 362(b) sets forth exceptions to the stay for acts that Congress considered too important to be hindered by the filing of a bankruptcy case. 11 U.S.C. § 362(b). The police and regulatory exception is one such provision:

> The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay . . .
> > (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.[5]

11 U.S.C. § 362(b)(4).

The police and regulatory exception is designed to ensure that the automatic stay does not impede the government's ability to protect public health and safety. *In re Halo Wireless, Inc.*, 684 F.3d 581, 587 (5th Cir. 2012) (quoting H.R. Rep. No. 95-595, at 343 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299). Congress intended the exception to prevent the Bankruptcy Code and the bankruptcy courts from becoming a "haven for wrongdoers." *Id.* (citing cases from the Second,

---

[5] The exception was amended in 1998. Chemical Weapons Convention Implementation Act, Pub. L. No. 105-277, § 603, 112 Stat. 2681-886 (1998). In addition to adding language relevant to chemical weapons and increasing the provisions of § 362(a) to which the exception applies, the amendment consolidated former subsections § 362(b)(4) and (b)(5) into the new § 362(b)(4). Cases applying § 362(b)(5) as it existed prior to 1998 continue to be used to interpret § 362(b)(4). *See In re Halo Wireless, Inc.*, 684 F.3d 581, 587 n.5 (5th Cir. 2012).

Third, Eight, and Ninth Circuits). Therefore, § 362(b)(4) permits the government to commence and continue judicial proceedings to enforce its police and regulatory power.

To determine whether the police and regulatory exception applies to a given case, courts apply the "public policy" test and the "pecuniary interest" test. *Halo Wireless*, 684 F.3d at 588. "The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights." *Id.* (quoting *In re Nortel Networks, Inc.*, 669 F.3d 128, 139-40 (3d Cir. 2011)) (internal quotation marks omitted). "The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health." *Id.* "Under the pecuniary purpose and public policy tests, a bankruptcy court must determine whether the particular regulatory proceeding at issue is designed primarily to protect the public safety and welfare." *Id.* at 595 (internal quotation marks and alterations omitted).

Applying these tests is not as simple as it may seem. Public policy interests can involve more than just health and physical safety and, though the government must be acting to vindicate something more than a pecuniary interest, the remedy can be monetary in character. *See, e.g.*, *NLRB v. 15th Ave. Iron Works, Inc.*, 964 F.2d 1336, 1337 (2d Cir. 1992) (entry of a default judgment by the NLRB against the debtor fit within the exception, except for requirements in the NLRB order for payment to union funds); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986) (entry of a money judgment by the NLRB against the debtor fit within the exception); *CFTC v. Co Petro Mktg. Grp., Inc.*, 700 F.2d 1279, 1283-84 (9th Cir. 1983) (entry of an injunction requiring the debtor to disgorge payments received from unlawful activities fit within the exception).

Dee does not dispute that the police and regulatory exception permits the SEC to enforce the securities laws against a debtor alleged to have violated those laws.  Courts have consistently held that SEC actions fall within the police and regulatory exception to the automatic stay, including actions seeking disgorgement.  *See, e.g.*, *SEC v. First Fin. Grp. of Texas*, 645 F.2d 429, 437 (5th Cir. 1981); *SEC v. Friedlander*, No. 01-CIV-4658, 2002 WL 1628832, at *2 (S.D.N.Y. July 23, 2002); *SEC v. Towers Fin. Corp.*, 205 B.R. 27 (S.D.N.Y. 1997).  As the Fifth Circuit explained in a different context, "court-ordered disgorgement payments [are] in essence an injunction in the public interest rather than a mere money judgment[6] or debt."  *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 74 (5th Cir. 1993) (internal quotation marks omitted) (quoting *SEC v. Huffman*, 996 F.2d 800 (5th Cir. 1993)).

Neither is Dee arguing that the SEC is trying to enforce a money judgment, which would violate the stay even if the SEC were acting pursuant to its police and regulatory power.  11 U.S.C. § 362(b)(4) (acts permitted by the police and regulatory exception "include[e] the enforcement of a judgment other than a money judgment").  Indeed, the SEC agrees that "[i]f the District Court rules favorably on the Amended Complaint and fixes an amount of disgorgement against [Dee], the SEC could not enforce the judgment outside of this Court."  Response 11.

Instead, Dee argues that the police and regulatory exception does not apply here because she is merely a relief defendant in the SEC Action.  Reply ¶ 18.  No one has accused Dee of violating securities laws.[7]  According to Dee, the only reason the SEC added her as a relief defendant is because it realized that Sam and the probate estate of her late husband, Charles, may

---

[6] The *AMX* and *Huffman* line of cases involved the Debt Collection Procedures Act, not the police and regulatory exception.  That line of cases is helpful to understand how court-ordered disgorgement differs from a judgment for damages at law.  It does not apply to the question of whether enforcement of a disgorgement order is an act to enforce a judgment other than a money judgment, which is not stayed under § 362(b)(4).

[7] In fact, Dee does not concede that she holds any ill-gotten assets in which she has no legitimate claim.  Supplement 2 n.2.

be unable to satisfy the District Court's disgorgement order. Reply ¶ 18. As a result, Dee views the SEC Action against her as a mere collection action, not a proceeding to enforce securities laws. *Id.* However, Dee cites no cases to support her argument that suits by governmental units against relief defendants who are debtors in bankruptcy are halted by the automatic stay.

For its part, the SEC cites to three cases in which courts have held that a proceeding against a relief defendant to enforce securities laws falls within the police and regulatory exception. Response 10 (citing *SEC v. Smith*, 2005 WL 2875546, *3 (S.D. Ohio Nov. 2, 2005); *In re D'Angelo*, 409 B.R. 296 (Bankr. D.N.J. 2009); *In re Rothschild Reserve Int'l, Inc.*, Case No. 01-30448 (Bankr. S.D. Fla. May 3, 2001)).[8] As far as the parties and this Court could determine, these are the only three cases deciding this precise issue. Though they may be persuasive authority, these cases are not binding on this Court.

### B. Relief Defendants

To determine whether the police and regulatory exception applies in this case, we must understand the nature of SEC actions for disgorgement against relief defendants.

> A relief defendant, sometimes referred to as a "nominal defendant," has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief. A relief defendant is not accused of wrongdoing, but a federal court may order equitable relief against such a person where that person (1) has received ill-gotten funds, and (2) does not have a legitimate claim to those funds.

*Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009). The two-prong test applied to a relief defendant is sometimes called the *Cavanagh* test, after the Second Circuit case in which the test was articulated. *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) (*Cavanagh I*). Whether a relief defendant indeed lacks a legitimate claim to ill-gotten assets for the purposes of *Cavanagh*'s second prong depends on the nature of the relief defendant's interest in the assets and the means

---

[8] *Rothschild* is an unreported case. The SEC attached it to their Response as Exhibit 3.

by which the assets passed to the relief defendant. *Janvey*, 588 F.3d at 835; *see also CFTC v. Walsh*, 618 F.3d 218, 226 (2d Cir. 2010) (citing *Janvey* among other examples of legitimate and illegitimate claims under the *Cavanagh* test).

Dee frames the issue of whether the police and regulatory exception applies to relief defendants by asking two questions: (i) what happens if primary defendants Sam and the probate estate of Charles fully satisfy any disgorgement order entered in the SEC Action, and (ii) what regulatory function is served by pursuing Dee for the proceeds of securities fraud she did not commit? According to Dee, if the answers are (i) Dee owes nothing to the SEC, and (ii) none, that undermines the regulatory nature of the SEC Action as to the relief defendants. Though Dee's questions helpfully guide the application of the pecuniary interest and public policy tests to the situation here, the answers are not as Dee suggests.

Dee's first question suggests that her relationship with the SEC is purely pecuniary, as though she were a guarantor of a debt from whom the SEC could recover nothing if it were fully satisfied by the probate estate. This is an inaccurate view of both the purpose and practice of the disgorgement remedy as applied to relief defendants. Disgorgement is an appropriate remedy against relief defendants, even though they violated no securities laws themselves, "because they profited from the fraud and have no just claim to their profits." *SEC v. Cavanagh*, 445 F.3d 105, 118 (2d Cir. 2006) (*Cavanagh II*). Disgorgement acts to prevent unjust enrichment, not to compensate victims or to punish wrongdoing. *Id.* at 117.

Furthermore, there is no guarantee that the ultimate remedy against Dee will operate as she implies, by reducing her liability based on the amount paid by the primary defendants. The District Court has "broad equitable power to fashion appropriate remedies" for violation of the securities laws, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996); *see also SEC v. Wyly*,

No. 10-CV-5760 SAS, 2014 WL 3739415, at *2 (S.D.N.Y. July 29, 2014), and this discretion extends to allow an appropriate measure of disgorgement from relief defendants, *Cavanagh II*, 445 F.3d at 118. In fact, in *Cavanagh II*, the Second Circuit affirmed a district court judgment which ordered relief defendants to disgorge a sum certain, while the primary defendants were ordered to reduce the amount they were required to disgorge by the amount actually paid by relief defendants. *Id.* at 109-10. If the District Court were to order disgorgement in this case as was done in *Cavanaugh II*, Dee's liability may well be entirely unaffected by the amount the probate estate ultimately pays on the disgorgement order.

Dee's second question builds on the first, challenging whether there is any public policy interest underlying SEC suits against relief defendants for disgorgement. She argues that the SEC added her as a relief defendant to secure collection, not for any regulatory purpose. Reply ¶ 18; Supplement 2. Dee points to several courts which have noted that the SEC brings suit against relief defendants "purely as a means of facilitating collection." *Janvey*, 588 F.3d at 834 (quoting *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191-92 (4th Cir.2002)). She also points out that "[t]he paradigmatic nominal defendant is a trustee, agent, or depositary." *S.E.C. v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998), *quoted in* Supplement 2.[9] If she is before the District Court merely to help the SEC collect a sum of money, as Dee's argument goes, then it cannot be for any public policy or regulatory purpose pursuant to securities enforcement.

Courts, however, have consistently held that the SEC seeks disgorgement against relief defendants to advance the same public policy as when it does so against primary defendants. For

---

[9] Much of the language describing relief defendants originated in *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991), a Seventh Circuit case widely quoted or cited with approval for this issue. *See Janvey* at 834, 835 n.2; s*ee also, e.g.*, *Cavanagh II*, 445 F.3d at 109 n.7 (citing *Cherif*); *S.E.C. v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (quoting *Cherif*); *Colello*, 139 F.3d at 676 (quoting *Cherif*). In *Janvey*, though the Fifth Circuit quoted the Fourth Circuit in *Kimberlynn Creek Ranch* for the "facilitating collection" language and the Ninth Circuit for the "paradigmatic" nominal defendants, both quotes are directly traceable back to *Cherif*. *See Colello* at 676 (quoting *Cherif* at 414), *quoted in Kimberlynn Creek Ranch* at 191-92.

example, with respect to the second prong of the *Cavanagh* test for relief defendants, one does not acquire a legitimate claim to the proceeds of wrongdoing one receives by gift. *CFTC v. Walsh*, 618 F.3d at 226. There is a clearly articulated public policy animating that rule: "[t]o hold otherwise would allow almost any defendant to circumvent the SEC's power to recapture fraud proceeds by the simple procedure of giving the proceeds to friends and relatives, without even their knowledge." *S.E.C. v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (citing *Cavanagh I*, 155 F.3d at 137).[10] The *D'Angelo* court noted that disgorgement actions against relief defendants further the SEC's "public policy mission of protecting investors and safeguarding the integrity of the markets" when it held that SEC actions against relief defendants fell within the police and regulatory exception to the automatic stay. *In re D'Angelo*, 409 B.R. 296, 298 (Bankr. D.N.J. 2009).

Even the very elements of the *Cavenaugh* test align with the public policy and pecuniary interest tests. The SEC acts in the public interest by attempting to show that Dee received funds derived from securities fraud, and it satisfies more than its bare pecuniary interest because it must show that Dee has no legitimate claim to the funds in question. The police and regulatory exception to the stay was designed to be consistent with exactly this type of policy.

This Court therefore concludes that the SEC acted primarily in the interest of public welfare when it named Dee as a relief defendant in the SEC Action; and thus its action falls within the exception to the automatic stay under § 362(b)(4). *Cf. In re Halo Wireless, Inc.*, 684 F.3d 581, 595 (5th Cir. 2012).

---

[10] As the *Janvey* court explained, *George* is entirely consistent with earlier cases and fully aligned with Fifth Circuit principles of analyzing actions against relief defendants. *Janvey*, 588 F.3d at 835 n.2.

### C. *Practical Effect of the Motion*

Even if this Court were to grant the Motion and order the SEC to dismiss Dee from the SEC Action, the SEC may be entitled to relief from the stay "for cause" to add her back in as a relief defendant in the SEC Action. 11 U.S.C. § 362(d)(1). This is so because the District Court has spent considerable time determining the legal and factual issues surrounding the complicated transactions giving rise to the securities law violations by Sam and Charles Wyly. Further, all of the other relief defendants are Wyly family members who are alleged to have received ill-gotten gains from the securities fraud committed by Sam and Charles. Accordingly, in deciding the issues surrounding the other relief defendants, the District Court will spend considerable time determining the legal and factual issues raised by the SEC and the other relief defendants. In all likelihood, those issues will substantially overlap with any issues Dee may raise with respect to her alleged receipt and continued possession of alleged ill-gotten gains. In other words, facts relevant to whether Dee illegitimately holds proceeds of securities laws violations committed by Charles or Sam will likely be intertwined with facts relevant to whether the other relief defendants illegitimately hold proceeds of the same violations. From the standpoint of judicial economy, it likely would make the most sense for the District Court, in one coordinated proceeding, to liquidate the amount of alleged ill-gotten gains of the securities fraud that all relief defendants allegedly received and still possess.

Granting the Motion, then, may ultimately accomplish little as the Court expects that the SEC would seek relief from any applicable stay so that it could proceed against all relief defendants simultaneously in the SEC Action. This is particularly true given the SEC's express agreement that it simply seeks to liquidate its potential claim against Dee in the District Court and then return here to seek to collect any such claim as part of Dee's bankruptcy case.

## IV. CONCLUSION

The SEC did not violate the automatic stay when it filed the Amended Complaint in the SEC Action naming Dee as a relief defendant. The SEC acts to enforce its police and regulatory power when it attempts to obtain a disgorgement judgment against Dee for any ill-gotten gains she allegedly received from the securities fraud the jury found Sam and Charles Wyly to have committed.

Accordingly, the Motion must be, and hereby is, **DENIED**.

**SO ORDERED.**

### END OF MEMORANDUM OPINION AND ORDER ###