Josiah M. Daniel, III, SBT # 05358500
James J. Lee, SBT # 12074550
Paul E. Heath, SBT # 09355050
Rebecca L. Petereit, SBT # 24062776
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214-220-7700  Fax: 214-220-7716
jdaniel@velaw.com; jimlee@velaw.com
pheath@velaw.com; rpetereit@velaw.com
**COUNSEL FOR THE DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 14-35043** |
| | § | |
| **SAMUEL EVANS WYLY, et al.** | § | **Chapter 11** |
| | § | |
| **DEBTORS** | § | **Jointly Administered** |

## DEBTOR SAM WYLY'S BRIEF SUPPORTING
## MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY

# TABLE OF CONTENTS

I.    Dubinsky is unqualified as a foreign trusts expert, and thus is unqualified to opine in this case about foreign trusts. ...................................... 4

II.   Dubinsky's general accounting knowledge is not being used in a manner that would help the finder of fact. ........................................................ 6

   A.   Dubinsky's recitation of stipulated facts and previous findings is unhelpful. ...................................................................................... 7

   B.   Dubinsky's opinions about the Wylys' tax returns are irrelevant and unhelpful. ...................................................................................... 9

III.  Dubinsky's opinions about the Wylys' intent are speculative, unreliable, unhelpful, and inadmissible. ...................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Brickley v. Scattered Corp. (In re H & M Oil & Gas, LLC),*
    511 B.R. 408 (Bankr. N.D. Tex. 2014) (Houser, J.)................................................. 3, 7

*Daubert v. Merrill Dow Pharms.,*
    509 U.S. 579 (1993) .................................................................................... 1, 3, 4

*Factory Mut. Ins. Co. v. Alon USA L.P.,*
    705 F.3d 518 (5th Cir. 2013) ........................................................................... 7

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.,*
    96 F.3d 135 (5th Cir. 1996) ........................................................................... 11

*Fisher v. Halliburton,*
    No. CIV. A. H-05-1731, 2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) .................... 11

*Floyd v. Hefner,*
    556 F. Supp. 2d 617 (S.D. Tex. 2008) ............................................................. 11

*Green v. CBS Broad., Inc.,*
    No. 3:98-CV-2740-T, 2000 WL 33243748 (N.D. Tex. Dec. 19, 2000), *aff'd*
    286 F.3d 281 (5th Cir. 2002) .......................................................................... 11

*Hathaway v. Bazany,*
    507 F.3d 312 (5th Cir. 2007) .......................................................................... 16

*Highland Capital Mgmt., L.P. v. Schneider,*
    379 F. Supp. 2d 461 (S.D.N.Y. 2005) .............................................................. 7

*In re Air Crash Disaster at New Orleans, La.,*
    795 F.2d 1230 (5th Cir. 1986) ........................................................................ 7

*Jeasonne v. Sutherland Bldg. Material Centers, L.P.,*
    No. CIV.A. 12-1905, 2013 WL 4893787 (W.D. La. Sept. 11, 2013) ........................ 7

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999) ...................................................................................... 4

*Lewis v. Par. of Terrebonne,*
    894 F.2d 142 (5th Cir. 1990) .......................................................................... 11

*Lofton v. Gen. Motors Corp.,*
    33 F.3d 1379 (5th Cir. 1994) (unreported) ........................................................ 5

*Marlin v. Moody Nat. Bank, N.A.,*
    248 Fed. Appx. 534 (5th Cir. 2007) (unreported)................................................ 11

*Matthews v. Ashland Chem., Inc.,*
    770 F.2d 1303 (5th Cir. 1985)......................................................................... 7

*Moore v. Ashland Chem., Inc.*,
   151 F.3d 269 (5th Cir. 1998) ................................................................. 3

*Owen v. Kerr-McGee Corp.*,
   698 F.2d 236 (5th Cir. 1983) ................................................................. 7

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ................................................................. 4

*Salas v. Carpenter*,
   980 F.2d 299 (5th Cir. 1992) ............................................................... 11

*United States v. Naegele*,
   471 F. Supp. 2d 152 (D.D.C. 2007) ..................................................... 10

*United States v. Prouse*,
   945 F.2d 1017 (8th Cir. 1991) ............................................................... 5

*Viterbo v. Dow Chem. Co.*,
   826 F.2d 420 (5th Cir. 1987) ............................................................... 16

*Wilson v. Woods*,
   163 F.3d 935 (5th Cir. 1999) ............................................................. 4, 5

## Rules

FED. R. EVID. 104(a) ............................................................................... 3

FED. R. EVID. 602 .................................................................................. 7

FED. R. EVID. 702 .......................................................................... 1, 3, 4

FED. R. EVID. 702(a) .......................................................................... 7, 9

Fed. R. Evid. 702(c)-(d) ...................................................................... 11

Fed. R. Evid. 704 ................................................................................. 7

FED. R. EVID. 802 .................................................................................. 7

Samuel Evans Wyly (the "**Debtor**" or "**Sam Wyly**") objects under Fed. R. Evid. 702 and *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579 (1993), to the purported expert opinions and testimony of Bruce Dubinsky, and for the reasons stated below respectfully requests that the Court exclude Dubinsky's testimony from trial.

## SUMMARY

Bruce Dubinsky is a CPA whom the Department of Justice hired to provide the following three "expert" opinions, quoted in full:

- **[Opinion 1]** The Wyly Brothers established and controlled an elaborately complex network of numerous offshore entities in known tax havens that engaged in a series of financial transactions designed to avoid detection and taxation by the U.S. taxing authorities;

- **[Opinion 2]** The Wyly Brothers' transactions involving transfers of stock, options, warrants, and other property to their offshore controlled entities lacked true economic substance and were structured in a manner to avoid paying U.S. individual income and gift taxes; and

- **[Opinion 3]** The Wyly Brothers' original U.S. federal income tax filings from 1992-2013 were false and misleading and concealed the true nature and substance of the transfer of stock options, warrants, and stock, and other transactions described above.

App. 12 (Dubinsky Report at 4). These opinions merely restate the government's legal argument, do not assist the Court in understanding issues using specialized knowledge, and are not based on any reliable methodology. As such, none of these opinions is admissible.

First, although Dubinsky may be qualified as an expert on some matters, he

has no expertise with foreign trusts.[1] In fact, in Dubinsky's many years advising hundreds of clients, including "dozens and dozens" of individuals with "multimillions" in assets, he never advised a **single** client with respect to foreign entities in known tax havens such as the Isle of Man ("IOM"), Bermuda, and the Cayman Islands.[2] Dubinsky thus lacks the requisite expertise to offer his first two opinions that impugn the purpose, "design," and "structure" of various foreign trusts.

Second, Dubinsky's report primarily consists of facts that he copied from stipulations, news articles, and prior court opinions, but Dubinsky admits that he will not be the "bearer" of facts at trial.[3] Dubinsky claims to have performed "forensic accounting," but when deposed could not identify any forensic accounting or other analysis that he performed that the Court would be incapable of doing on its own—and there is none.[4] Dubinsky's summarization of facts provides the Court with nothing that it could not determine on its own from reviewing the source documents, all of which are cited in or attached to Dubinsky's report.

Third, Dubinsky's opinions that the Wylys "designed," "structured," and "concealed" a variety of transactions to "avoid detection and taxation" while filing

---

[1] *See* App 118 [Dubinsky Dep. at 17:18-18:6; 20:7-10].

[2] App. 142; 152 [*Id*. at 113:25-114:15; 153:25-154:23].

[3] App. 125 [*Id*. at 48:16-20]; *see also* App. 13 [Dubinsky Report at 5 n.6].

[4] *See* App. 119; 151-52; 144-45 [Dubinsky Dep. at 23:8-10; 152:13-153:5; 124:7-125:23].

**DEBTOR SAM WYLY'S BRIEF SUPPORTING MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY – Page 2**

"false and misleading" tax returns[5] are inadmissible because it is beyond the purview of any expert to opine on a third party's state of mind, intent, or purpose in a transaction. Tellingly, Dubinsky's main opinion—that the foreign entity structure was "elaborately complex" and thus "in [his] opinion . . . designed to avoid detection and ultimately to avoid taxation"[6] is nothing more than *ipse dixit* speculation about the Wylys' intent. There is no recognized methodology—only Dubinsky's say-so—to support his conclusions. Dubinsky's opinions about the Wylys' intent are speculative, unreliable, and inadmissible.

For these reasons, the government cannot satisfy its burden to show that Dubinsky's testimony is admissible under Fed. R. Evid. 702 or the standards set forth in *Daubert*.[7] The Debtor respectfully requests that the Court exclude Dubinsky's opinions and testimony from trial.

## ARGUMENT AND AUTHORITIES

Before a witness may offer expert testimony, Rule 702 first requires that the witness be "qualified as an expert by knowledge, skill, experience, training, or education." Rule 702 next provides that even a qualified expert may testify in the form of an opinion only if:

---

[5] *See* App. 12 [Dubinsky Report at 4].

[6] *See id.*; *see also* App. 126; 128 [Dubinsky Dep. 51:9-17; 58:15-19].

[7] "The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible." *Brickley v. Scattered Corp. (In re H & M Oil & Gas, LLC)*, 511 B.R. 408, 412, 419-20 (Bankr. N.D. Tex. 2014) (Houser, J.) (citing Fed. R. Evid. 104(a); *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

> (a) the expert's scientific, technical, or other specialized knowledge will ***help the trier of fact*** to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of ***reliable principles and methods***; and (d) the expert has ***reliably applied*** the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). In *Daubert*, the Supreme Court explained that in considering the admissibility of expert testimony, a trial judge must act as a gatekeeper and "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[8] In other words, the trial judge must engage in a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[9]

Dubinsky fails the Rule 702 standard: he is unqualified, his opinions would not help the trier of fact, and his opinions are unreliable. The Court thus must exclude Dubinsky's opinions and testimony from trial.

## I.   Dubinsky is unqualified as a foreign trusts expert, and thus is unqualified to opine in this case about foreign trusts.

"A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). "Under Rule 702, simply demonstrating a general knowledge in a particular field does not necessarily qualify

---

[8] 509 U.S. at 589. *Daubert's* "gatekeeping" function "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

[9] 509 U.S. at 592-93; *see also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

a witness as an expert on every specific issue associated with that field." *Lofton v. Gen. Motors Corp.*, 33 F.3d 1379 (5th Cir. 1994) (unreported).

Dubinsky is wholly unqualified to opine on foreign trusts; thus, he may not do so here.[10] Dubinsky's first two opinions address the foreign trusts that Judge Scheindlin previously found were grantor trusts—which he refers to as "offshore entities in known tax havens" and "offshore controlled entities." Although Dubinsky claims to have served as an investment advisor or CPA for over 750 clients, many of whom were millionaires, and to have set up various domestic trusts to help those clients defer taxes and reap other tax advantages,[11] not once has he set up a foreign trust, served as trustee or protector of a foreign trust, or appointed somebody to serve as a trustee of a foreign trust.[12] Dubinsky has never provided estate planning advice involving foreign trusts,[13] and has never been identified as an expert on foreign trusts.[14] And although Dubinsky admits there is nothing inherently wrong with setting up foreign entities in a known tax haven such as the IOM, he has never helped a client do so, or even worked with a foreign entity organized in a known tax

---

[10] *See Lofton*, 33 F.3d 1379 at *3 (upholding order refusing to qualify engineer as an expert in automotive restraint systems because the engineer had no expertise in that particular area); *Wilson*, 163 F.3d at 938 (engineer with general scientific background was not thereby qualified as an expert in accident reconstruction); *United States v. Prouse*, 945 F.2d 1017, 1025-26 (8th Cir. 1991) (chemist with limited experience studying effects of alcohol on humans was not qualified to comment on the effect of alcohol on information processing skills).

[11] App. 142 [Dubinsky Dep. 113:25-115:8].

[12] App. 118 [*Id.* at 17:18-18:3].

[13] App. 118 [*Id.* at 18:4-6].

[14] App. 118-19 [*Id.* at 20:24-21:1].

haven.[15]

Dubinsky is particularly unqualified to testify about foreign trusts in this case—which involves the tax treatment of foreign trust income and assets dating from 1992 to 2013—because he has essentially zero understanding about the changes in tax treatment of foreign entities during that time. Dubinsky admits he has no specific knowledge in this area and can only say generally that changes in tax laws have led to "more stringent reporting requirements and scrutiny over [foreign entities], but . . . beyond that, I don't know."[16] This is not expert knowledge; it is at best a weak generalization—one that is both undisputed and unable in any way to assist the Court in deciding the matters at issue.

Because Dubinsky has no expertise whatsoever in foreign trusts, he is unqualified to give his first opinion about the alleged purpose behind the Wyly Brothers' "elaborately complex network of numerous offshore entities in known tax havens." Dubinsky likewise is unqualified to give his second opinion about the "true economic substance" and "structure[]" of the transactions with the foreign trusts. Dubinsky's first two opinions should be stricken based on his lack of qualifications.

## II.    Dubinsky's general accounting knowledge is not being used in a manner that would help the finder of fact.

Admissible expert testimony must use the expert's knowledge, skill, experience, training, or education in a manner that would assist the trier of fact.

---

[15] App. 152 [*Id.* at 153:25-154:23].

[16] App. 148 [*Id.* at 137:11-16].

*See* Fed. R. Evid. 702(a). "[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument,"[17] and an expert may not simply "tell the [trier of fact] what result to reach after having been told all of the facts possibly relevant to the case."[18]

Moreover, experts should not merely serve as the mouthpiece for witnesses and materials on which the expert relied in forming opinions,[19] and a retained expert may not "marshal[]" and then "simply rehash[] otherwise admissible evidence . . . . solely for the purpose of constructing a factual narrative based upon record evidence."[20] An expert who "simply summarize[s] the evidence" to arrive at *ipse dixit* conclusions about mental processes invades the province of the jury.[21]

## A.   Dubinsky's recitation of stipulated facts and previous findings is unhelpful.

Dubinsky's summarization of facts is unhelpful because it offers nothing more than what has already been decided by this Court and the New York district court, and what the government hopes other witnesses and documents will

---

[17] *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986).

[18] *Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1311 (5th Cir. 1985); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (Under Rule 704, "questions which would merely allow the witness to tell the jury what result to reach are not permitted.").

[19] *See H&M Oil & Gas*, 511 B.R. at 413 (citing *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 525 (5th Cir. 2013)).

[20] *See Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005)*; see also* Fed. R. Evid. 602 (fact witnesses must have personal knowledge); Fed. R. Evid. 802 (hearsay generally is inadmissible).

[21] *Jeasonne v. Sutherland Bldg. Material Centers, L.P.*, No. CIV.A. 12-1905, 2013 WL 4893787, at *2 (W.D. La. Sept. 11, 2013).

establish. Dubinsky's review of documents and then stating conclusions favorable to the government about the intent behind various transactions is also unhelpful because it merely tells the fact-finder what result to reach—something that the lawyers may do in argument.

Although Dubinsky's report includes numerous pages reciting alleged transactions, facts, and other background information, Dubinsky lacks personal knowledge about these matters and agrees that "there's going to be factual foundation . . . at trial through evidence and witnesses and [he is] not going to be the bearer of facts in the case."[22] As Dubinsky himself recognizes, the government cannot rely on Dubinsky to establish the underlying facts.[23]

Dubinsky can cite a document from which he copied each fact in his report.[24] Among other things, these documents include the stipulation of undisputed facts from the SEC Case, selected filings and orders in this Court and the New York district court, various news articles and publicly available documents, excerpts from deposition transcripts and the trial transcript in the SEC case, documents produced in the SEC Case, and IRS publications.[25] But the Court does not need an "expert" to read documents, prepare timelines, and recite facts—many of which Judge

---

[22] App. 125 [Dubinsky Dep. at 48:17-20]; *see also* App. 13 [Dubinsky Report at 5 n.6].

[23] *Id.*

[24] *See* App. 119; 130 [Dubinsky Dep. 24:13-21; 65:20:24]; *see also* App. 159-69 [Dubinsky Dep. Ex. 2 at 109-119 (deposition binder indices tying all but a few of the footnotes in Dubinsky's report to materials Dubinsky included behind 134 tabs in a binder supplied during his deposition)].

[25] *See id.*

**DEBTOR SAM WYLY'S BRIEF SUPPORTING MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY – Page 8**

Scheindlin already found. For example, Dubinsky's recitations add nothing to Judge
Scheindlin's holding that the trusts in question were "grantor trusts," which this
Court adopted through collateral estoppel, because his analysis simply **assumes** the
trusts were grantor trusts.[26]

Dubinsky also drew pictures and figures in his report to summarize various
transactions, which the government perhaps could use as trial demonstratives.
These drawings, however, are not evidence, and the government's lawyers could
have drawn them on their own (as could the Court). Recognizing that his review and
summary of various documents that this Court itself can read and understand does
not require any particular expertise, Dubinsky suggests that he used "forensic
accounting."[27] When deposed, however, Dubinsky could not identify any "forensic
accounting" or analysis that he performed that the Court would be incapable of
doing on its own,[28] and there is none.

Dubinsky's reading and summarization of documents thus fails to satisfy
Rule 702(a)'s requirement that it be helpful to the trier of fact, and it should be
excluded.

### B. Dubinsky's opinions about the Wylys' tax returns are irrelevant and unhelpful.

Although Dubinsky's generalized tax and accounting skills might otherwise
have qualified him to opine on the amount of taxes Sam would have owed if the

---

[26] App. 121; 126 [Dubinsky Dep. at 29:20-23; 49:11-18].

[27] App. 119 [*Id.* at 23:8-10].

[28] *See* App. 151-52; 144-45 [*id.* at 152:13-153:5; 124:7-125:23].

IOM trusts had been treated all-along as grantor trusts, he offers no such opinion.[29]

Instead, Dubinsky's report offers a few example tax return excerpts showing where various income items would have been listed if these trusts had been treated as grantor trusts. But these discrete examples cannot be combined to produce a calculation of what Sam's underlying income tax liability would have been under a grantor-trust characterization, and thus they are irrelevant (more specifically, they would not help the Court's understanding of the evidence or determination of a fact in issue).[30]

At most, the example tax return excerpts Dubinsky includes to support his third opinion imply that the Wylys' income[31] tax liability would have been greater if they had treated the IOM trusts as grantor trusts.[32] This conclusion is obvious and indeed Sam Wyly concedes that calculating his tax liability based on Judge Scheindlin's finding that the trusts were grantor trusts would result in additional income tax liability (any such concession remains subject to the outcome in the Second Circuit appeal). Thus, Dubinsky's third opinion is unhelpful, irrelevant, and

---

[29] App. 119; 123 [*Id.* at 21:10-15; 38:12-19].

[30] *See* App. 123 [*id.* at 38:12-39:17]. Dubinsky's primary purpose for including these "examples" appears to be an attempt to bolster his conclusions that Sam Wyly filed "false and misleading" tax returns, which are inadmissible as shown in Section III. *See* App. 143 [*id.* at 120:9-19]. In any event, "[r]eading forms and instructions on how to complete them is a common experience in life, and no expert is needed to assist the [fact-finder] in this matter." *United States v. Naegele*, 471 F. Supp. 2d 152, 162 (D.D.C. 2007) (excluding expert testimony that bankruptcy forms were confusing).

[31] Dubinsky does not offer opinions about how characterization of a trust as grantor versus non-grantor would affect gift tax liability. *See* App. 149 [Dubinsky Dep. 141:10-142:6].

[32] *See* App. 123 [*id.* at 38:12-39:17].

should be excluded.

## III.   Dubinsky's opinions about the Wylys' intent are speculative, unreliable, unhelpful, and inadmissible.

Instead of offering expert analysis to help the trier of fact perform its role, Dubinsky simply states various conclusions about the Wylys' intent that the government hopes to persuade the Court to reach. It is well-established, however, that "[a]n expert's credentials do not place him in a better position than the [fact finder] to draw conclusions about a defendant's state of mind." *Marlin v. Moody Nat. Bank, N.A.*, 248 Fed. Appx. 534, 540-41 (5th Cir. 2007) (unreported) (affirming exclusion of expert because testimony would be unhelpful on issue of intent-to-defraud).[33] Any such testimony would be utterly speculative and unreliable, and thus inadmissible.[34]

_____

[33] *See also Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (where plaintiff's expert asserted that defendant acted with deliberate indifference and conscious disregard, such assertions were inadmissible because the expert was in no better position than a juror to reach that conclusion); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 644 (S.D. Tex. 2008) (expert may not testify about "what the Board knew and perceived and how the Board acted" because such testimony "does not require special expertise and is merely a commentary on the credibility of the Directors and the documentary evidence in this case"); *Fisher v. Halliburton*, No. CIV. A. H-05-1731, 2009 WL 5216949, at *3 (S.D. Tex. Dec. 21, 2009) (expert may not testify that defendant intended a particular act or knew a result was substantially certain to result from a decision); *Green v. CBS Broad., Inc.*, No. 3:98-CV-2740-T, 2000 WL 33243748, at *4 (N.D. Tex. Dec. 19, 2000), *aff'd* 286 F.3d 281 (5th Cir. 2002) (expert testimony that conduct displayed "actual malice" is inadmissible testimony about state-of-mind).

[34] Admissible expert testimony must be "the product of reliable principles and methods . . . reliably applied . . . to the facts of the case." Fed. R. Evid. 702(c)-(d). Speculative expert testimony is inadmissible. *See Lewis v. Par. of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990). Expert "opinion[s] of dishonesty go[] beyond the scope of expertise" and do not "substitute for evidence of dishonesty." *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) (also holding that experts "may only assist and not replace the fact finder").

Even Dubinsky admits that it would be improper for him to testify about Sam

Wyly's intent or state of mind, or whether Sam Wyly knew that he had a tax

liability:

> Q. You're obviously not a mind-reading expert, correct?
>
> A. That is correct.
>
> Q. And you can't determine someone's state of mind, can you?
>
> A. One, I haven't done it in this case. It would be improper for me to do so. I have been trained to interrogate people and go through things similar to that, but I'm not doing it in this case and I haven't been asked to do it. It would be improper."

App. 120 (Dubinsky Dep. 26:24-27:8).

> Q. Okay. And you don't have an opinion that either Mr. Sam Wyly or Mr. Charles Wyly was trying to evade taxes, do you?
>
> A. That is correct, I did not render that opinion.

App. 149 (*Id*. at 143:9-13).

> Q. Do you have any evidence that Sam Wyly knew that he had a tax liability in 1992 that he didn't pay?
>
> A. I don't know one way or the other.
>
> Q. Okay.  And if I ask you the same question for every year from 1993 to 2013, would your answer be the same?
>
> A. Yes, I -- I don't know what he knew and what he thought.

App. 148 (*Id*. at 137:17-25).[35]

Puzzlingly, however, despite Dubinsky's admission that he is not a mind

reader and his repeated protestations during his deposition that he is not opining

about the Wylys' intent, this is exactly what he has done. Each of Dubinsky's

---

[35] Even if state of mind testimony were permissible, Dubinsky would be unable to help the Court understand the key indicator of intent in this case—Sam Wyly's own testimony—because Dubinsky failed to read Sam Wyly's deposition. App. 147-48 [*Id*. at 136:15-137:5].

opinions offers improper "expert" testimony about the Wylys' state of mind:

- The Wyly Brothers established and controlled an elaborately complex network of numerous offshore entities in known tax havens that engaged in a series of financial transactions *designed to avoid detection and taxation* by the U.S. taxing authorities;

- The Wyly Brothers' transactions involving transfers of stock, options, warrants, and other property to their offshore controlled entities lacked true economic substance and *were structured in a manner to avoid paying U.S. individual income and gift taxes*; and

- The Wyly Brothers' original U.S. federal income tax filings from 1992-2013 *were false and misleading and concealed the true nature and substance of the* transfer of stock options, warrants, and stock, and other transactions described above.

App. 12 [Dubinsky Report at 4 (emphasis added)].

Dubinsky also opines about the Wylys' intent in numerous similar statements throughout his report. *See, e.g.,* App. 12, 21, 44, 53, 55, 76-77, 81, 83, 100 (*id.* at 4 ("Wyly implemented a tax scheme that was designed to avoid detection by IRS . . . with the common goal of moving the Wylys' income offshore and then hiding it from U.S. tax authorities to avoid paying their proper U.S. tax obligations"); 13 ("[T]his was a carefully crafted scheme to avoid taxes rather than for estate and/or asset protection as has been argued by the Wylys."); 36 ("The Wylys' actions in this regard [with respect to a Form 1099] were nothing more than an attempt to hide these transactions from detection by the IRS in order to avoid the disclosure of the entire offshore scheme."); 43 (referencing "the Wylys' [alleged] strategy of hiding their funds in order to avoid paying U.S. taxes"); 45 (speculating that a sale was "representative of [the Wylys'] deceptive practices"); 66-67 (claiming that a set of entities were "window dressed to give the illusion that they were independent of the Wylys' control," but [i]n reality, however, this was not true"); 70

**DEBTOR SAM WYLY'S BRIEF SUPPORTING MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY – Page 13**

("[T]he Wylys were clearly aware of the tax consequences of their offshore structure."); 73 ("[T]he Wylys were able to continue to obfuscate from the IRS the true nature of the offshore foreign structure."); 90 (opining that obfuscation was the "Wylys' objective")). Dubinsky cannot get around the rules prohibiting an expert from testifying on state of mind by using only synonyms for "intent."

Because Dubinsky is a highly experienced witness,[36] he tried to mask his impermissible testimony about intent by arguing that he is "opining on the transactions themselves" and that his "opinion is based on the way the transactions were set up . . . in [his] mind as a CPA, as a tax professional, they were designed to avoid detection."[37] Even Dubinsky, however, could not maintain that charade for his entire deposition, as shown by this illuminating exchange:

> Q.  In essence, is your opinion, too, that these transactions that you describe here were shams *intended* to circumvent the grantor trust rules?
>
> A.  Yes.
>
> Q.  If it was determined that the economic purpose behind these transactions was to defer taxes, would that change your analysis?
>
> A.  No.
>
> Q.  If it was determined that the economic purpose behind these transactions was estate planning and asset preservation and protection, would that change your opinions?
>
> A.  Given the facts as I know them, no.

---

[36] App. 116 [Dubinsky Dep. at 12:8-9 ("I think I've been under oath probably about 140 plus times as an expert.")]. In addition, Dubinsky has billed the federal government over $600,000 on this case, and had unbilled time as of his deposition date of approximately another $100,000. *See* App. 121, 147 [*id.* at 30:25-31:6; 134:13-19].

[37] *See* App. 128 [Dubinsky Dep. 57:4-19].

**DEBTOR SAM WYLY'S BRIEF SUPPORTING MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY – Page 14**

App. 141 (*Id*. at 110:7-19 (emphasis added)). Late in his deposition, Dubinsky also admitted that not all complex transactions are indicative of fraud, App. 154 (*id*. at 162:5-10), which undermines his unreliable inference that a complex structure must have some sort of untoward purpose.[38]

Dubinsky's opinions about the Wyly Brothers' intent also are speculative, unreliable, and unhelpful because Dubinsky erroneously attributes to "the Wyly Brothers" everything done or intended by either of the Wyly brothers **or** their various lawyers, CPAs, and other professionals. As Dubinsky admits: "I didn't parse out whether somebody was [Sam and Charles Wyly's] agent or not. I'm just assuming [Sam and Charles Wyly] were causing this to be done."[39] He makes no distinction "between the Wyly brothers on one hand and their advisers and professionals and lawyers and accountants on the other hand," because he "attribute[s] it all back to the Wyly brothers."[40] In fact, Dubinsky totally **ignores** whether the Wylys relied on counsel and tax professionals, or whether that reliance was reasonable.[41]

"Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420,

---

[38] Dubinsky opined earlier in his deposition that "hey, based on the way this thing was structured, it's so complex that in [his] opinion it was designed to avoid detection and ultimately to avoid taxation." App. 128 [*Id*. at 58:16-19].

[39] *See* App. 131-32 [*id*. at 72:1-18; 73:5-8].

[40] App. 136 [*Id*. at 89:23-90:3].

[41] *See* App. 128 [*id*. at 58:20-59:4].

424 (5th Cir. 1987).[42] Dubinsky cannot come in to court and decree the Wylys' intent and purpose by, in effect, stating: "Trust me, I know, I'm an expert." His improper intent-based opinions thus must be excluded.[43]

## PRAYER

The Debtor respectfully requests that the Court exclude the opinions and testimony of Bruce Dubinsky from trial and grant any other and further relief to which the Debtor is justly entitled.

---

[42] *See also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (Expert testimony is inadmissible where the expert "offers little more than personal assurances based on his . . . experience that his conclusions are so . . . .").

[43] Dubinsky's testimony about state of mind also is improper because he has no methodology—and certainly no recognized methodology—other than (1) reading documents and testimony, and then (2) decreeing conclusions about the Wylys' intent (much like this Court will be asked to do in January). *See* App. 144 [Dubinsky Dep. 123:2-6]. There is no recognized methodology (as one would use to value a business) through which a person such as Dubinsky reliably could evaluate whether or not someone is engaged in transactions designed to avoid detection and taxation by U.S. taxing authorities. *See* App. 150-51 [*id*. at 148:20-149:15].

**DEBTOR SAM WYLY'S BRIEF SUPPORTING MOTION TO EXCLUDE OPINIONS OF BRUCE DUBINSKY – Page 16**

Dated: December 7, 2015

                  */s/    James J. Lee*
                  Josiah M. Daniel, III, SBT # 05358500
                  James J. Lee, SBT # 12074550
                  Paul E. Heath, SBT # 09355050
                  Rebecca L. Petereit, SBT # 24062776
                  **VINSON & ELKINS LLP**
                  Trammell Crow Center
                  2001 Ross Avenue, Suite 3700
                  Dallas, Texas 75201-2975
                  Tel: 214-220-7700   Fax: 214-220-7716
                  jdaniel@velaw.com; jimlee@velaw.com
                  pheath@velaw.com; rpetereit@velaw.com

                      **COUNSEL FOR THE DEBTOR**

## CERTIFICATE OF CONFERENCE

This is to certify that, on December 6, 2015, I conferred with Cynthia Messersmith, one of counsel with the Department of Justice, regarding Debtor Sam Wyly's Motion to Exclude Opinions of Bruce Dubinsky. The referenced motion is opposed.

                     */s/ James J. Lee*

## CERTIFICATE OF SERVICE

I certify that, on December 7, 2015, a copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Northern District of Texas, which gives notice to all counsel of record.

                     */s/ James J. Lee*

US 3919636