

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 22, 2019**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-35043 |
| | § | |
| SAMUEL EVANS WYLY, | § | (Chapter 11) |
| | § | |
| DEBTOR. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING THE THIRD AMENDED CHAPTER 11 PLAN OF SAM WYLY
### (Modified as of November 29, 2018)

Samuel Evans Wyly, debtor in possession (the "***Debtor***") in the above-styled

Bankruptcy Case (the "***Bankruptcy Case***") having:

    a.    commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") on October 19, 2014 (the "***Petition Date***");

    b.    filed,[1] on October 11, 2018, the *Third Amended Chapter 11 Plan of Sam Wyly* [Docket No. 2052] (as modified on November 7, 2018 [Docket No.

---

[1]    Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in the Bankruptcy Case, as applicable.

2067] and November 29, 2018 [Docket No. 2087], and as may be further modified, amended, or supplemented from time to time, the "***Plan***"),[2] a copy of which is annexed hereto as **Exhibit A**, and the *Disclosure Statement for the Third Amended Chapter 11 Plan of Sam Wyly* [Docket No. 2053] (as modified on November 7, 2018 [Docket No. 2068] and November 29, 2018 [Docket No. 2089], the "***Disclosure Statement***");

c. filed, on December 3, 2018, the *Notice of Filing Plan Documents for the Third Amended Chapter 11 Plan of Sam Wyly (Modified as of November 29, 2018)* [Docket No. 2097] and on December 27, 2018, the *Notice of Filing Supplemental Plan Documents for the Third Amended Chapter 11 Plan of Sam Wyly (Modified as of November 29, 2018)* [Docket No. 2103] (as the documents therein have been or may be modified, amended, or supplemented from time to time, collectively, the "***Plan Documents***" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

d. filed, on December 4, 2018, the *Notice of (I) Hearing to Consider Confirmation of Chapter 11 Plan and (II) Deadline to Object to Confirmation* [Docket No. 2098] (the "***Confirmation Hearing Notice***") which, *inter alia*, contained notice of the date and time set for the hearing to consider Confirmation of the Plan (the "***Confirmation Hearing***") and the deadlines for filing objections to the Plan and to proposed Cure Amounts;

e. distributed, on or before December 5, 2018 (i) the Confirmation Hearing Notice; (ii) the *Order Approving the (I) Disclosure Statement for the Third Amended Chapter 11 Plan of Sam Wyly, (II) Confirmation Hearing Notice, Contents of the Solicitation Package, and Manner of Mailing and Service Thereof, (III) Procedures for Voting and Tabulation of Ballots, and (IV) Forms of Ballots* [Docket No. 2091] (the "***Disclosure Statement Order***") (without exhibits); (iii) the Disclosure Statement (with the Plan and related exhibits attached thereto); and (iv) either (a) one or more appropriate Ballots for voting on the Plan, together with voting instructions, information regarding the return of the Ballots, and a pre-addressed reply envelope, or (b) the Notification of Non-Voting Status, as applicable (collectively, the "***Solicitation Package***") in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local Rules of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Rules***"), as evidenced by the *Certificate of Service* [Docket No. 2099] (the "***Solicitation Affidavit***");

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Plan.

f.    filed, on January 4, 2019, the *Declaration of Matthew D. Struble Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Chapter 11 Plan of Sam Wyly* [Docket No. 2107] (the "***Voting Certification***"), which detailed the results of the Plan solicitation and voting process;

g.    filed, on January 4, 2019, the *Declaration and Proffer of Dennis Faulkner in Support of Confirmation of the Third Amended Chapter 11 Plan of Sam Wyly* [Docket No. 2108] (the "***Confirmation Declaration***");

h.    filed, on January 4, 2019, the *Declaration and Proffer of Samuel Evans Wyly in Support of Confirmation of the Third Amended Chapter 11 Plan of Sam Wyly* [Docket No. 2108] (the "***Debtor's Declaration***"); and

i.    continued to manage his property during the Bankruptcy Case as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Bankruptcy Court having:

a.    set January 7, 2019, at 2:00 p.m. (prevailing Central Time) as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

b.    reviewed the Plan, the Plan Documents, the Voting Certification, the Confirmation Declaration, the Debtor's Declaration, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including any and all objections, statements, and reservations of right filed by parties in interest on the docket of the Bankruptcy Case;

c.    held the Confirmation Hearing;

d.    heard the statements, arguments, and objections, if any, made by counsel in respect of Confirmation;

e.    considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

f.    taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Bankruptcy Case; and

g.    overruled any and all objections to the Plan and to Confirmation and all statements and reservations of right not consensually resolved or withdrawn unless otherwise indicated herein.

NOW, **THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and all evidence proffered or adduced by counsel at the Confirmation Hearing and the entire record of the Bankruptcy Case establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A. **Findings and Conclusions.**

1. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. The findings and conclusions of the Bankruptcy Court pursuant to Bankruptcy Rule 7052 set forth in the record at the Confirmation Hearing, if any, are incorporated as if set forth herein. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

B.    **Jurisdiction, Venue, and Core Proceeding.**

2.    The Bankruptcy Court has jurisdiction over the Bankruptcy Case pursuant to sections 157 and 1334 of title 28 of the United States Code. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

C.    **Eligibility for Relief.**

3.    The Debtor was and is a person eligible for relief under section 109 of the Bankruptcy Code.

D.    **Commencement of the Bankruptcy Case.**

4.    On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case. Since the Petition Date, the Debtor has continued as debtor in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

E.    **Judicial Notice.**

5.    The Bankruptcy Court takes judicial notice of the docket of the Bankruptcy Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and

US 6008582

all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Bankruptcy Case.

**F.    Notice.**

6.    Due, timely, proper, and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting to accept or reject the Plan and to object to the Plan, has been provided to the following parties: (a) the Office of the United States Trustee for the Northern District of Texas (the "*U.S. Trustee*"); (b) the official committee of unsecured creditors (the "*Committee*"); (c) those persons who have formally appeared in the Bankruptcy Case and requested service pursuant to Bankruptcy Rule 2002; (d) the Internal Revenue Service; (e) all other applicable government agencies to the extent required by the Bankruptcy Rules or the Local Rules; and (e) all parties in interest listed on the Debtor's creditor matrix.

7.    All impaired creditors have either:  (a) cast a vote to accept the Plan; or (b) received actual notice of the Plan and provided no indication that they object to confirmation of the Plan.  Notice of the Plan and the Confirmation Hearing was adequate and sufficient based upon the facts and circumstances of the Bankruptcy Case and pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**G.    Solicitation.**

8.    On or before December 5, 2018, the Debtor caused the Solicitation Package to be transmitted and served in compliance with sections 1125 and 1126 of

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

9.      As set forth in the Solicitation Affidavit, on or before December 5, 2018, the Solicitation Package was transmitted to and served on the eligible holders of Claims in the Classes of Claims entitled to vote to accept or reject the Plan (the "*Voting Classes*").  The instructions on the Ballots advised holders of Claims in the Voting Classes that for such holders' Ballots to be counted, the Ballots must be properly executed, completed, and delivered to the Debtor's counsel so that it was received on or before December 28, 2018 at 5:00 p.m. prevailing Central Time (the "*Voting Deadline*"), unless such time was extended by the Debtor.  The period during which the Debtor solicited votes on the Plan was a reasonable period of time for holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan.

10.      The Debtor was not required to solicit votes from the holder of the Class 1 Allowed Unsecured Claim of Torie Steele (the "*Unimpaired Class*"), as such class is Unimpaired under the Plan and thus presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Debtor was also not required to solicit his own vote on account of his Class 4 residual interest.

11.      As described in and as evidenced by the Voting Certification and the Solicitation Affidavit, the transmittal and service of the Solicitation Package (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the

circumstances and no other or further Solicitation was or shall be required. The Solicitation was appropriate and satisfactory based upon the circumstances of the Bankruptcy Case, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any other applicable rules, laws, and regulations.

## H.    Voting.

12.    On January 4, 2019, the Voting Certification was filed with the Bankruptcy Court, certifying the method and results of the Ballots tabulated for the Voting Classes. As of the Voting Deadline, 100% in number and 100% in dollar amount of the holders of claims in Class 2 that timely voted, voted to accept the Plan, and 100% in number and 100% in dollar amount of the holder of claims in Class 3 that timely voted, voted to accept the Plan, without counting the votes of any insider (as such term is defined in section 101(31) of the Bankruptcy Code). As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

## I.    Plan Documents.

13.    The Debtor filed the Plan Documents consisting of: (a) the Artworks List; (b) the Elliott Yeary Gallery's Operations, Business Assets, and Inventory; (c) the Plan Settlement Agreement; (d) the Deed of Release; and (e) the Liquidating Trust Agreement.

14.    All such materials comply with the terms of the Plan, and the filing and notice of the Plan Documents was proper and in accordance with the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required. All Plan Documents are integral to, part of, and incorporated by reference into the Plan as if set forth in full therein. The Debtor reserves the right to alter, amend, update, or modify the Plan Documents before the Effective Date (subject, in each case, to any consultation and approval rights and conditions set forth in the Plan and the Plan Documents).

## J. Resolution of Objections and Other Issues.

15. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Bankruptcy Court.

## Bankruptcy Rule 3016.

16. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the Plan proponent. The Debtor appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b). The release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c).

## K. Burden of Proof—Confirmation of the Plan.

17. The Debtor, as proponent of the Plan, has met his burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

## L. Compliance with Bankruptcy Code Requirements—Section 1129(a)(1).

18. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, more particularly:

(i)      Proper Classification—Sections 1122 and 1123(a)(1).

19. In addition to Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which need not be classified, Article IV of the Plan provides for the separate classification of Claims and interests into four Classes. Valid factual and legal reasons exist for the separate classification of such Classes of Claims and interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or interests. Each Class contains only Claims or interests that are substantially similar to other Claims or interests within that Class. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)      Specified Unimpaired Classes—Section 1123(a)(2).

20. Article V of the Plan specifies that Class 1—the Allowed Unsecured Claim of Torie Steele—is not Impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)      Specified Treatment of Impaired Classes—Section 1123(a)(3).

21. Article V of the Plan specifies that Class 2 (Allowed nonpriority Unsecured Claims) and Class 3 (the Allowed nonpriority Unsecured Claim of the IRS)

are Impaired under the Plan, and describes the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)     No Discrimination—Section 1123(a)(4).

22.     Article V of the Plan provides for the same treatment by the Debtor for each Claim or interest in each respective Class unless the holder of a particular Claim or interest has agreed to a less favorable treatment of such Claim or interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Adequate Means for Plan Implementation—Section 1123(a)(5).

23.     The Plan, including the various Plan Documents, provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)     Voting Power of Equity Securities—Section 1123(a)(6).

24.     Section 1123(a)(6) of the Bankruptcy Code is inapplicable.

(vii)     Designation of Directors and Officers—Section 1123(a)(7).

25.     Section 1123(a)(7) of the Bankruptcy Code is inapplicable.

(viii)     Impairment / Unimpairment of Classes—Section 1123(b)(1).

26.     The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Specifically, Article V of the Plan impairs or leaves unimpaired each Class of Claims and interests.

US 6008582

(ix) <u>Assumption and Rejection of Executory Contracts and Unexpired Leases—Section 1123(b)(2).</u>

27. The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code. Article XII of the Plan provides for the assumption of the Debtor's executory contracts and unexpired leases on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, other than (i) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases attached as Exhibit 5 to the Plan; (ii) those that have been previously rejected by a Final Order; (iii) those that are the subject of a motion to reject executory contracts or unexpired leases that is pending on the Effective Date; or (iv) those that are subject to a motion to reject an executory contract or unexpired lease pursuant to which the requested effective date of such rejection is after the Effective Date.

(x) <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3).</u>

28. The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code. In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The compromise and settlement of such Claims embodied in the Plan, including the Plan Settlement Agreement, are in the best interests of the Debtor, his Estate, and all holders of Claims, and are fair, equitable, and reasonable.

29.     Section 13.5 of the Plan describes certain releases granted by the Debtor and his Estate (the "***Debtor Releases***").  For the reasons set forth on the record of the Bankruptcy Case and the evidence proffered or adduced at the Confirmation Hearing, such releases are a necessary and integral part of the Plan.  The Debtor Releases are (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by such releases; (c) in the best interest of the Debtor and his Estate; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.  The Debtor Releases are "fair and equitable" and "in the best interests of the estate" considering the (x) the probability of success in litigation of the released Claims and Causes of Action given uncertainty in fact and law with respect to the Claims and Causes of Action; (y) the complexity and likely duration and expense of litigating the released Claims and Causes of Action; and (z) the arm's-length negotiations which produced the settlement embodied in the Plan.

30.     Section 13.6 of the Plan describes certain consensual releases granted by holders of Claims who are not deemed to accept or reject the Plan and who indicate that they opt in to such releases on their Ballot (the "***Third-Party Releases***").  The Third-Party Releases provide finality for the Debtor and the Released Parties regarding the parties' respective obligations under the Plan.  The Ballots sent to all holders of Claims and Causes of Action entitled to vote on the Plan unambiguously stated that the Plan contains the Third-Party Releases and set forth the terms of the Third-Party Releases and advised careful review of the release, exculpation, and

13

injunction provisions contained in the Plan. The Ballots provided a place for such holders to opt in to the Third Party Release. The Third-Party Releases are fully consensual because they are only given by those parties who affirmatively opted-in to such releases.

31. The Third-Party Releases are sufficiently specific as to put the Releasing Parties on notice of the nature of the released Claims and Causes of Action, and they are appropriately tailored under the facts and circumstances of the Bankruptcy Case. The Third-Party Releases are conspicuous and emphasized with boldface type in the Plan, the Disclosure Statement, and the Ballots.

32. The Third Party Releases are (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (c) in the best interest of the Debtor and his Estate; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.

33. The exculpation, described in Section 13.4 of the Plan (the "*Exculpation*"), is hereby modified so as not to include the Committee's Professionals in the Bankruptcy Case. Otherwise, it is appropriate under applicable law because it was proposed in good faith and is appropriately limited in scope. The Exculpation, including its carve-out for gross negligence and willful misconduct, is consistent with established practice in this jurisdiction and others.

34. The injunction provision set forth in Section 13.2 of the Plan is necessary to implement, preserve, and enforce the Debtor Releases, the Third-Party Releases,

and the Exculpation, and by extension, the compromise and settlement upon which the Plan is founded, and is narrowly tailored to achieve this purpose.

(xi)     Modification of Rights—Section 1123(b)(5).

35.     The Plan modifies the rights of holders of Claims in Class 2 and Class 3, and leaves unimpaired the rights of the holder of Claims in Class 1, as permitted by section 1123(b)(5) of the Bankruptcy Code.

(xii)     Additional Plan Provisions—Section 1123(b)(6).

36.     The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to holders of Claims, (b) allowance of certain Claims, and (c) retention of Court jurisdiction, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(xiii)     Cure of Defaults—Section 1123(d).

37.     Article XII of the Plan provides for the satisfaction of Cure Amounts associated with each executory contract and unexpired lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Unless otherwise provided in the Plan, or unless the non-Debtor party to any assumed executory contract or unexpired lease timely files an objection, the Cure Amount for each executory contract and unexpired lease that is assumed pursuant to Article XII of the Plan shall be $0.  Any disputed Cure Amounts will be determined in accordance with the procedures set forth in Article XII of the Plan and applicable bankruptcy and nonbankruptcy law.  As such, the Plan provides that the Debtor will cure, or provide adequate assurance that the Debtor will promptly cure, defaults with respect to

assumed executory contracts or unexpired leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

## M. Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).

38. The Debtor has complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtor:

a. is an eligible debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

b. has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

c. complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Package and related documents and notices, and in soliciting and tabulating the votes on the Plan.

## N. Plan Proposed in Good Faith—Section 1129(a)(3).

39. The Debtor has negotiated, developed, and proposed the Plan (including the Plan Documents and all other documents and agreements necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In so determining, the Bankruptcy Court has considered the facts and record of the Bankruptcy Case, the Disclosure Statement, and evidence proffered or adduced at the Confirmation Hearing, and examined the totality of the circumstances surrounding the filing of the Bankruptcy Case, the Plan, and the process leading to Confirmation. The Plan (including all

documents necessary to effectuate the Plan) and the Plan Documents were negotiated in good faith and at arm's length. Further, the Plan's classification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each integral to the Plan, supported by valuable consideration, and necessary for the Debtor's successful implementation of the Plan.

**O.      Payment for Services or Costs and Expenses—Section 1129(a)(4).**

40.     The Debtor has satisfied section 1129(a)(4) of the Bankruptcy Code. Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's Professionals in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

**P.      Directors, Officers, and Insiders—Section 1129(a)(5).**

41.     Section 1129(a)(5) of the Bankruptcy Code is inapplicable.

**Q.      No Rate Changes—Section 1129(a)(6).**

42.     Section 1129(a)(6) of the Bankruptcy Code is inapplicable.

**R.      Best Interest of Creditors—Section 1129(a)(7).**

43.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Each holder of an Impaired Claim against the Debtor has either accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor's estate was liquidated under chapter 7 of the Bankruptcy Code.

**S.**     **Acceptance by Certain Classes—Section 1129(a)(8).**

44.     The Unimpaired Class is unimpaired by the Plan and, accordingly, the holder of Claims in such Class is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Voting Classes are Impaired and have voted to accept the Plan, as established by the Voting Certification.

**T.**     **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9).**

45.     The treatment of Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, and statutory fees imposed by 28 U.S.C. § 1930 under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U.**     **Acceptance by At Least One Impaired Class—Section 1129(a)(10).**

46.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Certification, Class 2 and Class 3, which are Impaired, voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

**V.**     **Feasibility—Section 1129(a)(11).**

47.     The Plan provides for liquidation; accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code are not applicable.

**W.** **Payment of Fees—Section 1129(a)(12).**

48.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 3.5 of the Plan provides for the payment of all fees payable by the Debtor under 28 U.S.C. § 1930(a).

**X.** **Continuation of Employee Benefits—Section 1129(a)(13).**

49.    Section 1129(a)(13) of the Bankruptcy Code is inapplicable.  The Debtor is not required to pay any retiree benefits.

**Y.** **Payment of Domestic Support Obligations— 1129(a)(14).**

50.    The Plan satisfies the requirements of section 1129(a)(14) of the Bankruptcy Code.  Class 1 of the Plan provides for the Allowed Unsecured claim of Torie Steele that is entitled to the priority treatment provided under section § 507(a)(1) of the Bankruptcy Code.

**Z.** **Objections by Holders of Allowed Unsecured Claims— 1129(a)(15).**

51.    No holder of an Allowed Unsecured Claim has objected to Confirmation of the Plan.

**AA.** **Transfers of Property— 1129(a)(16).**

52.    Section 1129(a)(16) of the Bankruptcy Code is inapplicable.  The Debtor is an individual and is not a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**BB.** **Only One Plan—Section 1129(c).**

53.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in the Bankruptcy Case.

**CC.    Principal Purpose of the Plan—Section 1129(d).**

54.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**DD.    Not a Small Business Case—Section 1129(e).**

55.    The Bankruptcy Case is not a small business case, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in the Bankruptcy Case.

**EE.    Good Faith Solicitation—Section 1125(e).**

56.    Based on the record before the Bankruptcy Court in this Bankruptcy Case, including evidence proffered or adduced at or prior to the Confirmation Hearing, the Debtor (i) has acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all of his activities relating to the solicitation of acceptances to the Plan and his participation in the activities described in section 1125 of the Bankruptcy Code, and therefore is not, and on account of such solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, and is entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**FF.    Satisfaction of Confirmation Requirements.**

57.    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the

US 6008582

20

Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**GG. Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

58. Without limiting or modifying the rights of any party set forth in Section 15.1 of the Plan, each of the conditions precedent to the Effective Date, as set forth in Section 15.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 15.1 of the Plan.

**HH. Implementation.**

59. The terms of the Plan, including, without limitation, the Plan Documents, and all other documents filed in connection with the Plan, and/or executed or to be executed in connection with the transactions contemplated by the Plan and all amendments and modifications of any of the foregoing made pursuant to the provisions of the Plan governing such amendments and modifications are incorporated by reference and constitute essential elements of the Plan and this Confirmation Order. Consummation of each Plan Document is in the best interests of the Debtor, his Estate, and holders of Claims, and the Plan Documents are hereby approved. The Debtor has exercised reasonable business judgment in determining to enter into the Plan Documents, and the Plan Documents have been negotiated in good faith, at arm's-length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

## II.    Binding and Enforceable.

60.    The Plan and the Plan Documents have been negotiated in good faith and at arm's length and, subject to the occurrence of the Effective Date, shall bind any holder of a Claim and such holder's respective successors and assigns, whether or not the Claim is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

## JJ.    Executory Contracts and Unexpired Leases.

61.    The Debtor has exercised sound business judgment in determining whether to assume or reject each executory contract and unexpired lease pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, and Article XII of the Plan. Each assumption of an executory contract or unexpired lease pursuant to Article XII of the Plan, including any amendments to each such executory contract or unexpired lease, shall be legal, valid, and binding upon the Debtor and his successors and assigns and all non-Debtor parties and their successors and assigns to such executory contract or unexpired lease, all to the same extent as if such assumption were effectuated pursuant to an order of the Bankruptcy Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order. The Plan and the Confirmation Hearing Notice constituted good, proper, and sufficient notice to non-

US 6008582

22

Debtor counterparties to executory contracts and unexpired leases that are being assumed by the Debtor, including notice of the deadline to object to the assumption of such executory contracts or unexpired leases and the proposed Cure Amounts.

**KK.   Good Faith.**

62.    The Debtor and the Released Parties have been acting in good faith and will be acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby in accordance with the Plan; and (b) take the actions authorized and directed by this Confirmation Order.

**LL.   Disclosure of Facts.**

63.    The Debtor has disclosed all material facts regarding the Plan, the Plan Documents, and the adoption, execution, and implementation of the other matters provided for under the Plan.

**MM.  Retention of Jurisdiction.**

64.    The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising in or related to, the Bankruptcy Case, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

### IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

65.    **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in or contemplated by the Plan, including, without limitation, the Plan Documents,

are hereby authorized and approved. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

66. **Binding Effect**. On the date of and after entry of this Confirmation Order, subject to the occurrence of the Effective Date and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or otherwise, the provisions of the Plan, the Plan Documents, and this Confirmation Order shall be immediately effective and enforceable and shall bind the Debtor, the Liquidating Trustee, and any and all holders of Claims and such holders' respective successors and assigns (regardless of whether or not (a) the holders of such Claims voted to accept or reject, or are deemed to have accepted or rejected, the Plan or (b) the holders of such Claims are entitled to a distribution under the Plan). On and after the Effective Date, except as expressly provided in the Plan, all holders of Claims and Liens shall be precluded from asserting any Claim, Cause of Action, or Liens against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee or their respective property and assets based upon any act, omission, event, Transaction, or other activity of any kind that occurred or came into existence prior to the Effective Date. For the avoidance of doubt, nothing herein or in the Plan shall contravene Bankruptcy Code § 523(a)(19) and nothing herein or in the Plan shall prevent the IRS from pursuing any remedy provided by law against the Debtor with regard to post-Effective Date tax liability. All Claims and debts shall be fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan. The Plan and the Plan Documents constitute legal, valid, binding, and

authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and the Plan Documents, and any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

67. **No Action Required**. No action of the Debtor or the Liquidating Trustee is required to authorize the Debtor or the Liquidating Trustee, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan or any contract, assignment, certificate, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

68. **Effectiveness of All Actions**. All actions contemplated by the Plan, including all actions pursuant to, in accordance with, or in connection with the Plan Documents, are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the Debtor or the Liquidating Trustee.

69. **Plan Implementation**.

(a)    In accordance with section 1142 of the Bankruptcy Code, without further action by the Bankruptcy Court, the Debtor, or Liquidating Trustee, the Debtor and the Liquidating Trustee are authorized to:  (i) take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, this Confirmation Order, and the transactions contemplated thereby or hereby, and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan and the Plan Documents.

(b)    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan and the Plan Documents, including (i) the assumption of any executory contracts and unexpired leases and (ii) entry into any contracts, instruments, releases, agreements, and documents necessary to implement, effectuate, and consummate the Plan, shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further notice, application to, or order of this Bankruptcy Court, or further action by the Debtor or Liquidating Trustee.

(c)    All such transactions effected by the Debtor during the pendency of the Bankruptcy Case from the Petition Date through the Confirmation Date (or as otherwise contemplated by this Confirmation Order) are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions and the occurrence of the Effective Date.

US 6008582

26

70. **Vesting of Assets in the Debtor and the Liquidating Trust**. Except as otherwise provided in the Plan, this Confirmation Order, or in any agreement, instrument, or other document incorporated in the Plan (including the Plan Documents), on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (a) the Retained Assets shall vest in the Debtor free and clear of any Taxes, Liens, Claims, encumbrances, and other interests of every kind and nature, as more fully set forth in Section 7.10 of the Plan, and (b) the Liquidating Trust Assets will vest in the Liquidating Trust free and clear of any Liens, Claims, encumbrances, and other interests or every kind and nature except as set forth herein or in the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Debtor and the Liquidating Trustee, as applicable, may use, acquire, or dispose of property, and compromise or settle any Claims, interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

71. **Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated

US 6008582

by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

72.     **Preservation of Rights of Action.**  Except for Retained Assets and Avoidance Actions, any other Causes of Action that are identified in the Disclosure Statement are preserved for the benefit of the Liquidating Trust unless expressly released, waived, or relinquished under the Plan or Confirmation Order.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Liquidating Trustee will not pursue a Cause of Action against them.

73.     Notwithstanding the foregoing, on the Effective Date, the Avoidance Actions against any persons or entities shall be deemed waived and released.

74.     **Professional Compensation.**  The provisions governing compensation of Professionals set forth in Section 3.3 of the Plan are approved in their entirety.  All final requests for Professional Fee Claims through and including the Effective Date shall be Filed no later than the Postconfirmation Bar Date.  Any objections to Professional Fee Claims shall be served and filed no later than 21 days after the filing of such final applications for payment of Professional Fee Claims.

75.     **Release of Liens.**  Except  as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, or other agreement or

document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtor.

76. **Assumption of Contracts and Leases.** Pursuant to Article XII of the Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed other than (i) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases attached as Exhibit 5 to the Plan; (ii) those that have been previously rejected by a Final Order; (iii) those that are the subject of a motion to reject executory contracts or unexpired leases that is pending on the Effective Date; or (iv) those that are subject to a motion to reject an executory contract or unexpired lease pursuant to which the requested effective date of such rejection is after the Effective Date. Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions provided for in the Plan, including any amendments agreed to by the Debtor during the Bankruptcy Case to any executory contracts or unexpired leases being assumed by the Debtor, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Debtor has either cured

any Cure Amounts or provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan, this Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

77. Except as otherwise provided herein, assumption or assignment, as applicable, of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, if any, whether monetary or nonmonetary, arising under any assumed executory contract or unexpired lease at any time before the effective date of the assumption or assumption and assignment, as applicable. Any Proof of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assigned shall be deemed a Disallowed Claim and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other entity, upon the deemed assumption of such contract or unexpired lease.

78. Subject to the occurrence of the Effective Date, entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of the executory contracts and unexpired leases identified on the Schedule of Rejected Executory Contracts and Unexpired Leases attached as Exhibit 5 to the Plan to the extent they are determined by the Bankruptcy Court to be executory in nature. By entry of this Confirmation Order, the Bankruptcy Court is not finding

that the parties identified on Exhibit 5 to the Plan are parties to an executory contract or unexpired lease.

79. Executory contracts or unexpired leases entered into by the Debtor after the Petition Date remain enforceable after the Effective Date by all parties pursuant to their terms.

80. **Insurance**. As of the Effective Date, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto shall be deemed to be assumed by the Debtor under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be executory contracts. Notwithstanding anything to the contrary in the Plan, neither the releases nor confirmation and consummation of the Plan shall affect the Debtor's insurance policies in which the Debtor is or was an insured party or any Claim as settled thereunder. Each insurance company is prohibited from denying, refusing, altering, or delaying coverage for the Debtor on any basis regarding or related to the Bankruptcy Case, the Plan, or any provision within the Plan, including the treatment set out within the Plan for insured Claims.

81. **Distributions**. All distributions pursuant to the Plan shall be made in accordance with Article IX of the Plan, and such methods of distribution are approved. For the avoidance of doubt, except as otherwise provided in the Plan or this Confirmation Order, nothing in the Plan or this Confirmation Order shall affect the rights of the Debtor or the Liquidating Trustee regarding any Claim, including

all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Claim, and the right to dispute or object to any such Claim.

82. **Compromise and Settlement of Claims, Interests, and Controversies**. Pursuant to section 1123(b)(3)(a) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including the Plan Settlement Agreement, constitute a good faith compromise of Claims, interests, and controversies relating to the contractual, legal, and subordination rights that a creditor may have with respect to any Allowed Claim or any distribution to be made on account of such Allowed Claim. The entry of this Confirmation Order constitutes approval of the compromise or settlement of all such Claims and controversies (including the Plan Settlement Agreement), as well as a finding that such compromise or settlement is in the best interests of the Debtor, his Estate, and holders of such Claims, and is fair, equitable, and reasonable.

83. **Claims Resolution Procedures Approved**. The procedures for resolving Disputed Claims or objections to Claims outlined in Article XI of the Plan are hereby approved.

84. **Release, Exculpation, and Injunction Provisions**. All release, injunction, and exculpation provisions set forth in the Plan, including but not limited to those contained in Article XIII of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein, and as if fully set forth

herein; notwithstanding the foregoing, the Exculpation shall not apply to the Committee's Professionals in the Bankruptcy Case.

85.      **Payment of Statutory Fees**.  All unpaid U.S. Trustee Fees shall be paid in Cash in full by the Liquidating Trustee on and after the Effective Date (or as soon as reasonably practicable after such fees become due) from Liquidating Trust Assets, as set forth in Section 9.1 of the Plan. The Liquidating Trustee shall pay postconfirmation U.S. Trustee Fees when due and shall file and serve upon the U.S. Trustee quarterly operating reports until the Bankruptcy Case is closed or until the Court enters an Order providing otherwise.

86.      **Documents, Mortgages and Instruments**.  Each federal, state, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages or instruments necessary or appropriate to effectuate, implement or consummate the Plan.

87.      **Return of Deposits**.  All utilities, including any person or entity who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Bankruptcy Case (collectively, the "***Deposits***"), whether pursuant to the *Final Order Providing Adequate Assurance of Utility Payments* [Docket No. 258] (the "***Utilities Order***") or otherwise, including, but not limited to, gas, electric, telephone, data, cable, trash, freight, and waste management services, are directed to remit any unused portion of such Deposits to the Estate by Cash refund to either the Debtor-in-Possession bank account or the

General Account within thirty (30) days following the Effective Date, or as otherwise specifically provided in the Utilities Order.

88. **Authorization to Execute the Plan Settlement Agreement**. The Debtor is authorized to execute and enter into the Plan Settlement Agreement upon final approval of the U.S. Department of Justice and the entry of this Confirmation Order by the Bankruptcy Court.

89. **Filing and Recording**. This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any stamp tax or similar tax imposed by state or local law.

90. **Continued Effect of Stays and Injunctions**. Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Bankruptcy Case under section 362 of the Bankruptcy Code or

otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

91. **Debtor's Actions Post-Confirmation Through the Effective Date**. During the period from entry of this Confirmation Order through and until the Effective Date, the Debtor shall continue as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of the Bankruptcy Court that is in full force and effect.

92. **Authorization to Consummate**. The Debtor is authorized to consummate the Plan at any time after entry of this Confirmation Order subject to satisfaction, or waiver in accordance with Section 15.1 of the Plan, of the conditions precedent to the Effective Date set forth in Section 15.1 of the Plan.

93. **Nonseverability of Plan Provisions Upon Confirmation**. Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent (and subject to other consents and consultation rights set forth in the Plan) in accordance with the terms set forth in the Plan; and (c) nonseverable and mutually dependent. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed mutually nonseverable and mutually dependent.

94. **Post-Confirmation Modifications**. Without need for further order or authorization of the Bankruptcy Court, the Debtor is authorized and empowered to

make any and all modifications to any and all Plan Documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan, subject to any applicable consultation and approval rights and conditions set forth therein. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights prior to the Effective Date to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XVI of the Plan.

95. **Conditions to the Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Section 15.1 of the Plan have been satisfied or waived in accordance with Section 15.1 of the Plan.

96. **Dissolution of the Committee**. Except to the extent otherwise provided in the Plan, upon the Effective Date, the current and former members of the Committee, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with

the Bankruptcy Case; *provided*, *however*, that following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Professional Fee Claims and any requests for allowance of administrative claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) any appeals of this Confirmation Order, (iii) any appeals to which the Committee is a named party; and responding to creditor inquiries for fourteen (14) days following the Effective Date. Following the completion of the Committee's remaining duties set forth above, the Committee shall be dissolved, and the retention or employment of the Committee's respective attorneys, accountants and other agents shall terminate.

97. **Reversal/Stay/Modification/Vacatur of Confirmation Order**. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

98. **Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan, and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

99. **No Governmental Releases.** Except as expressly provided herein or therein, nothing in the Plan or this Confirmation Order shall effect a release of any Claim by the United States government or any of its agencies or any state or local authority arising under the environmental laws or any criminal laws of the United States or of any state against any party or person, nor shall anything in the Plan or this Confirmation Order enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceeding against any party or person for any liability of such party or person arising under the environmental laws or any criminal laws of the United States or of any state, nor shall anything in the Plan or this Confirmation Order exculpate any party or person from any liability to the United States government or any of its agencies or any state or local authority arising under the environmental laws or any criminal laws of the United States or any state.

100. **Waiver of Stay.** This Confirmation Order is a Final Order. For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court. The Debtor is authorized to consummate the Plan at any time following entry of this Confirmation Order.

101.    **Notice of Entry of the Confirmation Order and Effective Date**.   In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order and notice of the Effective Date, substantially in the form annexed hereto as **Exhibit B** to all parties who hold a Claim in this Bankruptcy Case, the U.S. Trustee, and other parties in interest.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of Confirmation of the Plan, entry of this Confirmation Order, and the occurrence of the Effective Date.

102.    **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code and the Debtor shall continue to perform his obligations thereunder.

103.    **References to and Omissions of Particular Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or this Confirmation Order.  The failure to specifically describe, include, or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan is confirmed in its entirety, except as expressly modified herein, the Plan Documents are approved in their entirety, and all are incorporated herein by this reference.

104.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

105.    **Effect of Conflict**.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, then, solely to the extent of such inconsistency, the terms of this Confirmation Order govern and control.

106.    **Closure of Bankruptcy Case**.  As soon as practicable after the Effective Date, the Debtor or the Liquidating Trustee is authorized to submit an order to the Bankruptcy Court that closes and issues a final decree for the Bankruptcy Case.

107.    **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

108.    **Retention of Jurisdiction**.   Except as set forth in the Plan or this Confirmation Order, the Bankruptcy Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Bankruptcy Case, including the matters set forth in Article XIV of the Plan and section 1142 of the Bankruptcy Code.

Submitted by:

**VINSON & ELKINS LLP**

*/s/ James J. Lee*

James J. Lee, SBT # 12074550
Paul E. Heath, SBT # 09355050
Rebecca L. Petereit, SBT # 24062776
Garrick C. Smith, SBT # 24088435
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: 214.220.7700
Fax: 214.999.7787
jimlee@velaw.com; pheath@velaw.com
rpetereit@velaw.com; gsmith@velaw.com

**COUNSEL FOR THE DEBTOR**

<u>Exhibit A</u>

Plan

James J. Lee, SBT # 12074550
Paul E. Heath, SBT # 09355050
Rebecca L. Petereit, SBT # 24062776
Garrick C. Smith, SBT # 24088435
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214-220-7700  Fax: 214-220-7716
jimlee@velaw.com; pheath@velaw.com;
rpetereit@velaw.com; gsmith@velaw.com
**COUNSEL FOR THE DEBTOR**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 14-35043** |
| | § | |
| **SAMUEL EVANS WYLY,** | § | **(Chapter 11)** |
| | § | |
| **DEBTOR.** | § | |

## THIRD AMENDED CHAPTER 11 PLAN OF SAM WYLY
### (Modified as of November 29, 2018)

Samuel Evans Wyly, debtor in possession in the above-styled Chapter 11 case, proposes this *Third Amended Chapter 11 Plan of Sam Wyly* under Chapter 11 of the Bankruptcy Code to provide for resolution and treatment of Allowed Claims against the Debtor and his Estate and to provide means of execution to conclude the administration of the Bankruptcy Case.[1]

This document amends and restates the Debtor's original, first, second, and third amended plan proposals (ECF 1375, 1483, 1757, and 2052) to reflect the result of intensive settlement negotiations with the Department of Justice ("**DOJ**") on behalf of the Internal Revenue Service ("**IRS**"), discussions with the Unsecured Creditors Committee (the "**Committee**"), as well as textual clarifications to address concerns raised by the U.S. Trustee.

The principal objective and intention of the Plan is to provide maximum feasible payments to the IRS, the Debtor's principal Creditor, and the Debtor's other Creditors holding Allowed Claims, as efficiently, promptly, and fairly as possible in

---

[1] Capitalized terms not immediately defined are defined elsewhere herein.

accordance with the Bankruptcy Code. As now amended, the Plan provides for the General Unsecured Reserve, which sets aside an amount for payment of Allowed Claims of general unsecured creditors and creates a Liquidating Trust for the primary benefit of the IRS to be funded with certain assets of the Estate and the IOMT. The Debtor and the SEC previously entered into the SEC Settlement Agreement and the Debtor has now fully performed all of his obligations thereunder, thereby extinguishing the Claim of the SEC, the other significant creditor in the Bankruptcy Case (ECF 1914).

Reference is made to the *Disclosure Statement for the Third Amended Chapter 11 Plan of Sam Wyly* for a discussion of, among other things, the Debtor's history, his business affairs, relevant properties, the Claims, a summary and analysis of the Plan, and related matters pertaining to the Debtor and the Estate. All holders of Claims are encouraged to read both the Plan and the Disclosure Statement before voting to accept or reject the Plan.

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS ........................................................................................... 1

ARTICLE II PLAN SETTLEMENT AGREEMENT ........................................................ 13

ARTICLE III TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS ... 13

    3.1    Treatment ............................................................................................ 13
    3.2    General Administrative Claims ........................................................ 13
    3.3    Professional Fee Claims .................................................................... 14
    3.4    Allowed Priority Tax Claims ............................................................ 14
    3.5    U.S. Trustee Fees ............................................................................... 14
    3.6    No Priority Claims ............................................................................. 14

ARTICLE IV DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....... 14

    4.1    Introduction ....................................................................................... 14
    4.2    Claims Against the Debtor and the Estate and Interest of the
           Debtor ................................................................................................. 15

ARTICLE V PROVISIONS FOR SATISFACTION OF CLAIMS ........................... 15

    5.1    Introduction ....................................................................................... 15
    5.2    Treatment of Classified Claims ....................................................... 15
    5.3    Designation of Impaired Classes .................................................... 16

ARTICLE VI ACCEPTANCE OR REJECTION OF THE PLAN ........................... 16

    6.1    Classes Entitled to Vote ................................................................... 16
    6.2    Acceptance by Impaired Classes of Claims .................................. 16

ARTICLE VII MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 17

    7.1    Compromise and Settlement of Claims and Controversies ................. 17
    7.2    Deed of Release ................................................................................. 17
    7.3    The Liquidating Trust ....................................................................... 17
    7.4    The Trusts ........................................................................................... 18
    7.5    '92 Trust Assets ................................................................................. 18
    7.6    '94/95 Trust Assets ............................................................................ 19
    7.7    Rosemary's Ranch and the Debtor's Ranch Receivable .................... 19
    7.8    Artwork ............................................................................................... 20
    7.9    Further Terms for Implementation of the Plan ............................ 20
    7.10   Retained Assets ................................................................................. 24
    7.11   Resolution of Claim of Wrangler Trust ........................................ 26
    7.12   Other Settlements ............................................................................. 26
    7.13   Credit .................................................................................................. 26
    7.14   Authority ............................................................................................. 26

ARTICLE VIII THE LIQUIDATING TRUST AND THE LIQUIDATING
TRUSTEE ...................................................................................... 27

8.1   Creation of the Liquidating Trust ...................................................... 27
8.2   Funding of Res of Trust ...................................................................... 27
8.3   The Liquidating Trustee ...................................................................... 28
8.4   Retention of Professional Persons; Highland Stargate ...................... 29
8.5   Compensation of the Liquidating Trustee ......................................... 29
8.6   Liquidating Trust Expenses ................................................................ 29
8.7   Liability; Indemnification .................................................................. 29
8.8   Conflicts, If Any, Between Liquidating Trust Agreement, the
      Plan, and the Confirmation Order ..................................................... 30
8.9   Plan is Motion to Transfer Liquidating Trust Assets ......................... 30
8.10  Liquidating Trust Interests ................................................................ 30
8.11  Waiver of Avoidance Actions; Preservation of All Other Rights of
      Action ................................................................................................ 31
8.12  Creation of Liquidating Trust Committee ......................................... 31
8.13  Termination ....................................................................................... 33

ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ........ 33

9.1   Initial Distributions .......................................................................... 33
9.2   Delivery of Distribution ..................................................................... 33
9.3   Withholding and Reporting Requirements ......................................... 34
9.4   Duty to Disgorge Overpayments ........................................................ 34

ARTICLE X RESERVES ADMINISTERED BY THE LIQUIDATING TRUST ....... 34

10.1  Undeliverable Distribution Reserve ................................................... 34
10.2  Distribution from Undeliverable Distribution Reserve ...................... 35
10.3  General Unsecured Reserve ................................................................ 35

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT,
AND UNLIQUIDATED CLAIMS ...................................................... 35

11.1  Objection Deadline; Prosecution of Objections ................................ 35
11.2  No Distributions Pending Allowance ................................................ 36

ARTICLE XII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ..................................................................... 36

ARTICLE XIII EFFECTS OF CONFIRMATION ........................................................ 38

13.1  Vesting of Retained Assets ................................................................ 38
13.2  Legal Binding Effect; Plan Injunction ............................................... 38
13.3  Insurance ........................................................................................... 39
13.4  Exculpation ....................................................................................... 39
13.5  Releases by the Debtor and his Estate ............................................... 40

13.6    Releases by Holders of Claims .................................................. 41

13.7    No Governmental Releases. ..................................................... 43

ARTICLE XIV RETENTION OF JURISDICTION ...................................... 43

14.1    Retention ......................................................................... 43

14.2    Rights of the Liquidating Trustee ........................................... 45

ARTICLE XV MISCELLANEOUS PROVISIONS ....................................... 45

15.1    Conditions Precedent to the Effective Date ........................... 45

15.2    Revocation, Withdrawal or Nonconsummation ...................... 46

15.3    Severability of Plan Provisions ............................................ 47

15.4    Exemption from Transfer Taxes and Recording Fees ............ 47

15.5    Interest Accrual ................................................................. 47

15.6    Rules of Interpretation; Computation of Time....................... 47

15.7    Liquidating Trust Not A Successor ...................................... 48

15.8    Plan Documents ............................................................... 48

15.9    Reservation of Rights ........................................................ 48

15.10   Further Assurances ........................................................... 48

15.11   Successors and Assigns ..................................................... 48

15.12   Governing Law ................................................................. 48

15.13   Notice of Effective Date..................................................... 49

15.14   Entire Agreement.............................................................. 49

15.15   Waiver of Stay ................................................................. 49

ARTICLE XVI MODIFICATION OF THE PLAN....................................... 49

# CHAPTER 11 PLAN OF SAM WYLY

## ARTICLE I

## DEFINITIONS

Except as otherwise expressly provided herein or unless the context otherwise requires, the terms set forth in this Article I shall have the following meanings when used in initially capitalized form in the Plan. Any term used in initially capitalized form in the Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**1.1 '92 Trusts** means the IOMT settled/created in 1992 and listed on Exhibit 1 to the Plan.

**1.2 '94/95 Trusts** means the IOMT settled/created in 1994 and 1995 and listed on Exhibit 2 to the Plan.

**1.3 Administrative Claim** means a Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including any Professional Fee Claims and U.S. Trustee Fees.

**1.4 Ad Valorem Tax Claim** means a Claim for taxes (together with any related interest, penalty, addition to tax, or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the Debtor's property and which is secured by a statutory Lien upon such property, or the Net Proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Final Order or as otherwise agreed upon in writing by the holder of such Claim and: (a) the Debtor (if such agreement is effectuated prior to the Effective Date); or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**1.5 Allowed** means, with reference to a Claim or any portion thereof: (a) that a Proof of Claim, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, that an application for approval was Filed before the Postconfirmation Bar Date), and that the Claim is not a Disputed Claim; (b) if no Proof of Claim was so Filed, that a Claim against the Debtor has been or hereafter is listed by the Debtor in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) allowed or approved under the Plan or by a Final Order. An Allowed Claim does not include any Claim, or portion thereof, that is a Disallowed Claim or that has been withdrawn, disallowed, released, or waived by its holder or pursuant to a Final Order.

Unless otherwise specifically provided in the Plan, or by a Final Order or otherwise authorized under the Bankruptcy Code, an Allowed Claim shall not include any amount for punitive or exemplary damages, fines, postpetition interest, attorneys' fees, costs, or charges.

**1.6** **Allowed Amount** means the amount of any Allowed Claim.

**1.7** **Annuity Settlement** means the settlement of annuity obligations owed to the Debtor by subsidiary companies owned by the IOMT, including Audubon Limited, Devotion Limited, Locke Limited, Moberly Limited, Morehouse Limited, Richland Limited, Sarnia Limited, West Carroll Limited, and Yurta Faf Limited, as contemplated by the SEC Settlement Agreement approved by the Bankruptcy Court in the Order Granting the Debtor's Motion for Approval of Settlement Agreement, entered on November 8, 2016 (ECF 1657) and approved by the Order Granting the Motion For Approval of Settlement and Termination of Annuity Contracts (ECF 1717).

**1.8** **Audubon Limited** means Audubon Asset Limited, an Isle of Man corporation.

**1.9** **Avoidance Actions** means any and all rights, claims, and causes of action that the Debtor, a bankruptcy trustee, or other authorized party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

**1.10** **Ballot** means each of the ballots in the form of Official Form 314 (as revised December 2015) to be distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on the Plan, on which the holder is to indicate acceptance or rejection of the Plan in accordance with the voting instructions and to make any other elections or representations required pursuant to the Plan or the Disclosure Statement Order.

**1.11** **Bankruptcy Case** means this chapter 11 bankruptcy case, assigned Case No. 14-35043-11 (BJH) in the Bankruptcy Court, and styled as *In re Samuel Evans Wyly, Debtor.*

**1.12** **Bankruptcy Code** means title 11 of the United States Code, as amended.

**1.13** **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**1.14** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the Bankruptcy Court, each as now in effect or as hereafter amended, to the extent applicable to the Bankruptcy Case or proceedings therein.

**1.15 Bankruptcy Schedules** means, as may be amended, the schedules of assets and liabilities, list of executory contracts and unexpired leases, statement of financial affairs, and related information Filed during the Bankruptcy Case by the Debtor pursuant to Bankruptcy Code § 521 and Bankruptcy Rules 1007 and 2015.3, as same may be amended, supplemented, or modified from time to time.

**1.16 Bar Date** means: (a) with respect to a Claim of a nongovernmental entity, February 24, 2015; (b) with respect to a claim of a Governmental Authority, April 17, 2015; (c) with respect to a Claim for damages arising from the rejection of an executory contract or unexpired lease, the first Business Day after thirty (30) calendar days after entry of an Order approving the rejection of such executory contract or unexpired lease; and (d) such other date as the Bankruptcy Court may fix by Final Order.

**1.17 Business Day** means any day, excluding Saturday, Sunday, or a "legal holiday" (as referenced in Bankruptcy Rule 9006(a)) on which national commercial banks are authorized or required to close.

**1.18 Cash** means legal tender of the United States of America or equivalents thereof.

**1.19 Causes of Action** means any and all rights, claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims, and affirmative defenses of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or Unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether Scheduled or not Scheduled and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law or in equity, or otherwise, based in whole or in part upon any act, omission, or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case through the Effective Date, including any Avoidance Actions and any claims for violation of Bankruptcy Code § 362. The Causes of Action of the Estate are described in the Disclosure Statement and Article 8.11 of the Plan.

**1.20 Claim** means a claim as defined in Bankruptcy Code § 101(5) against the Debtor or the Estate or that is of a type specified in Bankruptcy Code §§ 502(g)-(i).

**1.21 Claim Objection Deadline** means the first Business Day following sixty (60) calendar days after the Effective Date.

**1.22 Class** means all of the holders of Claims with respect to the Debtor having characteristics substantially similar to other Claims with respect to the Debtor and that have been designated as a class in Article IV of the Plan.

**1.23   Committee** means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

**1.24   Confirmation** means approval of the Plan by the entry of the Confirmation Order on the Bankruptcy Court's docket.

**1.25   Confirmation Date** means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**1.26   Confirmation Hearing** means the hearing(s) before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of the Plan pursuant to Bankruptcy Code § 1128, as such hearing(s) may be adjourned or continued from time to time.

**1.27   Confirmation Order** means the Order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129, as such Order may be amended, modified, or supplemented.

**1.28   Creditor** means a holder of a Claim.

**1.29   Debtor** means Samuel Evans Wyly, as debtor and debtor in possession of his Estate for the time period from the Petition Date through and including the day before the Effective Date, and for the time period from and after the Effective Date, Samuel Evans Wyly, in his individual capacity.

**1.30   Debtor's Adult Descendants** means

>   Lucy Rose Wyly Conklin
>   Sander Samuel Elliott
>   McCary Wyly Gilbert
>   Ian Acton Matthews
>   Laurie Wyly Matthews
>   Sarah Rose Matthews
>   Stewart Copeland Matthews
>   Kelly Wyly O'Donovan
>   Andrew Wyly
>   Christiana Wyly
>   Evan Wyly
>   Lisa Lyn Wyly
>   Mitchell Evan Wyly

**1.31   Debtor's Minor Descendants** means any living progeny of the Debtor identified in the Declarations who has not reached the age of 18 as of the Confirmation Date.

**1.32  Declaration** means the written statement of assets and financial interests made under 28 U.S.C. § 1746, on the form approved by the IRS, of (1) each of the Debtor's Adult Descendants on behalf of himself/herself and any of his/her minor children, and (2) any spouse of the Debtor's Adult Descendants who is receiving a release under Section 7.9(b) of the Plan.

**1.33  Deed of Release** means the Deed of Release, Waiver, and Indemnity (Sam-Side Trusts) between the Debtor, the IOM Trustees, and the Debtor's Adult Descendants whereby the Debtor and the Debtor's Adult Descendants will provide certain releases, waivers, covenants, and indemnities to the IOM Trustees as of the Effective Date in order to facilitate funding of the Plan.

**1.34  Disallowed Claim** means a Claim, or any portion thereof, that: (a) has been disallowed by a Final Order; (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date; or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date, or in the case of Administrative Claims, the Postconfirmation Bar Date.

**1.35  Disclosure Statement** means the *Disclosure Statement for the Chapter 11 Plan of Sam Wyly*, including all exhibits and schedules thereto, as amended, supplemented, or modified from time to time.

**1.36  Disclosure Statement Order** means the *Order (a) Approving (i) Disclosure Statement for the Chapter 11 Plan of Sam Wyly and (ii) Related Notices; (b) Setting Dates for Objection Deadline and Hearing Relating to Confirmation of the Plan; and (c) Granting Other Relief Relating to Plan Solicitation and the Confirmation of the Plan* (ECF [---]).

**1.37  Disputed Claim** means a Claim, or any portion thereof, that is set forth in a Filed Proof of Claim: (a) that (i) has not been Scheduled, or (ii) has been Scheduled at zero or as contingent, unliquidated, or disputed; (b) that differs in nature, amount, or priority from the Bankruptcy Schedules; or (c) that is the subject of an objection Filed by the Debtor, any party in interest, or the Liquidating Trustee (as applicable), and such objection has not been withdrawn or overruled by a Final Order; *provided, however*, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim, that has not been Allowed by Final Order or that is a Disallowed Claim.

**1.38  Distribution** means the payment of Net Proceeds by the Liquidating Trustee to the holders of Allowed Claims pursuant to the Plan.

**1.39  Effective Date** means the later of: (a) the first Business Day on which all conditions precedent to the effectiveness of the Plan, including Manx Court Approval,

have been satisfied or waived as provided in the Plan; or (b) such other date thereafter which is agreed to by the Debtor and the IRS.

**1.40 Estate** means the estate created by Bankruptcy Code § 541 upon the commencement of the Bankruptcy Case including, but not limited to, any Debtor-In-Possession bank accounts established by order of the Bankruptcy Court in the Bankruptcy Case, except for those portions of any segregated Debtor-In-Possession bank accounts attributable to the invested capital of any of the Debtor's Adult Descendants (the "**Segregated Accounts**") as provided for in the Plan Settlement Agreement and the Plan.

**1.41 Fee Application** means an application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code § 330 and Bankruptcy Rule 2016(a).

**1.42 File** or **Filed** means filed with the clerk of the Bankruptcy Court.

**1.43 Final Order** means an order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which: (a) the time to appeal, petition for certiorari, or move for reargument, new trial, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial, or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial, or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial, or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument, new trial, or rehearing shall have expired; *provided, however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Bankruptcy Rules may be filed with respect to such order.

**1.44 General Account** means one or more general accounts: (i) into which shall be deposited all funds not required or permitted to be deposited into any other account or reserve described in or contemplated by the Liquidating Trust Agreement; and (ii) from which shall be made all Distributions to Liquidating Trust Beneficiaries on the initial date of Distribution and on each subsequent date of Distribution.

**1.45 General Unsecured Claim** means a Claim that is not an Administrative Claim, Priority Tax Claim, Ad Valorem Tax Claim, or Priority Claim.

**1.46 General Unsecured Reserve** means (i) the amount set aside as approved by the *Order Granting the Debtor's Motion for Approval of Settlement Agreement with the SEC under Bankruptcy Rule 9019* (ECF 1657) plus (ii) an amount equal to the total of any Allowed Class 2 Claims based on damages caused by the rejection of any executory contract or unexpired lease pursuant to Article XII hereof, to be

administered by the Liquidating Trustee, for payment of the Allowed Class 2 Claims according to the procedures set forth in the Plan.

1.47 **Ginger Trust** means the so-named arrangement established by the Deed of Appointment dated March 27, 2001.

1.48 **Governmental Authority** means any domestic, foreign, national, federal, state, or local governmental unit, authority, department, court, agency, or official, including any political subdivision thereof.

1.49 **Homestead** means the residential property located at 3905 Beverly Drive, Dallas, Texas 75205, determined to be the homestead of the Debtor in the *Order* (ECF 1393) entered by the Bankruptcy Court on July 12, 2016.

1.50 **Impaired** means that a Claim is "impaired" within the meaning of Bankruptcy Code § 1124.

1.51 **IOM Reserve** means the account(s) to be established by separate arrangement between the IOM Trustees and the United States of America to address wind-up expenses for the IOMT and certain potential future liabilities of the IOM Trustees.

1.52 **IOM Trustees** means First Names Trust Company (Isle of Man) Limited and Inter-Continental Management Limited.

1.53 **IOMT** means all of the following Isle of Man Trusts:[2]

> The Bulldog Non-Grantor Trust
>
> The Delhi International Trust
>
> The Lake Providence International Trust
>
> The Bessie Trust
>
> The La Fourche Trust
>
> The Arlington Trust
>
> The Crazy Horse Trust
>
> The Sitting Bull Trust
>
> The Tallulah International Trust
>
> The Plaquemines Trust

---

[2] The Arlington, Crazy Horse, Sitting Bull, and Tallulah International Trusts were all terminated and dissolved on December 31, 1996. *See* Joint Stipulations of Fact, Docket No. 1040, paragraphs 57-65. The Plaquemines Trust was voided in December 1999 and the Bulldog II Trust was voided in October 2004. *See* 2006 Senate Report.

The Bulldog II Trust

The existing trusts are more specifically identified by name, trustees, and beneficiaries on Exhibits 1 and 2 to the Plan, but, for the avoidance of doubt, exclude the Ginger Trust.

**1.54  IRS** means the Internal Revenue Service, an agency of the Department of the Treasury of the United States of America.

**1.55  IRS Appeal** means the Debtor's appeal of the *Order* (ECF 1356) entered in favor of the IRS pursuant to the *Memorandum Opinion* (ECF 1247) of the Bankruptcy Court in the Bankruptcy Case to the extent such appeal pertains to the Debtor, pending as Case No. 16-11604 in the United States Court of Appeals for the Fifth Circuit.

**1.56  Isle of Man High Court** means the High Court of Justice of the Isle of Man, Civil Division.

**1.57  Isle of Man High Court Order** means that certain order made on June 13, 2017, by the Isle of Man High Court in Case No. CHP 17/0051B, *In the Matter of The Bulldog Nongrantor Trust et al.*

**1.58  Lien** means a "lien" as defined in Bankruptcy Code § 101(37).

**1.59  Liquidating Trust** means the liquidating trust created under the provisions of the Plan and the terms of the Liquidating Trust Agreement.

**1.60  Liquidating Trust Agreement** means the agreement establishing the Liquidating Trust to be executed by the Debtor and the Liquidating Trustee, in substantially the form filed as a Plan Document.

**1.61  Liquidating Trust Assets** means all Causes of Action, all other legal and equitable interests of the Debtor and the Estate in property, real and personal, tangible and intangible, wherever situated, together with such other property as may be recovered and delivered into the Liquidating Trust from time to time after the Effective Date, but expressly excluding the Retained Assets except as otherwise provided herein.

**1.62  Liquidating Trust Beneficiary** means each Creditor holding an Allowed Claim in Classes 1-3 that receives treatment by means of Distributions to be made under the Plan on and after the Effective Date.

**1.63  Liquidating Trust Committee** means one to three members to be designated by the IRS composing the committee established upon the Effective Date to monitor, supervise, and direct the Liquidating Trustee's administration of the Liquidating Trust and to take such other actions as are set forth in the Plan, the

Liquidating Trust Agreement, and the Confirmation Order or such other actions as may be approved by the Bankruptcy Court.

**1.64 Liquidating Trust Interest** means the beneficial interest of a Liquidating Trust Beneficiary in the Liquidating Trust.

**1.65 Liquidating Trust Permitted Liens** means any post-Effective Date Allowed Ad Valorem Tax Claims accruing against and secured by real property contained in the Liquidating Trust.

**1.66 Liquidating Trustee** means Dennis S. Faulkner as the trustee of the Liquidating Trust and any of his successors.

**1.67 Manx Court Approval** means approval given by the Isle of Man High Court and any other relevant regulators of the IOMT authorizing the IOM Trustees to fund the Plan and liquidate the IOMT.

**1.68 Maverick Capital** means Maverick Capital, Ltd.

**1.69 Minor Trusts** means those certain trusts established by certain of the Debtor's Adult Descendants for the benefit of minor and unborn beneficiaries of the '92 Trusts and funded with domestic assets of those settlors, as provided for in the Isle of Man High Court Order.

**1.70 Net Proceeds** means available Cash from the Liquidating Trust and the income, proceeds of the sale, or other disposition proceeds of the Liquidating Trust Assets net of (i) normal and customary expenses associated with the disposition, transfer, sale, and liquidation of the Liquidating Trust Assets, (ii) fees and expenses of the Liquidating Trustee, the Liquidating Trust's professionals, and the Liquidating Trust Committee in connection with the administration of the Liquidating Trust, (iii) other, normal expenses of administration of the Liquidating Trust Assets (including the establishment of such reserves as the Liquidating Trustee deems appropriate under Article X hereof) and the payments permitted by the Plan and the Liquidating Trust Agreement, (iv) all taxes, fees, levies, assessments, or other governmental charges incurred or assumed by the Liquidating Trust, and (v) amounts held in the Undeliverable Distribution Reserve.

**1.71 Order** means an order of the Bankruptcy Court.

**1.72 Parties** means collectively the Debtor and the IRS and **"Party"** means either one of them as is applicable in the context used.

**1.73 Person** means any "person" as defined in Bankruptcy Code § 101(41).

**1.74 Petition Date** means October 19, 2014, the date on which the Debtor commenced the Bankruptcy Case.

**1.75  Plan** means this *Third Amended Chapter 11 Plan of Sam Wyly* which the Plan Settlement Agreement contemplates will be filed by the Debtor in the Bankruptcy Case, together with any supplements, amendments, or modifications thereto.

**1.76  Plan Documents** means all documents, forms, lists, and agreements contemplated under the Plan to effectuate its terms and conditions which shall be filed as exhibits or supplements to the Plan not less than five (5) Business Days before the Confirmation Hearing.

**1.77  Plan Settlement Agreement** means the agreement to be entered into, by and between the Debtor and the United States of America on behalf of the IRS, for the purpose of resolving the Tax Judgment and other claims against the Debtor and the Estate.

**1.78  Postconfirmation Bar Date** means the first Business Day following sixty (60) calendar days after the Effective Date.

**1.79  Priority Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(4)-(7), (9)-(10).

**1.80  Priority Tax Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(8).

**1.81  Professional** means any Person employed in the Bankruptcy Case at the expense of the Estate pursuant to Bankruptcy Code §§ 327 or 1103.

**1.82  Professional Fee Claim** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs and expenses incurred on and after the Petition Date and on and before the Effective Date.

**1.83  Proof of Claim** means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**1.84  Pro Rata** means the proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of: (a) its full stated amount claimed by the holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Final Order or other applicable bankruptcy law; and (b) the amount estimated as allowable by the Bankruptcy Court.

**1.85  Released Parties** means (a) the Debtor, (b) the Committee and its members, (c) Highland Stargate, Ltd., and (d) with respect to each of the foregoing parties, the past and present directors, managers, officers, employees, attorneys,

advisors, and other representatives of each such party, solely in their capacity as such.

**1.86 Retained Assets** means those certain properties and assets to be retained by the Debtor on and after the Effective Date as set forth in the Plan Settlement Agreement and Section 7.10 of the Plan. For the sake of clarity, property of the Estate and the Liquidating Trust Assets do not include the Retained Assets.

**1.87 Rosemary's Ranch** means Rosemary's Circle 'R' Ranch, including the two hundred forty-four (244) acres of land located near the town of Woody Creek in Pitkin County, Colorado, and all improvements thereon and all fixtures and personal property of the Debtor situated on or used in connection therewith.

**1.88 Sam-Side Relief Defendants** means, collectively, Cheryl Wyly, Evan Acton Wyly, Laurie Wyly Matthews, David Matthews, Lisa Lyn Wyly, John Graham, Kelly Wyly O'Donovan, Andrew Wyly, and Christiana Wyly.

**1.89 Scheduled** means as set forth in the Bankruptcy Schedules.

**1.90 SEC** means the Securities and Exchange Commission, an agency of the national government of the United States.

**1.91 SEC Judgment** means that Claim of the SEC in the amount of $198,118,825.16.

**1.92 SEC Settlement Agreement** means that agreement between the SEC, the Debtor, and the Sam-Side Relief Defendants effective September 29, 2016 and approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 in the *Order Granting the Debtor's Motion for Approval of Settlement Agreement*, entered on November 8, 2016 (ECF 1657).

**1.93 Tax** means federal income tax, federal gift tax related to or arising from a Transaction, any additions or penalties relating to federal taxes or federal tax forms, and interest relating to any of the foregoing.

**1.94 Tax Judgment** means the *Order Determining Tax Liabilities Of Debtor Samuel Wyly*, entered by the Bankruptcy Court on June 27, 2016 (ECF 1356).

**1.95 Tax Liabilities** means (i) the Debtor's liabilities described in the Tax Judgment, (ii) any postpetition taxes (including any additions or penalties relating to federal taxes or federal tax forms, and including interest) incurred by the Debtor and/or the Estate up to and including the Effective Date, and (iii) any post-Effective Date Tax incurred by the Debtor related to or arising from a Transaction.

**1.96 Transaction** means any transaction (including, without limitation, any distribution, transfer, collection, sale, exchange, liquidation, or disposition) that

ultimately results in either (i) the receipt, in furtherance of the Plan, the SEC Settlement Agreement, or the Wrangler Trust Settlement, of funds or assets by (A) the Estate, (B) the Liquidating Trustee on behalf of the Liquidating Trust, (C) the IRS, (D) the SEC, (E) the Committee on behalf of the general unsecured creditors, or (F) any other Creditor in accordance with the Plan; or (ii) the delivery of the Retained Assets to the Debtor.  For the avoidance of doubt, "Transaction" includes, but is not limited to, the receipt of any deferred compensation by the Debtor and/or the Estate (including any deferred compensation payments from Maverick Capital, which are contractually paid to Highland Fund and then distributed to the Debtor) used to fund the Plan, and the distribution, transfer, collection, sale, exchange, liquidation, or disposition of any directly or indirectly held assets of the IOMT or the Estate (including the Homestead) used to fund the Plan.  For the avoidance of doubt, "Transaction" does not include any transactions undertaken to fund the Minor Trusts or to obtain waiver from the British Red Cross of its beneficial interest in the '92 Trusts.

**1.97  Undeliverable Distribution Reserve** has the meaning ascribed to it in Section 10.1 of the Plan.

**1.98  Undeliverable** or **Unclaimed Distribution** means a Distribution by the Liquidating Trustee pursuant to the Plan that is either: (a) attributable to a holder of an Allowed Claim that has failed to prepare, execute, and return to the Liquidating Trustee an IRS Form W-9 as requested by the Liquidating Trustee; or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**1.99  Unsecured** means, with reference to a Claim, a Claim that is neither supported by any Lien on property of the Estate or of the Debtor nor subject to any offset.

**1.100  U.S. Trustee Fees** means fees payable pursuant to 28 U.S.C. § 1930.

**1.101  Wrangler Trust** means The Wrangler Trust, a United States domestic trust settled by the Debtor as of June 30, 2000.

**1.102  Wrangler Trust Adversary Proceeding** means Adversary Proceeding Case No. 17-3013 pending before the Bankruptcy Court in the Bankruptcy Case.

**1.103  Wrangler Trust Distributions** means any and all payments, distributions, advances or currently unpaid loans made by Wrangler Trust to any of the Debtor's Adult Descendants, or to any trust settled by any of the Debtor's Adult Descendants, or of which any of the Debtor's Adult Descendants is a beneficiary, prior to the Petition Date.

**1.104  Wrangler Trust Settlement** means the pending settlement of the Wrangler Trust Adversary Proceeding.

## ARTICLE II

## PLAN SETTLEMENT AGREEMENT

The Plan is based upon and intended to implement the terms of the Plan Settlement Agreement which was heavily negotiated over an extended period of time by the Debtor and his family with the DOJ on behalf of the Debtor's largest creditor the IRS. The Plan Settlement Agreement is a Plan Document. There are certain approvals that must be obtained by the DOJ before it is authorized to enter into the Plan Settlement Agreement on behalf of the IRS, which approval process is currently underway. Confirmation of the Plan is expressly conditioned upon receipt of appropriate authorization for the DOJ and the IRS to execute and consummate the Plan Settlement Agreement. Assuming that such approval and authorization is obtained and that notice of such approval and authorization is given to the Debtor and the Bankruptcy Court, upon and as a condition to Confirmation, the Debtor seeks authorization of the Bankruptcy Court to enter into and execute the Plan Settlement Agreement in settlement of the Claim of the IRS pursuant to Bankruptcy Rule 9019 and consistent with the terms of the Plan.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

**3.1 Treatment**. Except as otherwise provided herein, the Liquidating Trustee shall pay from the Net Proceeds of the Liquidating Trust Assets to the holder of an Allowed Administrative Claim, in satisfaction of such Claim as set forth in Section 9.1 of the Plan, the Allowed Amount of such Claim on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) the first Business Day following fifteen (15) calendar days after the date such Claim is Allowed by Final Order; or such holder shall receive such other less favorable treatment as may be agreed upon in writing by the Debtor or the Liquidating Trustee and such holder.

**3.2 General Administrative Claims**. Except as otherwise set forth in Article III of the Plan, and except for ordinary course of business creditors whose invoices or payments have been approved through the Bankruptcy Case budgeting process, each holder of an Administrative Claim, other than an Administrative Claim for U.S. Trustee Fees, shall be required to File and serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Postconfirmation Bar Date or be forever barred from seeking payment thereof. An Administrative Claim with respect to which an application has been properly and timely filed pursuant to Section 3.2 of the Plan shall be treated and paid as an Administrative Claim only to the extent Allowed by Final Order. For the sake of clarity, all prepetition and postpetition Allowed Ad Valorem Tax Claims have

heretofore been paid when due. The foregoing notwithstanding, the IRS shall not be subject to any bar date for Administrative Claims established in the Plan.

**3.3  Professional Fee Claims**. Each Professional whose retention with respect to the Bankruptcy Case has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim, and who has not previously received a Final Order approving its final Fee Application, shall File and serve on all parties required to receive notice a final Fee Application on or before the Postconfirmation Bar Date. The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred. A Professional Fee Claim with respect to which a Fee Application has been properly and timely Filed pursuant to Section 3.3 of the Plan shall be treated and paid as an Administrative Claim only to the extent Allowed by Final Order. The unpaid Allowed Amount of each Professional Fee Claim as set forth in such Final Order shall be paid from any retainer held by such Professional with the remaining balance (if any) of such amount to be paid by the Liquidating Trustee in accordance with Section 3.1 of the Plan.

**3.4  Allowed Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim will receive from the Liquidating Trustee on account of such Allowed Priority Tax Claim regular installment payments of Cash (a) of a total value, as of the Effective Date, equal to the Allowed Amount of the Allowed Priority Tax Claim, and (b) over a period ending not later than five (5) years after the Petition Date, unless such holder of an Allowed Priority Tax Claim reaches agreement with the Liquidating Trustee with consent of the Liquidating Trust Committee for earlier payoff in full.

**3.5  U.S. Trustee Fees**. All unpaid U.S. Trustee Fees shall be paid in Cash in full by the Liquidating Trustee on and after the Effective Date (or as soon as reasonably practicable after such fees become due) from Liquidating Trust Assets, as set forth in Section 9.1 of the Plan. The Liquidating Trustee shall pay postconfirmation U.S. Trustee Fees when due and shall file and serve upon the U.S. Trustee quarterly operating reports until the Bankruptcy Case is closed or until the Court enters an Order providing otherwise.

**3.6  No Priority Claims**. The Debtor knows of no Priority Claims but in the event a Priority Claim were to be presented, such claimant shall be treated and, if Allowed, paid under the provisions of Section 3.1 of the Plan.

## ARTICLE IV

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

**4.1  Introduction**. In accordance with Bankruptcy Code § 1123(a)(1), except for Administrative Claims, Priority Tax Claims, and Priority Claims, all Claims are placed into the Classes described below for all purposes, including voting on,

confirmation of, and Distributions under the Plan. A Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been satisfied, withdrawn, or released, prior to the Effective Date.

**4.2     Claims Against the Debtor and the Estate and Interest of the Debtor**. The Claims against the Debtor and the interest of the Debtor are classified as follows:

**Class     Class Description**

Class 1:     the Allowed Unsecured Claim of Torie Steele that is entitled to the treatment provided under Bankruptcy Code § 507(a)(1).

Class 2:     all Allowed nonpriority Unsecured Claims of all Creditors excluding the Allowed Claims classified in Classes 1 and 3.  For the sake of clarity, Class 2 shall not include the claim of Wrangler Trust, which is otherwise addressed in the Plan.

Class 3:     the Allowed nonpriority Unsecured Claim of the IRS.

Class 4:     the residual interest of the Debtor in the Bankruptcy Case.

# ARTICLE V

# PROVISIONS FOR SATISFACTION OF CLAIMS

**5.1     Introduction**.  The Claims and interests classified in Article IV of the Plan shall be treated and satisfied in the manner set forth in this Article V.  More fully set forth in other provisions of the Plan are the mechanics of Distributions by the Liquidating Trustee to Creditors holding Allowed Claims in the Classes.

**5.2     Treatment of Classified Claims**.

(a)     **Class 1** (the Allowed Unsecured claim of Torie Steele that is entitled to the priority treatment provided under Bankruptcy Code § 507(a)(1)).  On the Effective Date, the Plan delegates to the Liquidating Trustee, and the Liquidating Trustee shall assume on behalf of the Liquidating Trust, the obligation to perform and pay the Class 1 Claim. The holder of the Class 1 Claim shall therefore receive from the Liquidating Trust on account of such Claim either: (i) the continued timely performance of the obligations of the Debtor as ordered in the *Judgment* entered in Adv. Proc. No. 14-03142-BJH (Adv. Proc. No. 14-03142 ECF 34) and the *Order Regarding Motion To Determine Funds Are Not Property of the Estate* (ECF 520) for and during the life of the Debtor and terminating immediately upon his death, or (ii) such other treatment upon which the Class 1 Creditor and the Liquidating Trustee, with approval of the IRS, shall agree after the Effective Date, without necessity of an order or other notice to and approval by the Bankruptcy Court.

(b)    **Class 2** (all Allowed nonpriority Unsecured Claims of all Creditors excluding the Allowed Claims classified in Classes 1 and 3). Beginning the first Business Day following thirty (30) calendar days after the Claim Objection Deadline, the Liquidating Trustee shall make initial Distributions, Pro Rata, from the General Unsecured Reserve to each holder of an Allowed Claim in Class 2 until each such Allowed Class 2 Claim shall have received eighty-five percent (85%) of the aggregate Allowed Amount of such Claim. The first Business Day following fifteen (15) calendar days after the initial Distribution to an Allowed Class 2 Claim has been completed, the Liquidating Trustee shall make a final Distribution, Pro Rata, from the General Unsecured Reserve to each such holder of an Allowed Class 2 Claim until the holders shall have collectively received the lesser of one hundred percent (100%) of the aggregate Allowed Amounts of the Class 2 Claims or the full amount of the General Unsecured Reserve.

(c)    **Class 3** (the Allowed nonpriority Unsecured Claim of the IRS). Beginning on the Effective Date or as soon as reasonably practicable thereafter, the Liquidating Trustee shall make Distributions of all Net Proceeds of the Liquidating Trust Assets to the IRS, subject to: prior payment and reservation for future payments as necessary for Classes 1 and 2 and the Administrative Claims, Priority Tax Claims, and other Priority Claims, if any, as set forth herein. At any time thereafter, in lieu of receiving Net Proceeds, the IRS may elect in its sole discretion to direct the Liquidating Trustee to transfer and deliver to the IRS or its designee any or all of the real and personal properties of the Liquidating Trust.

(d)    **Class 4** (the residual interest of the Debtor in the Bankruptcy Case). On the Effective Date, the Debtor shall receive and retain the Retained Assets free and clear of any Liens, Claims, encumbrances, and other interests of every kind and nature.

**5.3    Designation of Impaired Classes**. Allowed Claims in Classes 2 and 3 are impaired.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1    Classes Entitled to Vote**.  Each Allowed Claim in Classes 2 and 3 shall be entitled to vote to accept or reject the Plan in the manner provided in the Disclosure Statement Order or any other Order.

**6.2    Acceptance by Impaired Classes of Claims**.  An Impaired Class of Claims shall have accepted the Plan if, disregarding the votes of any holder designated under Bankruptcy Code § 1126(e): (a) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and

(b) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1     Compromise and Settlement of Claims and Controversies**. As provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that all such compromises and settlements are in the best interests of the Debtor, his Estate, and holders of Claims and are fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against the Debtor and his Estate and Causes of Action against other entities. Subject to Article XIV hereof, all Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

For the avoidance of doubt, it is not the intent of the Debtor that Confirmation of the Plan shall in any manner alter or amend any settlement and compromise between the Debtor and any Person that has been previously approved by the Bankruptcy Court (each, a "**Prior Settlement**"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.

**7.2     Deed of Release.**  In order to ensure the cooperation of the IOM Trustees and to facilitate the wind-up and liquidation of the IOMT and funding of the Plan with assets owned by the IOMT, the Debtor and his family negotiated and have agreed to enter into the Deed of Release, which is a Plan Document. In order to implement the Plan, and provided that the Confirmation Order has been entered and Manx Court Approval has been secured, the Debtor seeks authorization of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 to enter into and execute the Deed of Release, in form and substance substantially similar to the one attached to the Plan as Exhibit 6, effective as of the Effective Date.

**7.3     The Liquidating Trust**.  On the Effective Date, the Liquidating Trust shall be formed, created, and established upon execution of the Liquidating Trust Agreement by the Debtor and the Liquidating Trustee, and upon such execution the

Liquidating Trust shall become effective. In accordance with the Plan and the Liquidating Trust Agreement, the Liquidating Trust shall be established in order to: (a) receive and liquidate, except for specific properties otherwise disposed of or dealt with below, the Liquidating Trust Assets; (b) resolve all Disputed Claims; (c) make all distributions to Allowed Claims in Classes 1-3 and to each Allowed Administrative Claim, Allowed Priority Tax Claim, and other Allowed Priority Claim, if any; (d) close the Bankruptcy Case; and (e) otherwise implement the Plan and finally administer the Estate. The Liquidating Trust shall not engage in a trade or business and shall conduct its activities consistent with the Liquidating Trust Agreement. On and after the Effective Date, the Liquidating Trust shall assume, perform, and pay when due all liabilities related to transfer, ownership, operation, and disposition of the Liquidating Trust Assets. Article VIII of the Plan and the Liquidating Trust Agreement contain more detailed provisions regarding the establishment, operation, and termination of the Liquidating Trust.

**7.4    The Trusts**.  The Plan contemplates that all current assets expressly excepting (a) assets in the IOM Reserve, and (b) the stock of Isle of Man companies held directly or indirectly by the IOMT (which will be rendered valueless as a result of the IOMT winding-up and dissolution process) held by any of the following entities shall be transferred to the Liquidating Trust:  (i) foreign trusts settled or created by the Debtor on or after January 1, 1992, and (ii) any other foreign or domestic business entities of any nature owned and controlled, directly or indirectly, by the Debtor or by any foreign trust settled or created by the Debtor since January 1, 1992, including, but not limited to, the IOMT; provided, however, that the assets of Ginger Trust and Wrangler Trust are expressly excepted.[3]  The assets to be transferred to the Liquidating Trust pursuant to the Plan include, but are not limited to, funds or assets held by any Cayman Islands or foreign entities affiliated with the Debtor or the IOMT.  All (i) Isle of Man entities held directly or indirectly by the IOMT (regardless of form), and (ii) all IOMT shall be wound-up and dissolved consistent with Manx law.

**7.5    '92 Trust Assets**.  The IOM High Court Order provides, in pertinent part, that the trustees of the '92 Trusts are authorized and directed to: (a) make certain payments against the settlement amount provided for in the SEC Settlement Agreement, which payments have been made; and (b) upon the satisfaction of the conditions set forth in the Isle of Man High Court Order, contribute all or any part of the balance of the assets of the '92 Trusts remaining after payment of the SEC settlement amount towards funding the Plan upon its Confirmation, including funding of the Liquidating Trust. On the Effective Date, the Debtor will begin to take all required steps to assure the receipt and application by the Liquidating Trust of all remaining '92 Trusts assets and proceeds as provided in the Plan.

---

[3] The assets of the Wrangler Trust are the subject of, and will be distributed in accordance with, the Wrangler Trust Settlement following its approval.

**7.6 '94/95 Trust Assets**. Additional funding of the Plan will be through the use of (a) assets currently in the '94/95 Trusts, and (b) the Net Proceeds of the sale of any '94/95 Trusts' assets that were previously sold. The '94/95 Trusts have direct or indirect ownership interests in certain real and personal property located in the United States and hold cash, securities, and investments. Pursuant to the Parties' agreement, some of such real estate has been sold previously or is currently being marketed for sale. Subject to: (i) Manx Court Approval or specific approval of the IOM Trustees; (ii) the occupancy and purchase options with respect to Cottonwood I and II set forth elsewhere in the Plan; and (iii) the option of the Debtor and certain of his family members to retain certain of the personal property owned by Audubon Limited, the Debtor, on the Effective Date, will begin to take all required steps to have the remaining assets of the '94/95 Trusts, or the agreed upon portion of sale proceeds for the sold real estate, as set forth in Section 7.9(g)-(j) of the Plan, transferred to the Liquidating Trust. In order to facilitate implementation of the Plan in regards to transfer of the assets of the IOMT to the Liquidating Trust, the Debtor will use his best efforts to secure declarations from the IOM Trustees disclosing all assets and investments currently owned or otherwise held by each IOMT for the benefit of the Debtor or any of the Debtor's family members.

**7.7 Rosemary's Ranch and the Debtor's Ranch Receivable**. Rosemary's Ranch was sold by public auction for $12,750,000, which sale closed and funded on September 19, 2018. The receivable (the "**Ranch Receivable**") for all prepetition and postpetition advances by the Debtor and/or the Estate to Rosemary's Circle R Ranch East LLC (formerly Rocky Mountain Serenity I, LLC and Two Mile Ranch I, LLC) and Rosemary's Circle R Ranch West LLC (formerly Rocky Mountain Serenity II, LLC and Two Mile Ranch II, LLC), Colorado limited liability companies and the record owners of this property (collectively, the "**Ranch LLCs**") was collected from the net sale proceeds of such sale and utilized to pay in full the Ranch Receivable. The sale proceeds remaining, after the payment of taxes, closing costs, brokerage commissions, a retention bonus of 1% to the ranch manager Jay Yeary, and the Ranch Receivable were deposited in a segregated account at Bank of Texas (the "**Bank of Texas Account**") pending further Court order or the Effective Date, at which time such proceeds, together with all monies in the Rosemary's Circle R Ranch Funding account and any bank account of the Ranch LLCs or Rosemary Circle R Ranch Management Trust (collectively, the "**Ranch Bank Accounts**") shall be delivered to the Liquidating Trust to be utilized to make payments upon the Allowed Claims.

For the avoidance of doubt, the transfer of any proceeds from the sale of Rosemary's Ranch (beyond repayment of the Ranch Receivable) to the Liquidating Trust shall be subject to receipt of Manx Court Approval or specific approval of the IOM Trustees. In that event, Kelly Wyly O'Donovan and Lisa Lyn Wyly, in their capacities as Trustees of Rosemary's Circle R Ranch Management Trust, a Texas trust, together with the Debtor, Lisa Lyn Wyly, Laurie Wyly Matthews, and Kelly Wyly O'Donovan, in their capacities as Grantors of Rosemary's Circle R Ranch

Management Trust, which is the member of each of the Ranch LLCs, shall ratify and approve the transactions contemplated by this section of the Plan.

7.8 **Artwork**. All unsold works of fine art, antiques, and collectibles that are owned by the Debtor or Audubon Limited shall be sold, with the exception of the Retained Assets. Such items to be sold are identified on the list (the "**Artworks List**") to be filed as a Plan Document. In March 2015, with Bankruptcy Court approval (ECF 478), the Debtor engaged Dallas Auction Gallery ("**DAG**"), which from 2015 to 2018 conducted six auctions of fine art, antiques, and collectibles that were owned by the Debtor or by Audubon Limited (ECF 477, 776, 1414, 1963, 1984, 2028). All net proceeds of such sales were deposited into the Debtor-in-possession bank account of the Estate or escrowed with DAG, as applicable. *See, e.g.*, ECF 1963. Two additional collectibles owned by Audubon Limited that were fixtures in the Aspen, Colorado home of Cheryl Wyly were also sold, and the proceeds of such items were escrowed with DAG. *See* ECF 2045. On the Effective Date, the Debtor shall deliver any unsold items identified on the Artworks List to the Liquidating Trust, and DAG shall deliver to the Liquidating Trust all proceeds of any previous artwork sales it may be holding in escrow. From and after the Effective Date, the Liquidating Trust may, at its election, continue the engagement of DAG for the purpose of selling such artwork.

7.9 **Further Terms for Implementation of the Plan**. Additional means of implementation of the Plan shall be the following:

(a) After making provision for the IOM Reserve, the transfers of cash and/or assets from the IOMT to the Debtor for safekeeping among the properties of the Estate pending Confirmation, or to the Liquidating Trust, as is applicable, shall occur as soon as practicable.

(b) The Adult Descendants and, as applicable, their respective spouses, have previously delivered to the IRS an unsigned copy of their Declarations. On the Effective Date, signed copies of such Declarations shall be provided to the IRS. With the exception of Ginger Trust and Wrangler Trust (other than the Wrangler Trust Distributions which are expressly included in the following releases), on the Effective Date, the Debtor (on behalf of the Estate) and, through the counter-execution of the Declarations, the IRS shall release all claims for transferee or donee liability up to and including the Effective Date (including liability related to or arising from the Tax Liabilities) against (a) the Debtor's Adult Descendants (other than any tax liability arising from the cancellation of indebtedness by the Wrangler Trust with respect to loans made to its beneficiaries prior to the Petition Date), their respective spouses (but only those spouses who have submitted a Declaration), and the Debtor's Minor Descendants, (b) the domestic trusts settled or created by the Debtor for the benefit of his heirs, and (c) other domestic trusts unrelated to the IOMT in which the Debtor's heirs have interests (including subsidiary entities of all such domestic trusts, if any), provided that such trusts and entities shall be specifically identified in the Declarations. For the sake of clarity, the Plan shall in no way affect any claims that

the IRS may have against Evan Wyly with respect to Ginger Trust nor any rights or defenses that Evan Wyly or Ginger Trust has with respect to such claims. In addition, the Plan shall in no way affect any claims that the IRS may have against Wrangler Trust, nor any right or defenses that Wrangler Trust has with respect to such claims.[4]

(c) No Tax for any Transaction shall be owed by the Debtor, the Estate, the Debtor's Adult Descendants, the Debtor's Minor Descendants, or any entity whose assets are subject to Sections 7.2 through 7.7 of the Plan.

(d) The Plan shall be in full satisfaction of the Tax Liabilities (including those set forth in the Tax Judgment). For the sake of clarity, except to the extent that no taxes are owed as provided elsewhere in the Plan, the Debtor will be liable for any taxes on his income or resulting from his transactions occurring after the Effective Date and not related to a Transaction.

(e) Upon the Effective Date, the Debtor shall be entitled to $5,000,000 from the Homestead sale proceeds (less all holdback amounts as set forth in the August 29, 2017 Order, ECF 1863), as more fully set forth in Section 7.10(b) of the Plan.

(f) Any of the following real properties which are owned, directly or indirectly, in whole or in part, by an IOMT may be purchased at the following prices by any one or more of the Debtor's Adult Descendants, or entities under their control, provided that in each case such purchaser gives written notice to the Parties of his/her/its intent to make such purchase within 45 days after the Confirmation Date and closes such purchase by the later of 90 days after the Confirmation Date or 14 days after the Effective Date, unless otherwise extended by agreement of the Parties[5]:

---

[4] If the pending Wrangler Trust Settlement, the terms of which shall be memorialized in a separate agreement, is approved by the Bankruptcy Court and the IRS and such settlement is consummated prior to the Effective Date, the assets of Wrangler Trust *other than* the Wrangler Trust Distributions and any payments due to the beneficiaries pursuant to such agreement, shall be transferred to the Estate, or if approved and consummated after the Effective Date, to the Liquidating Trust. In the event that the pending Wrangler Trust Settlement is not approved by the Bankruptcy Court and the IRS or, following such approval, is not consummated, to the extent that any assets of Wrangler Trust *other than* the Wrangler Trust Distributions are determined to be assets of the Estate by Final Order in the Wrangler Trust Adversary Proceeding, then all such assets shall be transferred to the Liquidating Trust, with the exception of the Wrangler Trust Distributions. Such transfer to the Liquidating Trust shall be made on the later to occur of (i) the entry of the Final Order or (ii) the Effective Date.

[5] The Parties acknowledge that if the sale of any real estate in which an IOMT claims an interest should occur prior to the Effective Date, the net sale proceeds will be

Cottonwood Ventures I & II (four condominium units located in Aspen, Colorado, designated as the following units) any one or more of which can be purchased separately:

Unit 1:  $3,744,000
Unit 4:  $336,000
Unit 7A:  $3,456,000
Unit 7B:  $2,880,000

(g)  **Spitting Lion, LLC**. Spitting Lion, LLC is a Texas limited liability company that previously owned real property located at 4144 Stanhope Avenue in Dallas, Texas. Spitting Lion sold its property and the Parties and the IOM Trustees agreed that the sales proceeds would be distributed as follows:

(i)  $252,856.00 to the segregated DIP account to repay the Debtor for the pre-petition loan he provided to the Spitting Lion Management Trust, including $32,856.00 in interest;

(ii)  0.96% of the remaining net proceeds of $617,297.60, or $5,926.06, to the segregated DIP account (the interests attributable to Evan Wyly, Lisa Wyly, Laurie Matthews and Kelly O'Donovan);

(iii)  2.45%, or $15,123.79, to the segregated DIP account (the interest attributable to McCary Wyly Gilbert); and

(iv)  the remaining 96.59%, or $596,247.75, to the SEC as a credit against the SEC settlement amount provided for in the SEC Settlement Agreement, which payment has previously occurred.

Upon the Effective Date, $10,000 from the segregated DIP account attributable to the Spitting Lion sale shall be distributed to McCary Wyly Gilbert, and all remaining amounts on deposit shall be distributed to the Liquidating Trust.

(h)  **Mi Casa, LLC**. Mi Casa, LLC is a Texas limited liability company owned entirely by Mi Casa Management Trust.  Mi Casa Management Trust was funded in part by Laurie Wyly Matthews and in part from IOMT assets. Mi Casa LLC owned a house located at 4945 Crooked Lane in Dallas, Texas, which was previously sold to a third-party buyer.  The net sale proceeds have been deposited into the Bank of Texas Account. Upon the Effective Date, the Parties agree that $32,116 of the net sale proceeds shall be distributed to Laurie Wyly Matthews and, subject to Manx

---

placed in escrow pending transfer to the Liquidating Trust upon the Effective Date or specific approval of the IOM Trustees.

**THIRD AMENDED CHAPTER 11 PLAN OF SAM WYLY**                                   Page 22

Court Approval, the remaining net sale proceeds shall be distributed to the Liquidating Trust.

(i) **Cottonwood Ventures I, LLC.** Cottonwood Ventures I, LLC owns Unit 1 of the Paragon Building Condominium Association in Aspen, Colorado, which the Parties shall market for sale upon the earlier of the Effective Date or 90 days following the Confirmation Date, if not previously purchased pursuant to Section 7.9(f) of the Plan. Upon the earlier of the sale of Unit 1, regardless of whether sold to Debtor's Adult Descendants, or entities under their control, or to an unrelated third party, or the Effective Date, Cottonwood Ventures I, LLC shall distribute 100% of the Elliott Yeary Gallery's operations, business assets, and inventory identified on Exhibit 3 to the Plan filed as a Plan Document, to Wyly Works, Inc., a Texas corporation wholly owned by Kelly Wyly O'Donovan. On the later of the sale of Unit 1 or the Effective Date, Cottonwood Ventures I, LLC shall distribute (i) the sum of $50,000 to Kelly Wyly O'Donovan from such sale proceeds in repayment of her April 13, 2017 loan to Cottonwood Ventures I, LLC ("**Kelly's Loan**"), and (ii) all net sale proceeds from the sale of Unit 1 remaining after payment of Kelly's Loan to the Liquidating Trust. On the Effective Date, all monies on deposit in any bank accounts of Cottonwood Ventures I, LLC and Cottonwood Gallery, Inc. shall be distributed to the Liquidating Trust.

(j) **Cottonwood Ventures II, LLC.** Cottonwood Ventures II, LLC owns Units 4, 7A, and 7B of the Paragon Building Condominium Association in Aspen, Colorado, which the Parties shall market for sale upon the earlier of the Effective Date or 90 days following the Confirmation Date if not previously purchased pursuant to Section 7.9(f) of the Plan. Upon the sale of Units 4, 7A, and 7B, or any one or more of such units, regardless of whether sold to Debtor's Adult Descendants, or to entities under their control, or to an unrelated third party, Cottonwood Ventures II, LLC shall distribute: (i) $60,000 of the net sale proceeds to Kelly Wyly O'Donovan; and (ii) the sum of $75,000 to Evan Wyly in repayment of his loan on April 3, 2017 to Cottonwood Ventures II, LLC ("**Evan's Loan**"). On the later of the sale or the Effective Date, Cottonwood Ventures II, LLC shall distribute all net sale proceeds from the sale of Units 4, 7A, and 7B remaining after the distribution to Kelly Wyly O'Donovan and payment of Evan's Loan to the Liquidating Trust. On the Effective Date, all monies on deposit in any bank accounts of Cottonwood Ventures II, LLC and Cottonwood Ventures II Management Trust shall be distributed to the Liquidating Trust.

(k) Should the Effective Date occur before the sale of all of the units of Cottonwood Ventures I & II, then the Liquidating Trust shall assume responsibility for the sale of all such remaining properties, subject to the distribution rights set forth above for each, and the Debtor's family's right of occupancy set forth below, as is applicable.

(l)     In addition, any member of the Debtor's family may occupy any of the Cottonwood condominium units rent-free until the later of 90 days following the Confirmation Date or 7 days after the Effective Date. For the sake of clarity, the Debtor's family members occupying such units shall be responsible for all utility charges during such occupancy period.

(m)     Neither the Debtor nor any of his family members shall have any liability for any federal income tax, federal gift tax, additions or penalties relating to federal taxes or federal tax forms, or interest relating to any of the foregoing by reason of receiving, selling, occupying, or purchasing any property  received or acquired pursuant to subsection (e) through subsection (j). For the sake of clarity, the Debtor and any of his family members receiving or purchasing property under subsection (e) through subsection (j) shall be responsible for all other tax liabilities that may accrue after receipt or purchase pursuant to subsection (e) through subsection (j) which are attributable to the ownership or subsequent sale, gift, or other disposition of such property(ies). Any other liabilities of any kind associated with or connected to such a property shall become the responsibility of the party receiving or purchasing it on and after the date of such receipt or purchase.

(n)     The Debtor will be allowed to retain the Retained Assets listed in Section 7.10 of the Plan, and the Debtor's family members listed below shall retain 100% ownership of the holdings (including the Debtor's interest in such entities) identified following their name:

> Christiana Wyly – Montagnola Partners, Ltd.
> Andrew Wyly – Stonebridge Partners, Ltd. and Sagacity LLC

**7.10   Retained Assets**.   For the benefit of all Creditors, the Debtor is contributing to the Liquidating Trust, for the satisfaction of Allowed Claims under the Plan, all right, title, and interest in and to all of his and the Estate's properties except the following assets identified for retention. The Debtor shall provide all reasonable cooperation and assistance requested by the Liquidating Trustee in respect of administering the Liquidating Trust. In consideration and recognition of all of the foregoing, on and after the Effective Date, the Debtor shall receive and retain, under the Plan, the following Retained Assets:

(a)     the right to lease and occupy the Debtor's unit in Edgemere, a Continuing Care Retirement Community in Dallas, Texas ("**Edgemere**") as a substitute for his Homestead for the remainder of his life;[6]

---

[6] A deposit was required by Edgemere at the inception of the Debtor's lease to serve as security in the event the Debtor is unable to make future lease payments. Upon lease termination, 90% of the then-remaining balance of the deposit is refundable.

(b)     the negotiated sum of $5,000,000 cash to defray the costs of medical and living expenses of the Debtor after the Confirmation Date, reduced by the sum of $48,151 which represents the total monthly Edgemere charges incurred by the Debtor prior to the sale of the Homestead, which net amount of $4,951,849 (less all holdback amounts as set forth in the Bankruptcy Court's August 29, 2017 order, ECF 1863) shall be paid to the Debtor from the net proceeds of the sale of the Homestead upon the Effective Date. The receipt of these funds shall not create a federal tax liability of any kind for the Debtor or the Estate; however, the Debtor shall be responsible for whatever tax liabilities his subsequent use or investment of these funds may generate;

(c)     those specific personal properties exempted on the Third Amended Schedule C (ECF 1993), together with (i) the following items heretofore owned by Audubon Limited: the group of seven portraits by artist Marc Klionsky of the Debtor and the Debtor's Adult Descendants and the painting by David Wright titled "Grandpa Robert, the Frontiersman"; (ii) the copyrights and other intellectual property rights of the Debtor; (iii) the Debtor's nonassignable lifetime American Airlines "Airpass"; (iv) the note payable to him executed by Janice Williams on March 6, 2014; and (v) Hot Flash The Movie LLC;

(d)     the legally recognized privileges of the Debtor, including the Debtor's attorney-client privilege;

(e)     the Debtor's interest and rights in the IRS Appeal to the extent not previously dismissed as provided for in the Plan, provided that the Debtor shall dismiss the Appeal upon the Effective Date following the Debtor's receipt of the $5,000,000 cash portion of the Retained Assets (less all holdback amounts as set forth in the Bankruptcy Court's August 29, 2017 order, ECF 1863); and

(f)     The Debtor's 2017 Lexus IS 200t.[7]

The Retained Assets shall be (i) free and clear of any Liens, Claims, encumbrances, and other interests of every kind and nature, and (ii) free and clear of any Tax Liabilities, provided that the taxability of any recovery with respect to any Cause of Action shall not be altered by the Plan. For the sake of clarity, (I) the Retained Assets exclude those properties whose exemption was denied by Order (ECF 1393) of the Bankruptcy Court, and (II) in the event the Debtor dies after the Confirmation Date,

---

The deposit was funded by Evan Wyly and is returnable solely to him. Neither the Debtor nor the Estate have any interest in the deposit.

[7] In accordance with the terms of the Bankruptcy Court's order [ECF 1863] and the holdback amount provided for therein, the Debtor's 2017 Lexus IS 200t constitutes a Retained Asset.

but before the Effective Date, the probate estate of the Debtor will have the same rights that the Debtor would have had with respect to receiving the Retained Assets.

**7.11 Resolution of Claim of Wrangler Trust**. On the Confirmation Date, the Claim of Wrangler Trust shall be deemed to have been paid in full, and the Allowed Amount of such Claim shall be deemed to be zero. Other than as expressly provided for in the Plan, nothing in the Plan will have any effect or bearing on the Wrangler Trust Adversary Proceeding, the resolution of which shall be governed by the Wrangler Trust Settlement.

**7.12 Other Settlements**. All other settlements approved previously by the Bankruptcy Court during the Bankruptcy Case are hereby ratified.

**7.13 Credit**. In addition to amounts credited pursuant to the SEC Settlement Agreement, all monies received by the IRS pursuant to the Plan shall be credited against either the Debtor's liability under the Tax Judgment or any postpetition tax liability at the election of the IRS. In addition, if any payments of Tax are made to the IRS prior to the Effective Date for a Transaction which the Plan contemplates will be Tax-free, such payment shall be credited against either the Debtor's liability under the Tax Judgment or any postpetition tax liability at the election of the IRS. As of October 25, 2017, the IRS has credited $180,979,177.39 against the Debtor's liability under the Tax Judgment. *See* ECF 1891. Any overpayments of federal income taxes (including interest) owed to (i) the Debtor for any pre-petition tax year, or (ii) the Debtor or the Estate for any postpetition, pre-Effective Date tax period, may be setoff against the Debtor's liability under the Tax Judgment or any administrative tax claim (if any) incurred by the Debtor or the Estate, pursuant to 26 U.S.C. § 6402(a) and common law.

**7.14 Authority**. All actions and transactions contemplated under the Plan are and shall be authorized upon Confirmation of the Plan, in each case without further notice to or order of the Bankruptcy Court, and without the need of further approval of the Debtor. All action on behalf of the Debtor as may be necessary to put into effect or carry out the terms and intent of the Plan may be effected, exercised, and taken, in each case without further notice to or order of the Bankruptcy Court, and without further action by the Debtor. The Confirmation Order shall include provisions dispensing with the need of further approvals or notices of the Debtor and authorizing and directing the Debtor to execute any document, certificate, or agreement necessary to effectuate the Plan, which documents, certificates, and agreements shall be binding on the Debtor and the Creditors.

## ARTICLE VIII

## THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE

**8.1 Creation of the Liquidating Trust.** On the Effective Date, the Liquidating Trust, duly organized under the laws of the State of Texas, shall be created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions to holders of Allowed Claims as set forth in the Plan. The Liquidating Trust is not otherwise authorized to engage in any trade or business. The Liquidating Trust Beneficiaries, who will be treated as the grantors and deemed owners for federal income tax purposes, are the holders of Allowed Claims in Classes 1-3. The Liquidating Trustee shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code, as amended, and the Treasury Tax Regulations promulgated thereunder.

All taxpaying Creditors shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the IRS. For all federal income tax purposes, all Persons (including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by the transfer by the Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. The Liquidating Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

For the sake of clarity: notwithstanding anything to the contrary in the Plan or the Liquidating Trust Agreement, the Debtor and his Estate shall have no Tax liability on account of, or arising from, Transactions involving the Liquidating Trust.

**8.2 Funding of Res of Trust.**

(a) To settle and fund the Liquidating Trust, the Debtor shall transfer, assign, and deliver all of the Liquidating Trust Assets to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets on and as of the Effective Date. The transfers of all Liquidating Trust Assets shall be accomplished pursuant to the Plan and the Confirmation Order and shall be effective upon and as of the Effective Date.

Upon the Effective Date, except for the Retained Assets, the Liquidating Trust shall also be deemed to have taken and received, free of all Taxes:

(i) an assignment of all Causes of Action of the Debtor and of the Estate against any Persons existing on or created by virtue of the Effective Date, unless expressly released pursuant to the Plan;

(ii) an assignment of the Debtor's deferred compensation to which the Debtor may be entitled, either directly or indirectly by reason of his interest in Highland Fund, Ltd., from Maverick Capital, to the extent not yet received, and an assignment of all other non-IOMT investments, partnership interests, and notes receivable, subject to Article VII of the Plan;

(iii) an assignment of any and all of the Debtor's right, title, and interest in the Bank of Texas Account; and

(iv) an assignment, bill of sale, deed, or release, as appropriate, covering all other Liquidating Trust Assets, as may be reasonably satisfactory to the Debtor and the Liquidating Trustee.

(b) The Liquidating Trustee may present such Orders for entry by the Bankruptcy Court as may be reasonably necessary to require third parties to accept and acknowledge such assignment to the Liquidating Trust. Such Orders may be presented without further notice other than as provided in the Plan.

(c) From and after the Effective Date, the Liquidating Trustee shall sell, collect, or otherwise dispose of the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement and the Plan and without necessity of filing any pleading or obtaining any Order. The Net Proceeds of such sales, collections, and dispositions shall be Liquidating Trust Assets used to make Distributions in accordance with the provisions of the Plan.

**8.3    The Liquidating Trustee**.  The Liquidating Trustee shall have and retain all the rights, powers, and duties necessary to carry out his responsibilities under the Plan, the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Matters relating to the appointment, removal, and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee are set forth in the Liquidating Trust Agreement; the Liquidating Trust Agreement authorizes the Liquidating Trust Committee, in its sole discretion, to remove and replace the Liquidating Trustee with the approval of the Bankruptcy Court. The Liquidating Trustee shall have duties of good faith and

loyalty to the Liquidating Trust and its beneficiaries and shall otherwise perform his duties as set forth in the Plan and the Liquidating Trust Agreement.

**8.4** **Retention of Professional Persons; Highland Stargate**. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in his or her discretion, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the proceeds of the Liquidating Trust Assets upon the monthly submission of statements to the Liquidating Trustee. The reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be paid in the ordinary course of business from the Liquidating Trust Assets upon approval by the Liquidating Trust Committee, and without the need for Bankruptcy Court approval. The Liquidating Trustee shall have the right, but no obligation, to retain and utilize the services of Highland Stargate, LLC or any other former professionals or advisors of the Debtor on any such basis as may be negotiated with approval of the Liquidating Trust Committee. Absent such retention, Highland Stargate may transfer all prepetition records of the Debtor to the Liquidating Trustee or his designated third-party offsite storage facility and will have no obligation to maintain such records for the use and benefit of the Liquidating Trust.

**8.5** **Compensation of the Liquidating Trustee**. The Liquidating Trustee's compensation, on a post-Effective Date basis, will be based on hourly compensation, all to be agreed upon among the Liquidating Trustee and the Liquidating Trust Committee and approved by the Bankruptcy Court at the Confirmation Hearing. The fees of the Liquidating Trustee shall be paid by the Liquidating Trust in accordance with the Liquidating Trust Agreement upon approval by the Liquidating Trust Committee and without the need for Bankruptcy Court approval.

**8.6** **Liquidating Trust Expenses**. Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses, and obligations incurred by the Liquidating Trustee in administering the Plan, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be made by the Liquidating Trust in accordance with the Liquidating Trust Agreement upon approval by the Liquidating Trust Committee and without the need for Bankruptcy Court approval.

**8.7** **Liability; Indemnification**. The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from the Liquidating Trustee's willful misconduct, gross negligence, or fraud. The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole and absolute discretion, consult with attorneys, accountants, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in

accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with his or her attorneys, accountants, or agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

**8.8    Conflicts, If Any, Between Liquidating Trust Agreement, the Plan, and the Confirmation Order**.  In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and the Plan, the terms and provisions of the Plan shall control. In the event of any inconsistencies or conflict between the Liquidating Trust Agreement or the Plan and the Confirmation Order, the Confirmation Order shall control.

**8.9    Plan is Motion to Transfer Liquidating Trust Assets**.  The Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105 and 363(b) and (f) to transfer and assign to the Liquidating Trust, free and clear of any Liens, Claims, encumbrances, and other interests of every kind and nature, but subject to Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and the Allowed Claims of Classes 1 through 3 and the terms of the Plan, the Liquidating Trust's obligations under the Plan, and the Liquidating Trust Permitted Liens, any and all Liquidating Trust Assets, including, for the avoidance of doubt, any potential post-petition Causes of Action of the Debtor against the Debtor's Professionals, on and as of the Effective Date and with all benefits to the Estate under such sections of the Bankruptcy Code; *provided that* the Bankruptcy Court shall have exclusive jurisdiction over any Causes of Action against the Debtor's Professionals. Any objections to such transfer and assignment must be made as an objection to Confirmation of the Plan to be heard at the Confirmation Hearing. For the sake of clarity: the Retained Assets shall not be transferred to or vested in the Liquidating Trust.

**8.10    Liquidating Trust Interests**.

(a)    On the Effective Date, each holder of an Allowed Claim in Classes 1 through 3 shall hold Liquidating Trust Interests that are deemed to be in amount equal to the Allowed Amount of such holder's Allowed Claim, but net of any payments previously received on such Allowed Claim.

(b)      Notwithstanding any other provision of the Plan: upon receipt by each holder of a Liquidating Trust Interest of Distributions aggregating the full Allowed Amount of its Allowed Claim in its respective Class, the Liquidating Trustee shall record on its books the termination and extinguishment of such Liquidating Trust Interest in such Class without further action by any Person or the Bankruptcy Court.

### 8.11    Waiver of Avoidance Actions; Preservation of All Other Rights of Action.

(a)      On the Effective Date, the Avoidance Actions against any persons or entities shall be deemed waived and released.

(b)      Except for Retained Assets and Avoidance Actions, any other Causes of Action that are identified in the Disclosure Statement are preserved for the benefit of the Liquidating Trust unless expressly released, waived, or relinquished under the Plan or Confirmation Order. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Liquidating Trustee will not pursue a Cause of Action against them.

The Debtor may have claims and causes of action for malpractice and professional negligence against certain attorneys who represented him prior to the Petition Date, including the following: David Tedder and his law firm Pratter, Tedder & Graves and its successors; Michael Chatzky; Michael C. French and his law firms Jackson Walker and Jones Day; William Brewer and his law firm Bickell & Brewer and its successors; and the law firm Meadows, Owens, Collier, Reed, Cousins & Blaue, LLP and its successors. Under the Plan, these claims and causes of action will be transferred to the Liquidating Trust.

(c)      The Liquidating Trustee shall be appointed the representative of the Estate pursuant to Bankruptcy Code § 1123(b)(3)(B) with respect to the foregoing preserved Causes of Action. Except as otherwise ordered by the Bankruptcy Court and subject to releases in the Plan, on the Effective Date, the Liquidating Trust (a) shall receive all Causes of Action, and may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein), settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action, and (b) shall be vested with authority and standing to prosecute any Causes of Action. The Liquidating Trustee and his attorneys and other professional persons shall have no liability for pursuing or failing to pursue any such preserved Causes of Action except as set forth in the Liquidating Trust Agreement.

### 8.12    Creation of Liquidating Trust Committee.

(a)      **Members.**   On the Effective Date, the Liquidating Trust Committee shall be formed and constituted with one to three members to be designated by the IRS. If a member of the Liquidating Trust Committee resigns or is

otherwise removed, a replacement Liquidating Trust Committee member may be appointed by the remaining members. Alternatively, the Liquidating Trustee may apply to the Bankruptcy Court for an Order directing the appointment, or not, of a replacement member.

(b) **Function, Duties, Procedures, and Responsibilities**. The function, duties, and responsibilities of the Liquidating Trust Committee are set forth in greater detail in the Liquidating Trust Agreement. The Liquidating Trust Committee may optionally adopt bylaws to provide procedures for the governance of the Liquidating Trust Committee in addition to but consistent with the provisions of the Liquidating Trust Agreement.

(c) **Duration**. The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 8.13 of the Plan.

(d) **Payment of Fees; Reimbursement of Costs and Expenses**. The members of the Liquidating Trust Committee may be reimbursed for their reasonable costs and expenses in amounts determined by the Liquidating Trustee. Such reimbursement of costs and expenses shall be paid from the Liquidating Trust Assets without Order.

(e) **Liability; Indemnification**. Neither the Liquidating Trust Committee, nor any of its members or designees, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence, or fraud. The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to consult with its attorneys, accountants, or agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, designees, and professional persons, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Liquidating Trust or the implementation

or administration of the Plan; *provided, however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

**8.13    Termination**. The duties, responsibilities, and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Causes of Action, transferred and assigned to the Liquidating Trust, or involving the Liquidating Trustee on behalf of the Liquidating Trust, have been fully resolved, abandoned, or liquidated and the Net Proceeds have been distributed in accordance with the Plan and the Liquidating Trust Agreement. Except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three (3) years after the Effective Date. However, if warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the liquidating purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended, one or more times for a finite period, not to exceed six months each, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within one month prior to the beginning of the extended term with notice thereof to the Liquidating Trust Beneficiaries who then hold an unpaid Allowed Claim. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall File a report thereof, seeking an Order discharging the Liquidating Trustee.

# ARTICLE IX

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

**9.1    Initial Distributions**.

(a)    Except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions shall be made on or as soon as practicable after the Effective Date pursuant to Article III of the Plan to or for U.S. Trustee Fees, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims (if any) and on account of the Class 1 Claim, the Class 2 Claims, and the Class 3 Claim.

(b)    All other and subsequent Distributions under the Plan shall be made at the times determined in accordance with the provisions of the Liquidating Trust Agreement.

**9.2    Delivery of Distribution**.    The Liquidating Trustee shall make all Distributions required under the Plan to the holder of the applicable Allowed Claim. Cash payments made pursuant to the Plan shall be by the means, including by check or wire transfer, determined by the Liquidating Trustee as appropriate. Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the Proofs of Claim Filed by such holders (or at the last known address of such holders if no Proof of Claim is Filed or if the Debtor has been notified of a change of address); (b) at

the addresses set forth in any written notices of address changes delivered to the Debtor and the Liquidating Trustee (as applicable) after the date of any related Proof of Claim; or (c) if no Proof of Claim has been Filed and the Debtor and the Liquidating Trustee (as applicable) have not received a written notice of a change of address, at the addresses reflected in the Bankruptcy Schedules. Each Distribution will be made only to Allowed Claims and only if the Liquidating Trustee, with approval of the Liquidating Trust Committee, shall have determined that sufficient Net Proceeds exist.

9.3 **Withholding and Reporting Requirements**.  In connection with the Plan and all Distributions hereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

9.4 **Duty to Disgorge Overpayments**.  The holder of any Claim shall not be entitled to recover more than the Allowed Amount of its Claim. The holder of an Allowed Claim that receives more than payment in full of its Allowed Claim shall immediately return any excess payments to the Liquidating Trust; and if such holder should fail to do so, the Liquidating Trustee may bring suit against such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE X

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

10.1 **Undeliverable Distribution Reserve**.

(a) **Establishment**. The Liquidating Trustee shall establish the Undeliverable Distribution Reserve (which may be effected by either establishing a segregated account or establishing book entry accounts, in consultation between the Liquidating Trustee and the Liquidating Trust Committee).

(b) **Deposits**. If a Distribution to any holder of an Allowed Claim is returned to the Liquidating Trust as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in the General Account, designated as an "**Undeliverable Distribution Reserve**," for the benefit of such holder until such time as such Distribution (i) becomes deliverable; (ii) is claimed; or (iii) is deemed to have been forfeited in accordance with Section 10.1(c) of the Plan.

(c) **Forfeiture**. Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an Undeliverable or Unclaimed Distribution within

one year after the first Distribution is made to such holder, such holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Distribution against the Debtor, the Estate, the Liquidating Trustee, the Liquidating Trust, or each of their respective properties or assets. In such case(s), any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for Undeliverable or Unclaimed Distributions shall become the property of the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate distribution by the Liquidating Trust according to the terms of the Plan and this Liquidating Trust Agreement.

(d) **Disclaimer**. The Liquidating Trustee and his respective agents and attorneys are under no duty to take any action to attempt to locate any Claim holder.

**10.2 Distribution from Undeliverable Distribution Reserve**. Within fifteen Business Days after the holder of an Allowed Claim satisfies the requirements of the Plan, such that the distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in the Plan), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim.

**10.3 General Unsecured Reserve**.

(a) **Establishment**. On the Effective Date, the Liquidating Trustee shall establish the General Unsecured Reserve within the Liquidating Trust, which may be effected by either (i) establishing a segregated account or (ii) establishing book entry accounts, in the discretion of the Liquidating Trustee in consultation with the Liquidating Trust Committee.

(b) **Deposits and Distribution from General Unsecured Reserve**. The Liquidating Trustee shall make Distributions to holders of Allowed Class 2 Claims according to Section 5.2(b) of the Plan. Any excess amount in the General Unsecured Reserve that is not distributed to holders of Allowed Class 2 Claims shall be returned to the Liquidating Trust after all Allowed Class 2 Claims have been paid pursuant to Section 5.2(b) of the Plan.

## ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**11.1 Objection Deadline; Prosecution of Objections**. The Liquidating Trustee and any party in interest may File objections to Claims no later than the Claim

Objection Deadline, and shall serve such objections upon the holders of each of the Claims to which objections are made pursuant to Bankruptcy Code § 502 and Bankruptcy Rule 3007. If the Liquidating Trustee or a party in interest does not File an Objection to a Claim on or before the Claim Objection Deadline, such Claim shall be an Allowed Claim. Nothing contained herein shall limit the Liquidating Trustee's or a party in interest's right to object to Claims, if any, Filed or amended after the Claim Objection Deadline. Subject to the limitations set forth in the Plan, the Liquidating Trustee or a party in interest shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, or amount thereof.

If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, or resolve a Disputed Claim by granting such holder an Allowed Claim in any amount, then the Liquidating Trustee may compromise, settle, or resolve such Disputed Claim with the consent of a majority of the Liquidating Trust Committee without further Bankruptcy Court approval; *provided, however*, the Liquidating Trustee shall File a notice advising that the Allowed Claim has been compromised, settled, or resolved. Otherwise, the Liquidating Trustee may only compromise, settle, or resolve such Disputed Claim with Bankruptcy Court approval.

The Debtor, the Liquidating Trustee, and any party in interest may File objections to any Proofs of Claim that are Filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are Filed after the Postconfirmation Bar Date and set such objections for hearing after appropriate notice.

**11.2 No Distributions Pending Allowance**. Notwithstanding any other provision of the Plan, no Distribution by the Liquidating Trustee shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

# ARTICLE XII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, except as otherwise provided herein, all executory contracts or unexpired leases will be deemed assumed and assigned to the Debtor or his designated assignee in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (i) those, if any, that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, attached as Exhibit 5 to the Plan; (ii) those that have been previously rejected by a Final Order; (iii) those that are the subject of a motion to reject executory contracts or unexpired leases that is pending on the Effective Date; or (iv) those that are subject

to a motion to reject an executory contract or unexpired lease pursuant to which the requested effective date of such rejection is after the Effective Date. For the avoidance of doubt, any Retained Asset determined to be an executory contract or unexpired lease shall be deemed assumed and assigned to the Debtor or his designated assignee.

To the extent that any insurance policies exist as of the Effective Date which are owned by the Debtor or which provide coverage to the Debtor, including, but not limited to, (i) that certain Texas Standard Homeowners Policy issued by Chubb Lloyd's Insurance Company of Texas, policy number 14644035-02 and the amendment related thereto dated September 1, 2018; (ii) that certain Texas auto insurance policy issued by Chubb National Insurance Company, policy number 12001023-05 covering the Debtor's 2017 Lexus IS 200t vehicle; and (iii) that certain Valuable Articles Coverage insurance policy issued by Great Northern Insurance Company, policy number 12600291-04, and to the extent such policies are determined to be executory contracts, such policies shall be deemed assumed by the Debtor and shall be deemed Retained Assets, and the Debtor shall continue to enjoy the benefits of such coverage after the Effective Date.

Except as otherwise provided under the Plan, with respect to any monetary amounts under any executory contract or unexpired lease that must be cured as a requirement for assumption by the Debtor of such executory contract or unexpired lease, such cure amount ("**Cure Amount**") shall be effected or otherwise satisfied by prompt payment of such Cure Amount as contemplated by section 365(b)(1)(A) of the Bankruptcy Code or as otherwise agreed to by the parties. The proposed Cure Amount for each executory contract or unexpired lease that is assumed pursuant to this Article XII, whether such executory contract or unexpired lease is specifically identified herein or otherwise, shall be $0. If the non-Debtor party to any such executory contract or unexpired lease objects to such proposed Cure Amount, such non-Debtor party must file an objection to such proposed Cure Amount with the Bankruptcy Court on or before December 28, 2018 (the "**Cure Objection Deadline**"). Failure to timely file such an objection shall be deemed acceptance by such non-Debtor party of the Cure Amount for all purposes.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's order approving the assumptions, assumptions and assignments, or rejections, as applicable, of executory contracts or unexpired leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date. Each executory contract or unexpired lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court. Any motions to assume executory contracts or unexpired leases pending on the Effective Date shall be subject to

approval by the Bankruptcy Court on or after the Effective Date. Notwithstanding anything to the contrary in the Plan, the Debtor reserves the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases at any time prior to the Effective Date on no less than three days' notice to the applicable non-Debtor counterparties.

## ARTICLE XIII

## EFFECTS OF CONFIRMATION

**13.1    Vesting of Retained Assets**. Upon the Effective Date, (a) the Retained Assets will vest in the Debtor free and clear of any Taxes, Liens, Claims, encumbrances, and other interests of every kind and nature, as more fully set forth in Section 7.10 of the Plan, and (b) the Liquidating Trust Assets will vest in the Liquidating Trust free and clear of any Liens, Claims, encumbrances, and other interests of every kind and nature except as set forth in the Plan.

**13.2    Legal Binding Effect; Plan Injunction**.

(a)    The provisions of the Plan shall bind all holders of Claims and their respective successors and assigns, whether or not they accept the Plan. On and after the Effective Date, except as expressly provided in the Plan, all holders of Claims and Liens shall be precluded from asserting any Claim, Cause of Action, or Liens against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee or their respective property and assets based upon any act, omission, event, Transaction, or other activity of any kind that occurred or came into existence prior to the Effective Date. For the avoidance of doubt, nothing herein shall contravene Bankruptcy Code § 523(a)(19) and nothing herein shall prevent the IRS from pursuing any remedy provided by law against the Debtor with regard to post-Effective Date tax liability.

(b)    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR ANY PRIOR ORDER OF THE BANKRUPTCY COURT IN THE BANKRUPTCY CASE, ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE HEREBY PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS, WHETHER DIRECTLY OR INDIRECTLY, AGAINST THE DEBTOR, OR ANY OF THE RETAINED ASSETS OR AGAINST THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS (OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN):

(i)    COMMENCING OR CONTINUING, IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING OF ANY KIND;

(ii) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING, BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER;

(iii) CREATING, PERFECTING, OR ENFORCING, IN ANY MANNER, ANY LIEN OF ANY KIND OTHER THAN IRS LIENS FOR POST-EFFECTIVE DATE UNPAID TAXES;

(iv) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND (EXCEPT WITH RESPECT TO ANY VALID RIGHT OF SETOFF UNDER § 553 OF THE BANKRUPTCY CODE APPLICABLE TO ANY ALLOWED CLAIM THAT WAS PROPERLY AND TIMELY FILED WITH THE BANKRUPTCY COURT BY THE APPLICABLE BAR DATE);

(v) PROCEEDING IN ANY MANNER IN ANY PLACE, WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE CONFIRMATION ORDER; AND

(vi) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN.

**13.3  Insurance**.  Notwithstanding anything to the contrary in the Plan, neither the releases nor confirmation and consummation of the Plan shall affect the Debtor's insurance policies in which the Debtor is or was an insured party or any Claim as settled thereunder.  Each insurance company is prohibited from denying, refusing, altering, or delaying coverage for the Debtor on any basis regarding or related to the Bankruptcy Case, the Plan, or any provision within the Plan, including the treatment set out within the Plan for insured Claims.

**13.4  Exculpation**.  From and after the Effective Date, to the fullest extent permitted under applicable law, and except as expressly set forth herein, the Committee and its Professionals shall have or incur no liability whatsoever to any Creditor or other Person for any act or omission from and after the Petition Date in connection with, relating to, or arising out of the filing of the Bankruptcy Case, the preconfirmation motions and procedures initiated, or responded to, by the Debtor, the Debtor's restructuring and reorganizational efforts, the formulation, confirmation, and effectiveness of the Plan, all orders entered in the Bankruptcy Case, all settlements reached in the Bankruptcy Case, and all other proceedings in and with respect to the Bankruptcy Case; however, the foregoing exculpation shall not exclude liability, if any, that would result from any act or omission to the extent that such act

or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

**13.5    Releases by the Debtor and his Estate.**

PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, THE DEBTOR AND HIS ESTATE, FOR HIMSELF AND ON BEHALF OF HIS RESPECTIVE SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS AND EXPENSES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES OF ANY KIND OR CHARACTER WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR AND HIS ESTATE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE DEBTOR OR HIS ESTATE EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, OR OTHERWISE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN HIS OWN RIGHT OR ON BEHALF OF THE HOLDER OF ANY CLAIM, AGAINST ANY RELEASED PARTY ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY FROM, IN WHOLE OR IN PART, THE DEBTOR, THE OPERATION OF OR ADMINISTRATION OF DEBTOR'S BUSINESS AND ASSETS, THE CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OF THE DEBTOR OR ANY RELEASED PARTY (AND THE ACTS OR OMISSIONS OF ANY OTHER RELEASED PARTY IN CONNECTION THEREWITH), THE RESTRUCTURING OF CLAIMS PRIOR TO OR IN THE CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION SHALL RELEASE ANY RELEASED PARTY OR OTHER INDIVIDUAL FROM (A) ITS RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THE PLAN OR THE CONFIRMATION ORDER OR (B) LIABILITY FOR (I) ANY ACT OR OMISSION BY SUCH RELEASED PARTY OR OTHER INDIVIDUAL INCLUDED WITHIN THIS RELEASE THAT IS FOUND BY A COURT OF COMPETENT JURISDICTION IN A FINAL, NON-APPEALABLE JUDGMENT TO CONSTITUTE FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE, OR (II) ANY OBLIGATION FOR

BORROWED MONEY OWED BY A RELEASED PARTY TO THE DEBTOR OR HIS ESTATE.

THE FOREGOING RELEASES SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THESE RELEASES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH SUCH RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY SUCH RELEASE; (III) IN THE BEST INTEREST OF THE DEBTOR AND HIS ESTATE; (IV) FAIR, EQUITABLE AND REASONABLE; AND (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

### 13.6 Releases by Holders of Claims.

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN CONSIDERATION OF THE DISTRIBUTIONS UNDER THE PLAN AND OTHER RELEASES, AGREEMENTS, OR DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION WITH THE PLAN, HOLDERS OF CLAIMS WHO ARE NOT DEEMED TO ACCEPT OR REJECT THE PLAN AND WHO INDICATE THAT THEY OPT IN TO THIS RELEASE ON THEIR BALLOT, FOR THEMSELVES AND ON BEHALF OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, SHALL BE DEEMED TO HAVE CONSENTED TO THE PLAN FOR ALL PURPOSES AND THE RESTRUCTURING EMBODIED HEREIN AND SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER, RELEASED AND DISCHARGED EACH RELEASED PARTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, LOSSES, COSTS AND EXPENSES, ACTIONS, CAUSES OF ACTION, REMEDIES, AND LIABILITIES OF ANY KIND OR CHARACTER WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON

BEHALF OF THE DEBTOR OR HIS ESTATE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, SUSPECTED OR UNSUSPECTED, MATURED OR UNMATURED, FIXED OR CONTINGENT, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT SUCH PERSON OR ENTITY EVER HAD, NOW HAS OR HEREAFTER CAN, SHALL OR MAY HAVE, OR OTHERWISE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY OR DIRECTLY OR DERIVATIVELY), AGAINST ANY RELEASED PARTY ARISING FROM OR RELATING TO, DIRECTLY OR INDIRECTLY, IN WHOLE OR IN PART, THE DEBTOR, THE CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THE PLAN, THE DEBTOR OR ANY OTHER RELEASED PARTY (AND THE ACTS OR OMISSIONS OF ANY OTHER RELEASED PARTY IN CONNECTION THEREWITH), THE RESTRUCTURING OF CLAIMS PRIOR TO OR IN THE CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING THE FOREGOING, NOTHING IN THIS SECTION SHALL RELEASE ANY RELEASED PARTY FROM (A) ITS RESPECTIVE RIGHTS AND OBLIGATIONS UNDER THE PLAN OR THE CONFIRMATION ORDER OR (B) LIABILITY FOR ANY ACT OR OMISSION BY SUCH RELEASED PARTY THAT IS FOUND BY A COURT OF COMPETENT JURISDICTION IN A FINAL, NONAPPEALABLE JUDGMENT TO CONSTITUTE FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.

FOR THE SAKE OF CLARITY, EVEN IF THE IRS FAILS TO AFFIRMATIVELY OPT IN TO THE FOREGOING RELEASES ON ITS BALLOT, OR FAILS TO RETURN A BALLOT OR VOTE ON THE PLAN, SUCH CONDUCT SHALL IN NO WAY AFFECT NOR IMPAIR ANY SETTLEMENT WITH, OR BENEFITS ACCRUING TO, THE DEBTOR, THE DEBTOR'S ADULT DESCENDANTS, OR THE DEBTOR'S MINOR DESCENDANTS PURSUANT TO, OR ON ACCOUNT OF THE PLAN SETTLEMENT AGREEMENT OR THE PLAN.

THE FOREGOING RELEASES SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON AND THE CONFIRMATION ORDER WILL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES RELEASED PURSUANT TO THESE RELEASES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE FOREGOING RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT EACH SUCH RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY SUCH RELEASE; (III) IN THE BEST INTEREST OF THE DEBTOR AND HIS ESTATE; (IV) FAIR, EQUITABLE AND REASONABLE; AND (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

### 13.7  No Governmental Releases.

EXCEPT AS EXPRESSLY PROVIDED HEREIN OR THEREIN, NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR OF ANY STATE AGAINST ANY PARTY OR PERSON, NOR SHALL ANYTHING IN THE PLAN OR THE CONFIRMATION ORDER ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION, OR OTHER PROCEEDING AGAINST ANY PARTY OR PERSON FOR ANY LIABILITY OF SUCH PARTY OR PERSON ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR OF ANY STATE, NOR SHALL ANYTHING IN THE PLAN OR CONFIRMATION ORDER EXCULPATE ANY PARTY OR PERSON FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE.

## ARTICLE XIV

## RETENTION OF JURISDICTION

**14.1  Retention**.  Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain its exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case, the Plan, and the Liquidating Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or Unsecured status of any Claim, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims;

(b)     hear and determine all Fee Applications;

(c)     determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim against, or Causes of Action on behalf of, the Liquidating Trust;

(d)     enter such Orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of the Plan, the Liquidating Trust Agreement, and all property, contracts, instruments, releases, and other agreements or documents transferred, vested, or created in connection herewith or therewith;

(e)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, the Liquidating Trust Agreement, the Confirmation Order, any Transaction or payment contemplated hereby, or any disputes arising under agreements, documents, or instruments executed in connection herewith or therewith;

(f)     consider (i) any modifications of the Plan, the Disclosure Statement, and/or the Liquidating Trust Agreement (in each case to the extent requiring the approval of the Bankruptcy Court), and (ii) cure any defect or omission, or reconcile any inconsistency in any Order, including the Confirmation Order;

(g)     issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan, the Confirmation Order or any other Order;

(h)     hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order, and the Liquidating Trust Agreement;

(i)     enforce all Orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Case;

(j)     hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146 (including the expedited determination of taxes under Bankruptcy Code § 505(b));

(k)       hear and determine all matters related to the property of the Estate, the Debtor, the Liquidating Trust, or the Liquidating Trustee from and after the Effective Date;

(l)       hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code;

(m)       hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts;

(n)       enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(o)       hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

(p)       determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release, or other agreement or document related to the Plan, or the Disclosure Statement;

(q)       hear any other matter not inconsistent with the Bankruptcy Code; and

(r)       enter a final decree and order closing the Bankruptcy Case.

**14.2    Rights of the Liquidating Trustee**.  Nothing contained in this Article XIV shall be construed so as to limit the rights of the Liquidating Trustee to commence or to prosecute any Cause of Action in any court of competent jurisdiction.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

**15.1    Conditions Precedent to the Effective Date**.  Each of the following events shall occur on or before the Effective Date; *provided, however*, the Debtor may waive in writing any or all of the following events, whereupon the Effective Date shall occur without further action by any Person:

(a)       the Plan Settlement Agreement shall have been entered into, and duly executed by, the Debtor, with the approval of the Bankruptcy Court, and the IRS, with all necessary final governmental approvals;

(b)    the Deed of Release shall have been entered into, and duly executed by, the Debtor, with the approval of the Bankruptcy Court, certain of his family members who are parties thereto, and the IOM Trustees, following receipt of all necessary final approvals;

(c)    the Confirmation Order, in a form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court, shall not be subject to a stay, and shall have become a Final Order;

(d)    the Confirmation Order shall include one or more findings of fact and conclusions of law that: (i) the Plan is confirmed with respect to the Debtor; (ii) the Debtor has acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e); and (iii) the Debtor and the Liquidating Trustee are authorized to take all actions contemplated under the Plan;

(e)    the Bankruptcy Court shall have determined that the Liquidating Trustee is or will be duly authorized to take the actions contemplated in the Plan and the Liquidating Trust Agreement, which approval and authorization may be set forth in the Confirmation Order;

(f)    Manx Court Approval shall have been granted;

(g)    all documents, instruments, and agreements provided under, or necessary to implement, the Plan shall have been executed and delivered by the applicable parties; and

(h)    the Liquidating Trust Agreement shall have been executed and the Liquidating Trust shall be established and become effective.

**15.2    Revocation, Withdrawal or Nonconsummation**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File any amended or subsequent plans.  If Confirmation does not occur, or if the Effective Date does not occur, on or prior to 90 calendar days after the Confirmation Date (as such time period may be extended by order of the Bankruptcy Court), then: (a) the Plan shall be null and void in all respects; (b) any settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), any assumptions or rejections of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

**15.3 Severability of Plan Provisions**. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**15.4 Exemption from Transfer Taxes and Recording Fees**. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer, or exchange of any securities under the Plan, the release of any mortgage, deed of trust, or other Lien, the making, assignment, filing, or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale, or other instrument of transfer under, in furtherance of, or in connection with the Plan (including, without limitation, (a) the transfer and vesting of the Liquidating Trust Assets in and to the Liquidating Trust, (b) the Liquidating Trustee's sale, transfer, liquidation, or disposal of Liquidating Trust Assets, and (c) vesting, receipt, and retention of the Retained Assets) to the Debtor, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to refrain from collecting any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**15.5 Interest Accrual**. No postpetition interest shall accrue on any Claim or scheduled liability including Allowed Administrative Claims.

**15.6 Rules of Interpretation; Computation of Time**. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, subsections, Articles, and Exhibits, if

any, are references to Sections, subsections, Articles, and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import; (f) captions and headings to Articles, Sections, and subsections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the word "or" has the inclusive meaning frequently identified with the phrase, "and/or;" and (h) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply. In computing any period of time prescribed or allowed by the Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply. All references to amounts and to Distributions of Cash contained in the Plan shall mean United States dollars.

**15.7   Liquidating Trust Not A Successor**.   Save and except as needed to comply with Bankruptcy Code § 1145, the Liquidating Trust, and its successors or assigns, shall not be deemed, as a result of actions taken in connection with the Plan, to be a successor to the Debtor or a continuation or substantial continuation of the Debtor or any enterprise of the Debtor. The Liquidating Trust shall be deemed to be a successor to the Debtor only to the limited extent needed to comply with Bankruptcy Code § 1145 and for no other reason under any state or federal law.

**15.8   Plan Documents**. The Plan Documents are incorporated herein and are a part of the Plan as if set forth in full herein.

**15.9   Reservation of Rights**. The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor of any kind, including with respect to the holders of Claims or as to any treatment or classification of any Claim.

**15.10 Further Assurances**. The Debtor and all holders of Claims receiving Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be reasonably necessary or advisable to effectuate the provisions and intent of the Plan.

**15.11 Successors and Assigns**.   The Plan and all rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**15.12 Governing Law**. Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, the construction and

implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and any governance matters shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

**15.13 Notice of Effective Date**.  On or before the first Business Day after five (5) calendar days after the occurrence of the Effective Date, the Liquidating Trustee shall File and mail or cause to be mailed to all holders of Claims that are not Disallowed Claims a notice that informs such Persons of: (a) the entry of the Confirmation Order; (b) the occurrence of the Effective Date; and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**15.14 Entire Agreement**.  The Plan and the Plan Documents set forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersede all prior discussions and documents. In the event of any inconsistencies between the Plan and the Disclosure Statement, the terms and provisions of the Plan shall control.

**15.15 Waiver of Stay**.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d), the Debtor shall be authorized to consummate the Plan and the Transactions and transfers contemplated thereby immediately after Confirmation.

# ARTICLE XVI

## MODIFICATION OF THE PLAN

The Debtor may alter, amend, or modify the Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to the Effective Date, the Debtor may, under Bankruptcy Code § 1127(b): (a) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, and in the case of the Debtor does not alter his treatment or benefits under the Plan; (b) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order; and (c) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims under the Plan; *provided, however*, that prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or as ordered by the Bankruptcy Court.

**DATED**: November 29, 2018

Respectfully submitted,

**DEBTOR**

/s/
Samuel Evans Wyly

_/s/  James J. Lee_
James J. Lee, SBT # 12074550
Paul E. Heath, SBT # 09355050
Rebecca L. Petereit, SBT # 24062776
Garrick C. Smith, SBT # 24088435
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214-220-7700  Fax: 214-220-7716
jimlee@velaw.com; pheath@velaw.com;
rpetereit@velaw.com; gsmith@velaw.com

**COUNSEL FOR THE DEBTOR**

# EXHIBIT 1

## '92 TRUSTS

### The Bulldog Non-Grantor Trust

Trust Agreement dated March 11, 1992 executed by Sam Wyly as settlor

Trustee: Lorne House Trust Company Limited as original  trustee

Current trustee: First Names Trust Company

Contingent Beneficiaries: issue of Sam Wyly following two years after his death

### The Delhi International Trust

Trust Agreement dated December 4, 1992, executed by Sam Wyly as settlor

Original Trustee: Credit Suisse Trustees (Isle of Man) Limited

Current Trustee: First Names Trust Company

Contingent Beneficiaries: issue of Sam Wyly following two years after his death

### The Lake Providence International Trust

Trust Agreement dated December 4, 1992, executed by Sam Wyly as settlor

Original Trustee: Meespierson (Isle of Man) Limited

Current Trustee: First Names Trust Company

Contingent Beneficiaries: issue of Sam Wyly following two years after his death

## EXHIBIT 2

## '94/95 TRUSTS

**The Bessie Trust**

Deed of Settlement dated February 2, 1994

Executed by Keith L. King

Original Trustee: Lorne House Trust Company Limited

Current Trustee: First Names Trust Company

Discretionary Beneficiaries: issue of Sam Wyly

**The La Fourche Trust**

Deed of Settlement dated July 18, 1995

Executed by Shaun F. Cairns

Original Trustee: Wychwood Trust Limited

Current Trustee: Inter-Continental Management Limited

## EXHIBIT 3

### Elliott Yeary Gallery's Operations, Business Assets, and Inventory

[Forthcoming]

# EXHIBIT 4

## Liquidating Trust Agreement

# LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT ("**Liquidating Trust Agreement**") dated as of [date], by and among debtor and debtor in possession Samuel Evans Wyly (the "**Debtor**"), as grantor, and Dennis S. Faulkner (in his capacity as trustee of the Liquidating Trust, the "**Liquidating Trustee**"), is executed to facilitate the implementation of the *Third Amended Chapter 11 Plan of Sam Wyly* dated [date] [Docket No.] (as amended, modified, and supplemented from time to time, the "**Plan**"). All capitalized terms used and not otherwise defined in this Liquidating Trust Agreement and defined in the Plan shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on October 19, 2014 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Honorable Barbara J. Houser, Chief United States Bankruptcy Judge presiding (the "**Court**");

**WHEREAS**, the Plan provides for, among other things, the transfer of all Liquidating Trust Assets to the Liquidating Trust, the initiation or prosecution of the Causes of Action, the management and liquidation of the Liquidating Trust Assets by the Liquidating Trustee, and the making of Distributions pursuant to the Plan; and

**WHEREAS**, the Liquidating Trust is intended to qualify as a liquidating trust treated as a grantor trust within the meaning of Treasury Regulations Section 301.7701-(4)(d) and is established for the purpose of: (a) liquidating the Liquidating Trust Assets for the benefit of holders of the Liquidating Trust Interests in accordance with the Plan; and (b) making such other Distributions from the General Accounts as set forth in the Plan.

**NOW**, **THEREFORE**, in consideration of the premises, mutual covenants, and agreements contained herein and in the Plan, the parties hereto agree as follows:

## ARTICLE I.

## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1 **Establishment of Liquidating Trust**. Pursuant to the Plan, the Debtor and the Liquidating Trustee hereby establish the Liquidating Trust on behalf of the Liquidating Trust Beneficiaries. The Liquidating Trustee shall accept and hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries, subject to the terms of this Liquidating Trust Agreement and the Plan. The Liquidating Trust shall be established as a liquidating trust treated as a grantor trust within the meaning of Treasury Regulations Section 301.7701-(4)(d) with no objective or authority to carry on or conduct a trade or business, or accept an assignment of any claim or right of action from, or assume any liabilities of, any person or entity other than the Debtor, and no part of the Liquidating Trust Assets or the proceeds, revenue, or income from the Liquidating Trust Assets shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business.

1.2 **Name of Liquidating Trust**. The name of the Liquidating Trust will be "**SEW Liquidating Trust**."

1.3　**Purpose of Liquidating Trust**. The sole purpose of this Liquidating Trust is to: (a) liquidate the Liquidating Trust Assets in a manner calculated to conserve, protect, and maximize the value of the Liquidating Trust Assets; and (b) make any such other Distributions from Net Proceeds as set forth in the Plan. In the exercise of such purpose, in addition to the powers listed in Section 4.1 hereof, as set forth in the Plan, the Liquidating Trustee shall be authorized to, among other things: (i) investigate and prosecute the Causes of Action; (ii) file all federal, state, and local tax returns of the Liquidating Trust and furnish appropriate tax reporting information to the Liquidating Trust Beneficiaries; (iii) establish reserves, including the Undeliverable Distribution Reserve and any additional accounts and reserves established in accordance with Section 4.6(b) hereof (collectively, the "**Reserve Accounts**"), and open, maintain, and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee; and (iv) represent the Estate before the Court or other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust and Liquidating Trust Assets. The Plan further provides that the Liquidating Trust will be responsible for making Distributions to the Liquidating Trust Beneficiaries and holders of Claims in accordance with the Plan. Pursuant to these express purposes and subject to the provisions of Article IV hereof, the Liquidating Trustee is hereby authorized and directed to take all reasonable and necessary actions to hold, conserve, protect, and maximize the Liquidating Trust Assets, to collect upon, sell, or otherwise liquidate or dispose of the Liquidating Trust Assets, and to distribute the Net Proceeds to the Liquidating Trust Beneficiaries, in accordance with the provisions of the Plan and this Liquidating Trust Agreement; *provided, however,* that the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited as set forth in Section 4.2 hereof.

1.4　**No Additional Beneficiaries**. The Liquidating Trust shall be solely for the benefit of the Liquidating Trust Beneficiaries.

1.5　**Transfer of Liquidating Trust Assets and Rights to the Liquidating Trust**. As of the Effective Date, the Debtor hereby conveys, transfers, assigns, and delivers to the Liquidating Trust: (a) all of his rights, title, and interest in the Liquidating Trust Assets free and clear of any Liens or Claims of any other Person, but subject to the Liquidating Trust Permitted Liens and the Liquidating Trustee's obligations under the Plan, except as otherwise provided in the Plan; and (b) all of his rights with respect to the Liquidating Trust Assets.

1.6　**Instruments of Further Assurance; Information**. All such Persons as shall have the right and power after the Effective Date, upon reasonable request of the Liquidating Trustee or his successors or assigns, shall execute, acknowledge, and deliver such further instruments, documents, books, and records and take, or cause to be taken, all such further actions as may be necessary or proper to effectively carry out the purposes of this Liquidating Trust Agreement and the Plan, and to otherwise carry out the intent of the parties hereunder and under the Plan.

1.7　**Title to Liquidating Trust Assets**. On the Effective Date, the Liquidating Trust Assets shall be vested in, and transferred to, the Liquidating Trust pursuant to the Plan for the benefit of the Liquidating Trust Beneficiaries. As of the Effective Date, the Liquidating Trust shall hold legal title to all Liquidating Trust Assets and will succeed to all of the Debtor's rights, title, and interest in the Liquidating Trust Assets, and the Debtor will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust, except as provided in the Plan.

The Liquidating Trustee hereby declares that he shall hold the Liquidating Trust Assets in trust to be administered and disposed of pursuant to the terms of this Liquidating Trust Agreement and the Plan for the benefit of the Liquidating Trust Beneficiaries.

1.8     **Valuation of Trust Assets**.  The fair market value of the Liquidating Trust Assets as of the Effective Date will be agreed to by the Debtor and the Liquidating Trustee in consultation with the Liquidating Trust Committee.  As soon as practicable after the Effective Date, the Liquidating Trustee shall inform the Liquidating Trust Beneficiaries in writing of the agreed upon value of the Liquidating Trust Assets transferred to the Liquidating Trust.  Such valuation shall be used consistently by all parties, including, without limitation, the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries, for all federal income tax purposes.

1.9     **Reliance**.  The Liquidating Trustee may rely upon the Bankruptcy Schedules and all other information provided by the Debtor or his professional advisors concerning Claims against the Debtor, their reconciliation, and documents supporting such reconciliation.

1.10    **Governance of the Liquidating Trust**.  The Liquidating Trust shall be governed by the Liquidating Trustee.  The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust Agreement. Subject to the terms and conditions of this Liquidating Trust Agreement, the Liquidating Trustee may delegate responsibility for discrete issues or decisions to one or more third parties, subject to continued oversight by the Liquidating Trustee.

1.11    **Appointment of the Liquidating Trustee**.  As of the date hereof, the Liquidating Trustee shall be Dennis S. Faulkner.  The Liquidating Trustee accepts the trust imposed on him by this Liquidating Trust Agreement and shall observe and perform that trust on and subject to the terms and conditions set forth herein.

1.12    **Liquidating Trust Interests; Transferability; Surrender**.

(a)     Liquidating Trust Interests shall be issued by the Liquidating Trustee to the Liquidating Trust Beneficiaries.  In lieu of certificates evidencing Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of the Liquidating Trust Beneficiaries based upon the provisions of the Plan which designate the Persons who are entitled to receive the Liquidating Trust Interests.

(b)     Subject to Section 8.10(b) of the Plan, the Liquidating Trust Interests may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale, except for transfers by operation of law.

(c)     In accordance with Section 8.10(b) of the Plan: (i) upon receipt by all holders of Liquidating Trust Interests of Distributions aggregating the full Allowed Amounts of all Allowed Claims, each Liquidating Trust Beneficiary shall have the option to provide the Liquidating Trustee with a notice of surrender of its Liquidating Trust Interest, and upon such notice, such Liquidating Trust Interest shall be deemed cancelled, terminated, and extinguished (all without further action by any Person, the Court, or the Liquidating Trustee); and (ii) upon receipt by the Liquidating Trust Beneficiary of Distributions aggregating the Allowed Amount of its Allowed Claims, the Liquidating Trust Beneficiary shall have the option to provide the

-3-

Liquidating Trustee with a notice of surrender of its Liquidating Trust Interest, and upon such notice, its Liquidating Trust Interest shall be deemed cancelled, terminated, and extinguished (all without further action by any Person, the Court, or the Liquidating Trustee).

## ARTICLE II.

## DURATION AND TERMINATION OF LIQUIDATING TRUST

2.1 **Duration**. The duties, responsibilities, and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Causes of Action, transferred and assigned to the Liquidating Trust, or involving the Liquidating Trustee on behalf of the Liquidating Trust, are fully resolved, abandoned, or liquidated and the Net Proceeds have been distributed in accordance with the Plan and this Liquidating Trust Agreement. Except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three years after the Effective Date; *provided, however,* that if the facts and circumstances provided for in the Plan warrant otherwise, and subject to Court approval upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended, one or more times for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Court within one month prior to the beginning of the extended term with notice thereof to the Liquidating Trust Beneficiaries who have an unpaid Allowed Claim. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall file with the Court a report thereof, seeking an order discharging the Liquidating Trustee.

2.2 **Continuance of Liquidating Trust for Winding Up**. After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until all duties under the Plan and this Liquidating Trust Agreement have been fully performed. Upon distribution of all of the Liquidating Trust Assets, or the proceeds thereof, the Liquidating Trustee shall hold the books, records, and files delivered to or created by the Liquidating Trustee for a period of four years after the last Distribution of Net Proceeds is made. All costs and expenses associated with the storage of such documents shall be paid by the Liquidating Trust. At the Liquidating Trustee's discretion, in consultation with the Liquidating Trust Committee, all such records and documents may be destroyed at any time after four years from the distribution of all of the Liquidating Trust Assets. Except as otherwise specifically provided herein, upon the distribution of all of the Liquidating Trust Assets, the Liquidating Trustee shall have no further duties or obligations hereunder except: (a) to account and report as provided in Sections 2.3 and 3.4 hereof; and (b) to perform such other acts as may be required by law.

2.3 **Final Accounting**. Upon termination of the Liquidating Trust, the Liquidating Trustee shall file an accounting with the Court setting forth the amount he has collected and disbursed, and the fees and expenses incurred in administering the Liquidating Trust, including the fees and expenses incurred by the Liquidating Trustee and his professionals. The Liquidating Trustee shall seek the issuance and entry of any orders necessary to approve such accounting and discharge the Liquidating Trustee from any and all liability for acting as Liquidating Trustee under the Plan and this Liquidating Trust Agreement. The Liquidating Trustee's professionals shall be required to maintain accurate time and expense records to the extent required by the Plan.

US 3395211

# ARTICLE III.

## ADMINISTRATION OF TRUST ESTATE

3.1    **Payment of Expenses**.  The Liquidating Trustee shall pay all Liquidating Trust Expenses, including the U.S. Trustee Fees as set forth in Section 3.5 of the Plan, and the costs associated with winding up the Liquidating Trust, from the General Account.

3.2    **Disbursement to Liquidating Trust Beneficiaries**.  The Liquidating Trustee shall disburse funds to the Liquidating Trust Beneficiaries in accordance with Articles IX,  X and XI of the Plan and the following terms and conditions:

(a)    Any payments to be made by the Liquidating Trust to the Liquidating Trust Beneficiaries shall be made only from the Liquidating Trust Assets to the extent that the Liquidating Trust shall have sufficient Liquidating Trust Assets to make such payments in accordance with the terms of this <u>Section 3.2</u>.  The Liquidating Trust Beneficiaries shall look solely to Liquidating Trust Assets for any Distributions provided herein or in the Plan.

(b)    Subject to <u>Section 3.3</u> hereof, the Liquidating Trustee shall distribute at least annually to the Liquidating Trust Beneficiaries any net income of the Liquidating Trust, except that the Liquidating Trust may retain an amount that is reasonably necessary to maintain the value of the Liquidating Trust Assets, administer the Liquidating Trust, satisfy Allowed Claims as set forth in Article XI of the Plan, prosecute the Causes of Action, and pay contingent liabilities, or as otherwise required by the Plan.

(c)    Distributions shall be made by the Liquidating Trustee to the Liquidating Trust Beneficiaries pursuant to the terms of the Plan until all Liquidating Trust Assets have been exhausted.  Subject to the foregoing and <u>Section 3.3</u> hereof, Distributions to the Liquidating Trust Beneficiaries shall be made pursuant to Article 5 and Section 9.2 of the Plan.  Unclaimed distributions shall be treated in accordance with the terms of Article X of the Plan.

(d)    The Liquidating Trustee may require any Liquidating Trust Beneficiary or any holder of an Allowed Claim entitled to a Distribution from the Liquidating Trust to furnish to the Liquidating Trustee such holder's Employer Identification Number or Federal Tax Identification Number as assigned by the IRS, and the Liquidating Trustee may condition any Distribution to such holder upon receipt of such identification number.

(e)    All checks shall be transmitted by United States Post Office, First Class Mail, postage prepaid and addressed to the payee at such payee's address determined as set forth in Section 9.2 of the Plan.

3.3    **De Minimis Distributions**.  The Liquidating Trustee shall not make any payment of less than fifty dollars with respect to any Claim unless a request therefor is made in writing to the Liquidating Trustee.  Notwithstanding the foregoing, the Liquidating Trustee may, in his discretion, make payments of fractions of dollars or of less than fifty dollars.

-5-

3.4 **Reports**.

(a) The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets, the Net Proceeds, the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trust, and all distributions either contemplated or effectuated under the Plan or this Liquidating Trust Agreement.

(b) The Liquidating Trustee shall continue to file quarterly operating reports with the Bankruptcy Court as may be required by the United States Trustee after confirmation of the Plan until the Chapter 11 case is closed.

(c) As soon as practicable, but no later than 35 days after each calendar quarter or the termination of the Liquidating Trust, the Liquidating Trustee shall provide the Liquidating Trust Committee with a written report and account showing: (i) the assets and liabilities of the Liquidating Trust at the end of such quarter or upon termination of the Liquidating Trust and the receipts and disbursements of the Liquidating Trust for such quarter; (ii) any changes in the Liquidating Trust Assets or to the allowance of Claims which have not been previously reported; (iii) a general description of the activities of the Liquidating Trust; and (iv) if applicable, the amount of compensation paid to the Liquidating Trustee for the preceding quarter pursuant to Section 6.1 hereof. The Liquidating Trustee may provide similar reports for such interim periods as he, in consultation with the Liquidating Trust Committee, deems advisable.

(d) No later than 75 days after the end of each fiscal year, the Liquidating Trustee shall furnish to each Liquidating Trust Beneficiary who has not been paid in full a grantor letter, as required by Internal Revenue Code Section 671, which shall include all items of income, deductions and credits against tax attributable to the portion of the trust for which the grantor is deemed to be the owner.

(e) The Liquidating Trustee shall provide such other and further information regarding the Liquidating Trust and the Liquidating Trust Assets as may be necessary to be in compliance with applicable law and shall prepare such additional reports as required by the Court or the Plan.

(f) The fiscal year of the Liquidating Trust shall end on the last day of each calendar year unless some other fiscal year-end date is required by applicable law and is permissible under the Internal Revenue Code.

## ARTICLE IV.

## POWERS OF AND LIMITATIONS ON THE LIQUIDATING TRUSTEE

4.1 **General Powers of Liquidating Trustee**. Subject to the express limitations contained in this Liquidating Trust Agreement and the Plan, the Liquidating Trustee in consultation with the Liquidating Trust Committee shall have, in addition to any powers conferred by other provisions of this Liquidating Trust Agreement or the Plan, the power to take any and all actions as are necessary or advisable to effectuate the purpose of the Liquidating Trust, including

the following powers, which he may exercise without Court approval, except to the extent otherwise required under the provisions of the Plan or this Liquidating Trust Agreement:

        (a)     To hold legal title to any and all rights of the Liquidating Trust Beneficiaries in or arising from the Liquidating Trust Assets, including, without limitation, the right to collect and receive any and all money and other property belonging to the Liquidating Trust;

        (b)     To invest or reinvest Liquidating Trust Assets as provided in <u>Section 4.3</u> hereof and to cause such investments, or any part thereof, to be registered and held in his name, as Liquidating Trustee, or in the names of nominees;

        (c)     To establish and maintain such bank accounts as may be necessary or appropriate, to draw checks on such bank accounts, and to perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefor, as the Liquidating Trustee may direct and authorize;

        (d)     To engage employees, agents, and professional persons, including, without limitation, former professional persons employed by the Debtor, and the services of Highland Stargate to assist the Liquidating Trustee with respect to his responsibilities;

        (e)     To perform all of the Liquidating Trustee's obligations under the Plan and this Liquidating Trust Agreement, including, without limitation, maintaining the Reserve Accounts, making all required Distributions to holders of Allowed Claims, and paying U.S. Trustee Fees;

        (f)     To pay all Liquidating Trust Expenses;

        (g)     To avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code, applicable state law, and the Plan, to the extent the right to avoid and recover such transfers constitute Liquidating Trust Assets under the Plan;

        (h)     To exercise offsets against Claims as permitted under the Plan, to the extent such offset rights constitute Liquidating Trust Assets under the Plan;

        (i)     To object to the allowance of any Claims that are not Allowed under the Plan or by Court Order and to compromise and settle Disputed Claims, both as set forth in Article XI of the Plan;

        (j)     To pursue and prosecute all Causes of Action, as set forth in Section 8.11 of the Plan;

        (k)     To institute, join, or defend actions or other requests for relief and to take such other actions, including settlements thereof, on any terms deemed reasonable by the Liquidating Trustee, in consultation with the Liquidating Trust Committee, to enforce or collect upon any instruments, contracts, agreements, or Causes of Action constituting or relating to the Liquidating Trust Assets;

US 3395211

(l)        To perform any act authorized, permitted, or required under any instrument, contract, agreement, claim, or Cause of Action constituting or relating to the Liquidating Trust Assets, whether in the nature of an approval, consent, demand, or notice thereunder or otherwise, unless such act would require the consent of the Liquidating Trust Beneficiaries in accordance with the express provisions of this Liquidating Trust Agreement;

(m)        To file or cause to be filed all required federal, state, local, and foreign tax filings of the Liquidating Trust, make tax elections, if any, available to the Liquidating Trust under federal, state, local, or foreign law, and prepare applications for rulings or other administrative determinations from federal, state, local, and foreign tax authorities as may be reasonably necessary to determine the tax liabilities of the Liquidating Trust or the Liquidating Trust Beneficiaries;

(n)        To request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to Bankruptcy Code § 505;

(o)        To obtain insurance coverage with respect to his liabilities and obligations as Liquidating Trustee under this Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise);

(p)        To assert or waive any privilege on behalf of the Debtor, solely with respect to the Liquidating Trust Assets or on behalf of the Liquidating Trust; and

(q)        To exercise such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, this Liquidating Trust Agreement, or the Confirmation Order, or as may be necessary and desirable to carry out the provisions of this Liquidating Trust Agreement and applicable law.

4.2        **Limitations on Liquidating Trustee**.  The Liquidating Trustee shall carry out the purposes of the Liquidating Trust pursuant to this Liquidating Trust Agreement, and shall not at any time, on behalf of the Liquidating Trust or the Liquidating Trust Beneficiaries: (a) enter into or engage in any business; or (b) accept an assignment of any right of action from, or assume any liabilities of, any person or entity other than the Debtor.  Further, no part of the Liquidating Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Liquidating Trustee in furtherance of any business other than as contemplated by the Plan.  This limitation shall apply irrespective of whether the conduct of any such business activity is deemed by the Liquidating Trustee to be necessary or proper for the conservation and protection of the Liquidating Trust.  The Liquidating Trustee: (i) shall make continuing efforts to liquidate the Liquidating Trust Assets; (ii) shall make timely distributions; and (iii) shall not unduly prolong the duration of the Liquidating Trust.  The limitations of this Section 4.2 shall be in addition to the limitations set forth in other provisions of this Liquidating Trust Agreement.

4.3        **Investment Power**.  The investment power of the Liquidating Trustee, other than that reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited to the power to invest: (a) in demand and time deposits, such as short-term certificates of deposit; (b) in banks or other savings institutions; or (c) in other temporary, liquid investments such as Treasury bills.  Once such funds

-8-

are so invested, the Liquidating Trustee shall not sell or otherwise liquidate the investment until such time as such funds are needed to pay expenses incurred pursuant to this Liquidating Trust Agreement or the Plan, or to be distributed pursuant to the Plan or this Liquidating Trust Agreement; *provided, however,* that the Liquidating Trustee may liquidate such investments if the Liquidating Trustee determines, in consultation with the Liquidating Trust Committee, that such liquidation is necessary to protect the Liquidating Trust from loss on the amounts invested. In accordance with the provisions of this Liquidating Trust Agreement, the Liquidating Trustee shall be restricted to: (i) the holding and collection of the Liquidating Trust Assets and the payment and distribution thereof for the purposes set forth herein and in the Plan; (ii) to the conservation, protection, and maximization of the Liquidating Trust Assets; and (iii) to the administration of the Liquidating Trust Assets. The Liquidating Trustee shall keep all Liquidating Trust Assets segregated from, and shall not commingle, any Liquidating Trust Assets with any assets of any other Person, including any of the Liquidating Trustee's own assets.

4.4 **Additional Powers of Liquidating Trustee**. Subject to the express limitations contained herein, the Liquidating Trustee shall have and may exercise with respect to the Liquidating Trust Assets, or any part thereof, and to the administration and distribution of the Liquidating Trust Assets, all powers now or hereafter conferred on trustees by the laws of the State of Texas. The powers conferred by this <u>Section 4.4</u> shall in no way limit any power conferred on the Liquidating Trustee by any other section hereof but shall be in addition thereto; *provided, however,* that the powers conferred by this <u>Section 4.4</u> are conferred and may be exercised only and solely within the limitations and for the limited purposes imposed and expressed in the Plan and in <u>Article III</u> and <u>Section 4.4</u> hereof.

4.5 **Tax and Reporting Duties of the Liquidating Trustee.** The Liquidating Trustee shall be responsible for all tax and other matters as set forth in <u>Article V</u> of this Liquidating Trust Agreement.

4.6 **Establishment and Maintenance of Accounts and Reserves**. On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee in consultation with the Liquidating Trust Committee shall establish the following accounts and reserves which, notwithstanding anything to the contrary contained in this Liquidating Trust Agreement, may be effected by either establishing segregated accounts or establishing book entry accounts:

(a) <u>General Account</u>. One or more general accounts (collectively, the "**General Account**"): (i) into which shall be deposited all funds not required or permitted to be deposited into any other account or reserve described in or contemplated by this Liquidating Trust Agreement; and (ii) from which shall be made all Distributions to Liquidating Trust Beneficiaries on the initial date of Distribution and on each subsequent date of Distribution.

(b) <u>Subsequent Establishment of Accounts and Reserves</u>. On or after the Effective Date, the Liquidating Trustee shall establish and maintain such additional accounts and reserves as may be required by applicable law or by Court Order, or as he deems necessary or desirable to carry out the provisions of the Plan and this Liquidating Trust Agreement.

4.7     **Undeliverable Distribution Reserve**.

      (a)     The Liquidating Trustee shall establish an Undeliverable Distribution Reserve by book entry accounting for funds within the General Account.

      (b)     If a Distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed (an "**Undeliverable or Unclaimed Distribution**"), such Distribution shall be deposited in the General Account designated as an "**Undeliverable Distribution Reserve**," for the benefit of such holder until such time as such Distribution: (i) becomes deliverable; (ii) is claimed; or (iii) is deemed to have been forfeited in accordance with the Plan.

      (c)     Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an Undeliverable or Unclaimed Distribution within one year after the first Distribution is made to such holder, such holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Distribution against the Debtor, the Estate, the Liquidating Trustee, the Liquidating Trust, or each of their respective properties or assets. In such case(s), any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for Undeliverable or Unclaimed Distributions shall become the property of the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate distribution by the Liquidating Trust according to the terms of the Plan and this Liquidating Trust Agreement.

      (d)     The Liquidating Trustee and his respective agents and attorneys are under no duty to take any action to attempt to locate any Claim holder.

      (e)     Within fifteen Business Days after the holder of an Allowed Claim satisfies the requirements of the Plan, such that the distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in the Plan), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim.

## ARTICLE V.

## TAX MATTERS

5.1     **Classification of the Liquidating Trust**. For all federal income tax purposes, all parties (including the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) are required to treat the vesting of the Liquidating Trust Assets in the Liquidating Trust, and the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer by the Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. The Liquidating Trust will be treated as a grantor trust for federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of their allocable portion of the Liquidating Trust Assets for federal income tax purposes. The parties shall not take any position on their respective tax returns or with respect

-10-

to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the IRS.

5.2 **General Tax Reporting by the Liquidating Trust and the Liquidating Trust Beneficiaries**. (a) The Liquidating Trustee shall prepare, consistent with Section 4.1 hereof, and file on behalf of the Liquidating Trust, at the time and in the manner prescribed by the Internal Revenue Code and applicable state and local law, such tax returns and reports as may be required by such law(s), including, but not limited to, returns and reports required by Treasury Regulations Section 1.671-4(a), and shall promptly furnish copies of such returns and reports as filed to the Liquidating Trust Beneficiaries. The Liquidating Trustee shall pay or cause to be paid any and all taxes imposed on the Liquidating Trust. The Liquidating Trustee shall also file or cause to be filed all appropriate tax returns with respect to any Liquidating Trust Assets allocable to Disputed Claims as set forth in Section 5.3 hereof, and pay or cause to be paid any and all taxes imposed with respect to the Disputed Claims.

(b) As soon as practicable after the close of each taxable year, the Liquidating Trustee shall mail to each of the Liquidating Trust Beneficiaries a statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit, and shall instruct all such beneficiaries to report such items on their federal income tax returns. The Liquidating Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to subsection (c) hereof, related to Disputed Claims) to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

(c) Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall:

(i) treat all Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(ii) treat as taxable income or loss of this separate trust with respect to any given taxable year the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such claims are unresolved);

(iii) treat as a distribution from this separate trust any increased amounts distributed by the Liquidating Trust as a result of any Disputed Claim resolved earlier in the taxable year, to the extent such distribution relates to taxable income or loss of this separate trust determined in accordance with the provisions hereof; and

(iv) to the extent permitted by applicable law, report consistently for state and local income tax purposes.

(d) The Liquidating Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets. In the event, and to the extent any cash retained on account of Disputed Claims in any

-11-

such reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes paid by the Liquidating Trustee (other than from the reserve for Disputed Claims) shall be: (i) reimbursed from any subsequent cash amount retained on account of Disputed Claims; or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

(e)     The Liquidating Trust may retain professionals to perform the Liquidating Trustee's duties under this <u>Section 5.2</u> and, subject to <u>Section 6.6</u> hereof, may rely upon the performance of such professionals with respect to such duties.

(f)     The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including with respect to the Disputed Claims, under Bankruptcy Code § 505(b) for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

5.3     **Withholding of Taxes and Other Charges**. The Liquidating Trust may withhold from any amounts distributable at any time to the Liquidating Trust Beneficiaries such sum(s) as may be necessary to pay any taxes or other charges which have been or may be imposed on the Liquidating Trust or the Liquidating Trust Beneficiaries under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in <u>Section 3.2</u> hereof or in the Plan, whenever such withholding is required by any law, regulation, rule, ruling, directive, or other governmental requirement, and the Liquidating Trustee, in the exercise of his discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this <u>Section 5.3</u>. Notwithstanding the foregoing, but without prejudice to the Liquidating Trust's rights hereunder, the Liquidating Trust Beneficiaries shall have the right with respect to the United States or any state or political subdivision or entity to contest the imposition of any tax or other charge by reason of any distribution hereunder or under the Plan.

5.4     **Other**. The Liquidating Trustee shall file, or cause to be filed, any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit or applicable law.

**ARTICLE VI.**

**THE LIQUIDATING TRUSTEE**

6.1     **Liquidating Trustee's Compensation and Reimbursement**.

(a)     Beginning on the Effective Date and continuing throughout the duration of his engagement, the Liquidating Trustee shall be compensated on an hourly basis. The Liquidating Trustee shall bill for his services at his standard hourly rate, which currently is $450 per hour; *provided that* the Liquidating Trustee's standard hourly rate may increase annually beginning January 1, 2019 and thereafter, with each such increase subject to prior approval of the Liquidating Trust Committee. On a daily basis, the Liquidating Trustee shall maintain time sheets which record a description of the activities he undertakes on behalf of the Liquidating Trust and the

-12-

amount of time expended for each such activity. The Liquidating Trustee shall also be entitled to reimbursement of all reasonable expenses on a monthly basis.

(b)    The Liquidating Trustee, in consultation with the Liquidating Trust Committee, shall have the right to retain the services of attorneys, accountants, and other professionals that are necessary to assist the Liquidating Trustee in the performance of his duties.

(c)    The payment of fees of the Liquidating Trustee and any professionals retained thereby shall be made by the Liquidating Trust from the General Account in accordance with the Plan, upon approval by the Liquidating Trust Committee. On a monthly basis, or as otherwise agreed by the Liquidating Trustee and the Liquidating Trust Committee, the Liquidating Trustee (and each professional employed by the Liquidating Trustee) shall provide to the Liquidating Trustee and each member of the Liquidating Trust Committee a statement setting forth its aggregate fees and expenses incurred in connection with the engagement not previously billed, together with reasonable documentation of such expenses (any such report, a "**Fee and Expense Report**"), and shall be entitled to receive payment of such fees and expenses ten (10) business days after providing the Fee and Expense Report (the "**Fee Notice Period**") to the Liquidating Trustee, and the Liquidating Trust Committee. Notwithstanding the foregoing, if the Liquidating Trustee or Liquidating Trust Committee objects to such Fee and Expense Report within the Fee Notice Period, the parties may seek to resolve such objection on a consensual basis. If the parties are unable to reach a consensual resolution, the Liquidating Trustee (and each professional employed by the Liquidating Trustee) shall be entitled to payment of the contested portion of its fees and/or expenses only pursuant to a Final Order of the Bankruptcy Court after notice and opportunity for a hearing, provided that the Liquidating Trustee (and each professional employed by the Liquidating Trustee) shall be entitled to payment of the uncontested portion, if any, of such fees and expenses upon expiration of the Fee Notice Period. The Fee and Expense Report may be redacted as required to protect all applicable privileges if the Fee and Expense Report is disseminated to any person or entity other than the Liquidating Trust Committee.

6.2    **Resignation**.    The Liquidating Trustee may resign as Liquidating Trustee hereunder by giving not less than 90 days' prior written notice thereof to the Liquidating Trust Beneficiaries and the Liquidating Trust Committee. Such resignation shall become effective on the first to occur of: (a) the day specified in such notice; or (b) the appointment of a successor Liquidating Trustee pursuant to Section 6.4 hereof and the acceptance of such successor Liquidating Trustee of such appointment. If a successor Liquidating Trustee is not appointed or does not accept his or her appointment within 90 days following delivery of notice of resignation, the Liquidating Trustee may petition the Court for the appointment of a successor Liquidating Trustee. The Liquidating Trustee shall be deemed to have resigned as of the date of his death or incompetence.

6.3    **Removal**.    The Liquidating Trustee (and his successors) may be removed by the Liquidating Trust Committee with or without cause at any time by written notice to the Liquidating Trustee. Such removal shall be effective thirty days after the Liquidating Trust Committee's determination or after such shorter period (or immediately) as the Liquidating Trust Committee may direct. Upon removal of the Liquidating Trustee by the Liquidating Trust Committee in accordance with this Section 6.3, unless such removal was for cause (as defined below), the Liquidating Trustee shall be entitled to all compensation that has accrued (on a prorated basis)

-13-

through the date of such removal, but remains unpaid as of such date, which payment shall be made promptly by the Liquidating Trust from the General Account. For purposes of this Liquidating Trust Agreement, "for cause" shall mean: (a) the willful an continued refusal by the Liquidating Trustee to perform his duties as set forth herein; (b) gross negligence, misconduct, fraud, embezzlement, or theft; or (c) such other cause as the Liquidating Trust Committee shall in good faith determine.

        6.4    **Appointment of Successor Liquidating Trustee**. In the event of the resignation, removal, or incapacity of the Liquidating Trustee, the Liquidating Trust Committee shall designate a successor Liquidating Trustee, subject to Court approval after notice and a hearing. The successor Liquidating Trustee shall give written notice of his or her appointment to the Liquidating Trust Beneficiaries as soon thereafter as is practicable. Any successor Liquidating Trustee appointed hereunder shall execute, acknowledge, and deliver to the Court, the Liquidating Trust Committee, and the retiring Liquidating Trustee an instrument duly accepting such appointment and agreeing to be bound by the terms of this Liquidating Trust Agreement and thereupon such successor Liquidating Trustee, without further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the Liquidating Trustee under this Liquidating Trust Agreement. All fees and expenses of the Liquidating Trustee shall be paid unless disputed by the successor Liquidating Trustee, in which case such dispute shall be subject to resolution by the Court.

        6.5    **Liquidating Trust Continuance**. The resignation or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust, revoke any existing agency created pursuant to the terms of this Liquidating Trust Agreement, or invalidate any action theretofore taken by the Liquidating Trustee or any prior Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall: (a) promptly execute and deliver such documents, instruments, and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Liquidating Trust Agreement and the conveyance of the Liquidating Trust Assets then held by the Liquidating Trustee to the successor Liquidating Trustee; (b) deliver to the successor Liquidating Trustee all documents, instruments, records, and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and (c) otherwise assist and cooperate in effecting the assumption of his obligations and functions by such successor Liquidating Trustee.

        6.6    **Reliance by Liquidating Trustee**. The Liquidating Trustee may rely, and shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document which the Liquidating Trustee believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of facsimile transmissions or electronic mail, to have been sent by the proper party or parties, in each case without obligation to satisfy himself that the same was given in good faith and without responsibility for errors in delivery, transmission, or receipt. In the absence of fraud, willful misconduct, or gross negligence on the Liquidating Trustee's part, the Liquidating Trustee may rely as to the truth of any statements contained therein in acting thereon. The Liquidating Trustee may consult with and rely on the advice of legal counsel and such other experts, advisors, consultants, or other professionals as shall have been retained pursuant to this Liquidating Trust Agreement and shall be fully protected in respect of any action

-14-

taken or suffered by them in accordance with the written opinion of legal counsel. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants, or his agents, and his determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or fraud.

6.7 **Standard of Care**. The Liquidating Trustee shall owe duties of good faith and loyalty to the Liquidating Trust and its beneficiaries in the exercise of his powers under the Liquidating Trust Agreement. Except in the case of fraud, willful misconduct, or gross negligence, the Liquidating Trustee shall not be liable for any loss or damage by reason of any action or omission by the Liquidating Trustee pursuant to the discretion, power, and authority conferred on the Liquidating Trustee by this Liquidating Trust Agreement, the Plan, and the Confirmation Order.

6.8 **No Liability for Acts of Predecessor Trustees**. No successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility.

6.9 **Insurance**. The Liquidating Trustee may purchase, at the expense of the Liquidating Trust, errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, or expenses it may incur, including, but not limited to, attorneys' fees, arising out of or due to his actions or omissions or consequences of such actions or omissions, other than as a result of his fraud, gross negligence, or willful misconduct, with respect to the implementation of this Liquidating Trust Agreement, the Plan, or the Confirmation Order.

6.10 **No Implied Obligations**. No Liquidating Trustee shall be liable for any duties or obligations except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Liquidating Trust.

6.11 **No Personal Liability**. Persons dealing with the Liquidating Trust must look solely to the Liquidating Trust or Liquidating Trust Assets for the enforcement of any claims against the Liquidating Trust or to satisfy any liability incurred by the Liquidating Trustee to such Persons in carrying out the terms of this Liquidating Trust, and neither the Liquidating Trustee nor the Debtor or any other Person shall have any personal liability or individual obligation to satisfy any such liability.

6.12 **Indemnification**. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust, this Liquidating Trust Agreement, or the implementation or administration of the Plan; *provided*, *however*, that no such indemnification will be made to the Liquidating Trustee and his agents, representatives, professionals, and employees for such actions or omissions as a result of willful misconduct, gross negligence, or fraud.

US 3395211

# ARTICLE VII.

## LIQUIDATING TRUST COMMITTEE

**7.1     Creation of Liquidating Trust Committee; Replacement of Members**.

(a)     On the Effective Date, the Liquidating Trust Committee shall be formed and constituted with one to three members to be designated by the IRS. If a member of the Liquidating Trust Committee resigns or is otherwise removed, a replacement Liquidating Trust Committee member may be appointed by the remaining members. Alternatively, the Liquidating Trustee may apply to the Bankruptcy Court for an Order directing the appointment, or not, of a replacement member.

**7.2     Procedures**.   The Liquidating Trust Committee may adopt bylaws to provide procedures for the governance of the Liquidating Trust Committee.

**7.3     Function, Duties, and Responsibilities**.  Subject to Section 8.12 of the Plan, the Liquidating Trust Committee shall have the following function, duties, and responsibilities:

(a)     It shall meet with the Liquidating Trustee upon such regular basis as the Liquidating Trust Committee and the Liquidating Trustee deem appropriate, but in no event less frequently than quarterly; and

(b)     It shall consult with the Liquidating Trustee regarding the carrying out of his duties, including, but not limited to: (i) pursuit and resolution of claims and causes of action against third parties; (ii) resolution of Claims filed by Creditors against the Debtor; (iii) administration of the Liquidating Trust and the Liquidating Trust Assets; and (iv) Distributions to the Liquidating Trust Beneficiaries and holders of Allowed Claims.

**7.4     Duration**.  The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 8.13 of the Plan.

**7.5     Payment of Fees and Reimbursement of Costs and Expenses**.  The members of the Liquidating Trust Committee may be paid for their fees and reimbursed for their costs and expenses.  Such payment of fees and reimbursement of costs and expenses shall be paid from the Liquidating Trust Assets without further order of the Court.

**7.6     Liability; Indemnification**.  Neither the Liquidating Trust Committee, nor any of its members, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, agent, or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such member's willful misconduct, gross negligence, or fraud.  The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to

-16-

consult with attorneys, accountants, or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members, unless such determination is based on willful misconduct, gross negligence, or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, reasonable attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust, this Liquidating Trust Agreement, or the implementation or administration of the Plan; *provided, however,* that no such indemnification will be made to any such Person for such actions or omissions as a result of such Person's willful misconduct, gross negligence, or fraud.

## ARTICLE VIII.

## AMENDMENTS

8.1 **Amendments**. The parties hereto may make and execute written amendments to this Liquidating Trust Agreement; *provided, however,* that in no event shall this Liquidating Trust Agreement be amended so as to: (a) change the purpose of the Liquidating Trust as set forth in Article I hereof; (b) allow funds constituting Liquidating Trust Assets to be invested in a manner other than as permitted in Section 4.2 hereof; (c) adversely affect the Distributions to be made under this Liquidating Trust Agreement to any Liquidating Trust Beneficiaries; or (d) adversely affect the U.S. Federal income status of the Liquidating Trust in accordance with Article I hereof.

## ARTICLE IX.

## MISCELLANEOUS PROVISIONS

9.1 **Applicable Law**. The Liquidating Trust created herein shall be construed, regulated, and administered under the laws of the State of Texas without regard to principles of conflicts of law; *provided* that the Liquidating Trust and any interpretation or enforcement of the provisions of this Liquidating Trust Agreement shall be subject to the jurisdiction of the Court.

9.2 **No Association, Partnership or Joint Venture**. This Liquidating Trust Agreement is not intended to create and shall not be interpreted as creating an association, partnership, or joint venture of any kind.

9.3 **Partial Invalidity**. If any term or provision of this Liquidating Trust Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Liquidating Trust Agreement, such term or provision shall be fully severable and this Liquidating Trust Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Liquidating Trust Agreement; and the remaining terms and provisions of this Liquidating Trust Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by severance thereof from this Liquidating Trust Agreement, and this Liquidating Trust Agreement shall be construed so as to limit any term or provision so as to make it a legal, valid, and enforceable provision, provided that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

-17-

9.4 **Notices**. All notices, requests, consents, and other communications hereunder shall be in writing and shall be addressed as follows:

(a) if to the Liquidating Trustee, Dennis S. Faulkner, Lain, Faulkner & Co., P.C., 400 North St. Paul Street, Suite 600, Dallas, Texas 75201 or such other address as such Liquidating Trustee will have furnished; and

(b) if to any Liquidating Trust Beneficiary, at the address determined as set forth in Section 9.2 of the Plan.

All such notices, requests, consents, and other communications shall be given to the Liquidating Trustee by facsimile, hand delivery, overnight delivery, or, to a Liquidating Trust Beneficiary, by First Class Mail, postage prepaid, and shall be deemed given when actually delivered (with respect to the Liquidating Trustee), or three business days after deposit in the U.S. mail if mailed (with respect to a Liquidating Trust Beneficiary).

9.5 **Counterparts**. This Liquidating Trust Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

9.6 **Construction**. The titles of the sections of this Liquidating Trust Agreement are for convenience of reference only and are not to be considered in construing this Liquidating Trust Agreement. Unless the context of this Liquidating Trust Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole; (b) references to one gender include all genders; (c) "or" has the inclusive meaning frequently identified with the phrase "and/or;" (d) "including" has the inclusive meaning frequently identified with the phrase "including, but not limited to," or "including, without limitation;" (e) references to "hereunder," "herein," or "hereof" relate to this Liquidating Trust Agreement as a whole; and (f) all references to "$" or "dollars" refer to United States dollars. Each accounting term not defined herein will have the meaning given to it under GAAP as interpreted as of the date hereof. Any reference in this Liquidating Trust Agreement to any statute, rule, regulation, or agreement shall be deemed to include such statute, rule, regulation, or agreement as it may be modified, varied, amended, or supplemented from time to time.

9.7 **Confidentiality**. The Liquidating Trustee shall, during the period that he serves in such capacity under this Liquidating Trust Agreement and following either the termination of this Liquidating Trust Agreement or such Liquidating Trustee's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which he has become aware in his capacity as Liquidating Trustee.

9.8 **No Bond Required**. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor trustee) shall be exempt from giving any bond or other surety in any jurisdiction.

9.9 **Retention of Jurisdiction**. The Court shall retain jurisdiction as set forth in Article XIV of the Plan over issues related to the enforcement or interpretation of this Liquidating Trust Agreement, including the determination of all claims, controversies, disputes, and issues

-18-

arising under or in connection with the Liquidating Trust or this Liquidating Trust Agreement, the management and administration of the Liquidating Trust, and for all of the purposes contemplated herein.

9.10 **Relationship to Plan**. The principal purpose of this Liquidating Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidating Trust Agreement incorporates and is subject to the provisions of the Plan. In the event any provision of this Liquidating Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provision of the Plan or the Confirmation Order shall control.

9.11 **Waiver**. Any of the terms, covenants, representations, warranties, or conditions of this Liquidating Trust Agreement may be waived only by a written instrument executed by or on behalf of the party hereto waiving compliance.

*[Remainder of Page Internationally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed as of the day and year first written.

**SAMUEL EVANS WYLY**,
As Grantor


By: _____
Name: _____




**DENNIS S. FAULKNER**,
As Liquidating Trustee


By: _____
Name: _____
Title: _____

US 3395211

# EXHIBIT 5

## Schedule of Rejected Executory Contracts
## and Unexpired Leases

Charitable Pledge to The Aspen Institute*

Charitable Pledge to Thanks-Giving Square*

Charitable Pledge to Third Church of Christ, Scientist*

*While the Debtor does not believe that these charitable pledges constitute executory contracts, he is rejecting them in an abundance of caution.

# EXHIBIT 6

# Deed of Release

DRAFT 10.15.2018

Dated _____ 2018

---

## DEED OF RELEASE, WAIVER, AND INDEMNITY

Sam-Side Trusts

---

THIS DEED is made the •   day of   •   2018

BETWEEN:

(1)   SAMUEL EVANS WYLY of  8523 Thackery Street, #  __ , Dallas, Texas 75225, ("**Sam Wyly**"), which expression includes, where the context admits, his personal representatives, heirs, executors, and other successors in title);

(2)   THE PERSONS specified in Schedule 1 below (together the "**Beneficiaries**", and each individually a "**Beneficiary**", which expressions include, where the context admits, their respective legally-appointed personal representatives);

(3)   FIRST NAMES TRUST COMPANY (ISLE OF MAN) LIMITED whose registered office is at  First Names House, Victoria Road, Douglas, Isle of Man, IM2 4DF, a company incorporated in the Isle of Man under company number  008035C ("**First Names**"); and

(4)   INTER-CONTINENTAL MANAGEMENT LIMITED whose registered office is at Douglas Chambers, North Quay, Douglas, Isle of Man, IM1 4LA, a company incorporated in the Isle of Man under company number 002499V ("**ICM**").

WHEREAS:

A.   This Deed is Supplemental to the instruments specified in Schedule 2 below.

B.   Sam Wyly is the settlor, or a beneficiary, of all the Trusts created by the instruments specified in paragraphs 1–5 of Schedule 2 below (together the "**Trusts**", and individually a "**Trust**").

C.   First Names is the present trustee of the Trusts created by the instruments specified in paragraphs 1–4 of Schedule 2 below and ICM is the present trustee of the Trust created by the instrument specified in paragraph 5 of Schedule 2 below.

D.   The Beneficiaries are all the issue of Sam Wyly who have attained full age as

of the date of this Deed, and as such issue are beneficiaries of the Trusts.

E.      By the Settlement Agreement specified in paragraph 6 of Schedule 2 below (the "**SEC Settlement Agreement**"), the United States Securities & Exchange Commission (the "**SEC**") agreed to accept payment in the sum of $198,118,825.16 (the "**SEC Settlement Amount**") by Sam Wyly (on behalf of himself and his bankruptcy estate), which payment has now been made in full and final satisfaction of the Judgment in Case No. 1:10-CV-05760-JPO, *Securities and Exchange Commission v. Wyly,* United States District Court for the Southern District of New York (the "**SEC Case**") and the SEC's Proof of Claim No. 17 filed in Case No. 14-35043-BJH11, United States Bankruptcy Court, Northern District of Texas (the "**Bankruptcy Case**").

F.      By the Plan Settlement Agreement specified in paragraph 7 of Schedule 2 below (the "**IRS Settlement Agreement**"), Sam Wyly (on behalf of himself and his bankruptcy estate) and the United States Internal Revenue Service (the "**IRS**") have agreed to a full and complete compromise and settlement of the IRS's Proof of Claim No. 18 filed in the Bankruptcy Case.

G.      Consummation of the IRS Settlement Agreement is dependent upon the distribution of assets from the Trusts to Sam Wyly or his bankruptcy estate to fund Sam Wyly's bankruptcy plan in the Bankruptcy Case (the "**Plan**") as contemplated in the IRS Settlement Agreement.

H.      First Names and ICM intend to seek approval from the High Court of the Isle of the Man to distribute assets from the Trusts for the purposes of the Plan, and to seek the Court's approval of this Deed.

I.      At the request of the Beneficiaries, and in consideration of Sam Wyly and the Beneficiaries entering into this Deed, the Trustees have agreed to waive their liens and rights over the assets of the Trusts so far as necessary to enable them to apply those assets to fund the Plan as provided in the IRS Settlement Agreement.

NOW THIS DEED WITNESSES as follows: -

1. <u>Interpretation</u>

1.1 In this Deed (including in the recitals hereto) the following words and phrases shall (where the context admits) have the meanings set out below:

| | | |
|---|---|---|
| "Associated Persons" | (a) | the directors, officers, employees, agents and advisers (past, present and future) of the Trustees and any Underlying Company; and |
| | (b) | the personal representatives, heirs and estates of the persons mentioned in (a) above |
| "Attorney" | | includes any barrister, solicitor or other person qualified to practise law |
| "Beneficiaries' Attorney" | | Stewart H Thomas of Hallett & Perrin PC, 1445 Ross Avenue, Suite 2400, Dallas, Texas 75202 or another Attorney identified by the Beneficiaries or any of them upon written notice executed by such Beneficiary or Beneficiaries |
| "Child/Unborn Beneficiary" | | any Beneficiary's child or more remote issue, whether or not in existence or of full legal capacity at the date of this Deed |
| "Claim" | | Any claim brought against any Trustee or Associated Person by any Child/Unborn Beneficiary |
| the "Manx courts" | | the courts of the Isle of Man |
| "Specified Liability or Expense" | | any liability, fee or expense of any kind, whether at law, in equity, under legislation or otherwise (and whether known or unknown, and whether ascertained or capable of being ascertained by Sam Wyly or the Beneficiary in question at the date of this Deed) in |

respect of:

(a)  the Trustees' conduct as a trustee during the course of their trusteeship of any of the Trusts;

(b)  any property owned or held (directly or indirectly) by any of the Trusts; or

(c)  the property, business and affairs of any Underlying Company,

and (without limiting or being limited by the foregoing) includes:

(i)  any liability for any tax or other fiscal imposition, and all fines, penalties and interest (if any) in respect of that liability; and

(ii)  all costs and expenses including reasonable Attorney's fees (including without limitation, allocated costs of internal counsel) and cost of settlement imposed, incurred or asserted in connection with any alleged liability, fee or expense, investigation, litigation or judgment.

| | |
|---|---|
| the "Trustees" | First Names and ICM and each of them individually |
| "Underlying Company" | any company or other entity shares or other securities of which are or were at any time owned or held, directly or indirectly, by any of the Trusts |

1.2  The masculine shall include the feminine and neuter and the singular shall include the plural and vice versa and words importing persons shall include

corporate bodies, firms and any entity as well as individuals.

1.3     The headings and captions to the clauses of this Deed are inserted for convenience of reference only and shall not affect the construction or interpretation of this Deed.

2.      Conditions Precedent

This Deed shall not take effect unless

(i)     the High Court of the Isle of Man makes an order to the reasonable satisfaction of the Trustees approving, authorising or directing the use of Trust assets to fund the Plan and any other relevant approvals from local government authorities are granted;

(ii)    the Trustees and the United States Department of Justice ("DOJ") reach a mutually agreeable understanding regarding distribution of assets held by the Trusts, the subsequent windup of the Trusts and the establishment of an escrow for the purpose of indemnifying the Trustees for certain Specified Liabilities and Expenses.

3.      Acknowledgement

3.1     Sam Wyly and each Beneficiary hereby acknowledges that he has been advised to seek independent legal advice regarding this Deed and whether to agree to it, and has either obtained separate such advice or has elected not to do so and has not relied on any representation made by either of the Trustees in entering into this Deed.

3.2     Further, to the extent that any conflict of interest may exist by and among the Beneficiaries and their issue, each Beneficiary has previously and hereby reaffirms his express waiver of any and all actual or potential conflicts of interest and acknowledges and understands that the Beneficiaries are being jointly represented by the Beneficiaries' Attorney upon the Beneficiaries' express waiver of any conflict of interest.

4.      Beneficiaries' Attorney

Each Beneficiary hereby unconditionally authorises the Trustees to accept and rely upon all and any written representations and requests received from the Beneficiaries' Attorney as representing the views and wishes of each and every Beneficiary without making further enquiry.

5.      Release, waiver and promise not to sue, indemnity and security

5.1     In consideration of the premises set forth above and other good and valuable consideration, Sam Wyly, (in his capacity as debtor-in-possession and on behalf of his bankruptcy estate, as well as in his personal capacity) and each Beneficiary hereby irrevocably and unconditionally fully and forever releases the Trustees and the Associated Persons from all or any Specified Liability or Expense.

5.2     Without prejudice to the above release, Sam Wyly (in his capacity as debtor-in-possession and on behalf of his bankruptcy estate, as well as in his personal capacity) and each Beneficiary hereby waives and forever discharges any claim or right of any kind which he may have against the Trustees and the Associated Persons, and undertakes and confirms that he will make no claim against the Trustees or any of the Associated Persons in respect of any Specified Liability or Expense.

5.3     Sam Wyly, Evan Wyly, Laurie Matthews, Lisa Wyly, Kelly Wyly O'Donovan, Andrew Wyly, and Christiana Wyly, jointly and severally, agree to indemnify and hold harmless each Trustee and each Associated Person from any Specified Liability or Expense that is attributable to a Claim and undertake to the Trustees and the Associated Persons that, if any Trust, Trustee or Associated Person incurs such a Specified Liability or Expense attributable to a Claim, then Sam Wyly, Evan Wyly, Laurie Matthews, Lisa Wyly, Kelly Wyly O'Donovan, Andrew Wyly, and Christiana Wyly will be jointly and severally liable to indemnify and keep such person fully indemnified against such Specified Liability or Expense attributable to a Claim, provided that the total amount paid as indemnification under this clause 5.3 shall not exceed the equivalent of US $2,000,000 (in 2018

dollars)[1] in the aggregate.

5.4 Notwithstanding anything to the contrary in this Deed, nothing in clauses 5.1, 5.2, or 5.3 above shall apply to a Specified Liability or Expense arising from actual fraud or willful misconduct on the part of any Trustee or Associated Person.

5.5

5.6 Clauses 5.1, 5.2 and 5.3 above are conditional upon the distribution of assets from the Trusts to Sam Wyly or his bankruptcy estate to fund the Plan as contemplated in the IRS Settlement Agreement and shall not have effect unless and until that distribution is made.

6. <u>Sam Wyly</u>

For the avoidance of doubt the parties agree that in entering into this Deed Sam Wyly is (unless otherwise expressly stated) acting solely in his personal capacity and not (a) as a debtor-in-possession or (b) on behalf of his bankruptcy estate or any successors thereto or assigns thereof.

7. <u>Notice of Claims</u>

The Trustees shall:

(a) give notice to Sam Wyly and the Beneficiaries' Attorney of the existence of any Claim within forty-five (45) days of learning of such Claim; and

(b) allow Sam Wyly or his designated Attorney and the Beneficiary's Attorney an opportunity for input into the defence of the Claim; or

(c ) give consideration as to whether they regard it as appropriate to allow Sam Wyly or his designated Attorney and the Beneficiaries' Attorney to conduct the defence of the Claim at Sam Wyly's or the Beneficiary's own expense.

8. <u>Third Parties</u>

For the avoidance of doubt, it is hereby declared that the Contracts

---

[1] **B**ased on the U.S. Bureau of Labor Statistics, Consumer Price Index for All Urban Consumers (CPI-U), U.S. City average series for all items, not seasonally adjusted.

(Rights of Third Parties) Act 2001 applies to this Deed and that accordingly each of the Associated Persons may in his own right enforce a term of this Deed which purports to confer a benefit on him.

9.   Severability

If any provision of this Deed is or becomes illegal, invalid or unenforceable in any jurisdiction, that shall not affect the validity or enforceability in that jurisdiction of any other provision of this Deed or the validity or enforceability in any other jurisdiction of that or any other provision of this Deed.

10.   Counterparts

This Deed may be executed in several parts, each of which shall be an original, but which shall together form a single deed.

11.   Notices

Any notice provided under the terms of this Deed by any Trustee to Sam Wyly or the Beneficiaries' Attorney shall be made in writing (including via email) to the following, or to such other person and address as provided to the Trustees in writing, and shall be effective upon delivery:

If to Sam Wyly:

Mr. James J. Lee
Ms. Becky Petereit
Vinson & Elkins
2001 Ross Avenue
Suite 3900
Dallas, TX  75201


If to the Beneficiaries' Attorney:

Stewart H. Thomas
Hallett & Perrin
1445 Ross Avenue
Suite 2400
Dallas, TX 75202

With a copy to:

> Keeley L Hennington
> Chief Financial Officer
> Highland Stargate, Ltd.
> P.O. Box 670709
> Dallas TX 75367

12.     <u>Governing law</u>

This Deed shall be governed by and construed in accordance with the law of the Isle of Man.

13.     <u>Submission to jurisdiction and confession of judgment</u>

13.1     Any dispute arising from or out of this Deed (including a dispute as to its validity) shall be brought solely in the Manx courts and the parties hereby submit to the exclusive jurisdiction of those courts.

13.2     Sam Wyly and the Beneficiaries expressly agree that they will not raise (and irrevocably waive) any objection on any grounds to the Manx courts being the forum for any proceeding relating to any such dispute, including lack of jurisdiction, *lis alibi pendens*, *forum non conveniens* or otherwise.

13.3     Any final judgment of the Manx courts relating to any such dispute shall be final, conclusive and binding and may be enforced in any other jurisdiction.

13.4     With regard to any proceedings to enforce such judgment, Sam Wyly and the Beneficiaries expressly agree that they will not raise (and irrevocably waive) any objection to any enforcement of a judgment of the Manx courts relating to any such dispute on any grounds; including lack of jurisdiction, *lis alibi pendens*, *forum non conveniens* or otherwise.

13.5     Without limiting (or being limited by) clause 13.3 above, Sam Wyly and each of the Beneficiaries irrevocably authorises any duly qualified Attorney appointed by any Trustee or Associated Person to appear o n behalf of Sam Wyly and each Beneficiary in any court of competent jurisdiction and confess a judgment against Sam Wyly, Evan Wyly, Laurie Matthews, Lisa Wyly, Kelly Wyly O'Donovan, Andrew Wyly, and Christiana Wyly, jointly and severally, without process, in favour of

any of the Trustees or Associated Persons who has obtained a judgment in the Manx courts for such amount (if any) as may then remain unpaid under such judgment, and to consent to immediate execution upon such judgment, **provided that** such duly qualified attorney must first give fourteen (14) days advance notice to Sam Wyly and the Beneficiaries' Attorney of the court and cause number in which such a judgment is sought.

14. <u>Effective Date</u>

This deed shall take effect when the condition set out at clause 2 above is satisfied.

IN WITNESS *etc*

DRAFT 10.15.2018

## SCHEDULE 1

### The Beneficiaries

(1)     EVAN ACTON WYLY of 6107 St. Andrews Dallas, TX 75205

(2)     LAURIE  LOUISE WYLY MATTHEWS of  6771 Lakefair Circle Dallas TX 75214

(3)     LISA LYN WYLY of 4144 Stanhope Ave., Dallas, TX 75205

(4)     KELLY WYLY O'DONOVAN of 570 Johnson Dr., Aspen, CO 81611

(5)     ANDREW DAVID SPARROW WYLY of 3916 Stonebridge Drive Dallas, TX 75204

(6)     CHRISTIANA  PARKER WYLY of 530 Juniper Ave. Boulder CO 80304

(7)     LUCY ROSE WYLY CONKLIN of 811 Saint Joe Street, Spearfish, SD 57783

(8)     MITCHELL EVAN WYLY of 2805 Amherst Ave. Dallas, TX 75225

(9)     McCARY WYLY GILBERT of 3916 Stanford Ave. Dallas, TX 75225

(10)    IAN ACTON MATTHEWS of 6771 Lakefair Circle Dallas TX 75214

(11)    STEWART  COPELAND  MATTHEWS of 6771 Lakefair Circle Dallas TX 75214

(12)    SARAH  ROSE  MATTHEWS of 6771 Lakefair Circle Dallas TX 75214

## SCHEDULE 2

### Instruments to which this deed is Supplemental

1.      A Trust Agreement dated 11 March 1992 and made between (1) Sam Wyly as settlor and (2) Lorne House Trust Company Limited as original trustee creating the Bulldog Non-Grantor Trust.

2.      A Trust Agreement dated 4 December 1992 and made between (1) Sam Wyly as settlor and (2) Credit Suisse Trustees (Isle of Man) Limited as original trustee creating the Delhi International Trust.

3.      A Trust Agreement dated 4 December 1992 and made between (1) Sam Wyly as settlor and (2) Pierson, Heldring & Pierson (Isle of Man) Limited as original trustee creating the Lake Providence International Trust.

4.      A Deed of Settlement dated 2 February 1994 and made between (1) Keith L. King as settlor and (2) Lorne House Trust Limited as original trustee creating the Bessie Trust.

5.      A Deed of Settlement dated 18 July 1995 and made between (1) Shaun F. Cairns as settlor and (2) Wychwood Trust Limited as original trustee creating the La Fourche Trust.

6.      That certain Settlement Agreement between (1) the SEC, (2) Sam Wyly on behalf of himself and his bankruptcy estate, and (3) the Sam-Side Relief Defendants as defined therein, made in the Bankruptcy Case and effective 29 September 2016 (the SEC Settlement Agreement).

7.      That certain Plan Settlement Agreement dated • 2018 between (1) Sam Wyly on behalf of himself and his bankruptcy estate, and (2) the IRS, made in the Bankruptcy Case (the IRS Settlement Agreement).

## Exhibit B

Proposed Confirmation Order Notice

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 14-35043 |
| | § | |
| SAMUEL EVANS WYLY, | § | (Chapter 11) |
| | § | |
| DEBTOR. | § | |
| | § | |

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING THE THIRD AMENDED CHAPTER 11 PLAN OF SAM WYLY (MODIFIED AS OF NOVEMBER 29, 2018) AND (II) OCCURRENCE OF THE EFFECTIVE DATE

**PLEASE TAKE NOTICE** that on June [•], 2019, the Honorable Barbara J. Houser, Chief United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of Texas (the "**Court**"), entered an order [Docket No. __] (the "**Confirmation Order**") confirming the *Third Amended Chapter 11 Plan of Sam Wyly (Modified as of November 29, 2018)* (as amended, modified, or supplemented, the "**Plan**") [Docket No. 2087].[1]

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____], 2019.

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan, as well as other documents filed in the Bankruptcy Case can be found on the docket of the Bankruptcy Case.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain release, exculpation, injunction, and related provisions in Article XIII of the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and Confirmation Order, and the provisions thereof, are binding on the Debtor, any holder of a Claim against the Debtor, and such holder's respective successors, assigns, and designees, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder or entity voted to accept the Plan.

---

[1] Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Plan and the Confirmation Order, the deadline for filing requests for payment of Administrative Claims and Professional Fee Claims shall be the first Business Day following sixty (60) calendar days after the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that from and after this date, if you wish to receive notice of filings in this case, you must request such notice with the clerk of the Bankruptcy Court and serve a copy of such request for notice on counsel to the Debtor, listed below. You must do this even if you filed such a notice prior to the Effective Date.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are encouraged to review the Plan and the Confirmation Order in their entirety.

Dated: June [__], 2019
Dallas, Texas

**VINSON & ELKINS LLP**

*/s/ [Draft]*_____
James J. Lee, SBT # 12074550
Paul E. Heath, SBT # 09355050
Rebecca L. Petereit, SBT # 24062776
Garrick C. Smith, SBT # 24088435
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel:  214.220.7700
Fax: 214.999.7787
jimlee@velaw.com; pheath@velaw.com
rpetereit@velaw.com; gsmith@velaw.com

**COUNSEL FOR THE DEBTOR**