

**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

*Michelle V. Larson*

**Signed October 28, 2021**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SAMUEL EVANS WYLY, | § | Case No. 14-35043 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER REGARDING
### CROSS-MOTIONS TO ENFORCE PLAN TERMS

Before this Court are cross-motions to enforce the terms of Samuel Evans Wyly's (the "**Debtor**") Third Amended Chapter 11 Plan (the "**Plan**")[1] and the Confirmation Order (as hereafter defined)[2] related thereto: (1) the Motion to Enforce Plan Terms (the "**Steele Motion**")[3] filed by Torie Steele and (2) the Motion to Enforce the Plan and Confirmation Order Against Torie Steele[4] (the "**Trustee Motion**" and, together with the Steele Motion, the "**Motions**") filed by Dennis

---

[1] ECF No. 2087.
[2] ECF No. 2142.
[3] ECF No. 2226.
[4] ECF No. 2228.

1

Faulkner, the Liquidating Trustee of the Samuel Evans Wyly Liquidating Trust (respectively, the "**Liquidating Trustee**" and the "**Liquidating Trust**").  In the Motions, Ms. Steele and the Liquidating Trustee advance differing arguments as to the interpretation of the Plan, the Confirmation Order, and several other documents incorporated therein.  For the reasons that follow, the Court will grant in part and deny in part each of the Motions.

**I.      Jurisdiction and Venue**

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). The bankruptcy court has authority to adjudicate this matter pursuant to the United States District Court for the Northern District of Texas Miscellaneous Order No. 33.  The Court further expressly retained jurisdiction over matters arising out of, and related to, this case pursuant to the Court's Order Confirming the Third Amended Chapter 11 Plan of Sam Wyly (the "**Confirmation Order**")[5] and the Final Decree Closing the Chapter 11 Case (the "**Final Decree**").[6]

**II.     Facts and Procedural Posture**

The facts of this case are almost entirely undisputed, which is fortunate, as the factual predicate for the Motions begins well in the past, with the marriage of Ms. Steele and the Debtor in 1978.  After thirteen years of marriage, Ms. Steele sought a divorce from the Debtor in 1991. In connection therewith, on September 23, 1991, the Superior Court of California, Los Angeles County (the "**Superior Court**") entered a divorce judgment (the "**Divorce Judgment**")[7] dividing marital property between Ms. Steele and the Debtor and providing for the Debtor's payment of

---

[5] ECF No. 2142 at 40, ¶ 108.
[6] ECF No. 2224 at 2–3.
[7] ECF No. 2242-3.  The Court admitted all exhibits offered as evidence for both parties.  Many of the relevant documents, including the Divorce Judgment, were admitted as evidence for both parties.  When citing to the exhibits on the docket, the Court will utilize the citation for Ms. Steele's exhibits filed at ECF No. 2242.

2

certain spousal and child support obligations to Ms. Steele. As a result of ongoing disputes related to the Divorce Judgment, on July 1, 1993, the Superior Court entered its Order Amending Judgment ("**OAJ**")[8] in an attempt to clarify the respective rights and obligations of the Debtor and Ms. Steele pursuant to the Divorce Judgment.

Specifically, and as relevant to the Motions, the OAJ, in ¶¶ 1–1.4, clarified certain spousal support obligations awarded to Ms. Steele requiring, *inter alia*, the Debtor to "serve as investment manager and counselor to [Ms. Steele]."[9] Pursuant to this duty, the OAJ provided that the Debtor would invest and manage, on Ms. Steele's behalf, $5 million, on which the Debtor guaranteed a 10% annual return.[10] The guaranteed return was made payable to Ms. Steele in monthly installments of $41,666.00 (the "**Monthly Payment**"), for a total remittance of $500,00.00 from the Debtor to Ms. Steele annually.[11] In lieu of a fee or other compensation for the Debtor's investment management services, the OAJ provided that, in the event the Debtor achieved a return on Ms. Steele's investment in excess of 10%, the excess return would be divided equally between the Debtor and Ms. Steele.[12] Furthermore, the OAJ required that the Debtor provide to Ms. Steele "written accountings" on at least a monthly basis of the status of Ms. Steele's investment, and such other information relative to the investment activities as Ms. Steele may request.[13] Finally, the OAJ provided that Ms. Steele retained the right to request termination or suspension of the Debtor's management of Ms. Steele's investment, either of which would require the Debtor to

---

[8] ECF No. 2242-3.
[9] *Id.* ¶ 1.
[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 1.1.
[13] *Id.* ¶ 1.3.

3

return to Ms. Steele her initial $5 million investment and any additional capital under the Debtor's management. [14]

Unfortunately, disagreements between the Debtor and Ms. Steele persisted over the ensuing years. Thus, on May 23, 2007, the Superior Court entered its Amended and Final Findings/Statement of Decision (the "**2007 Decision**"),[15] seeking for a second time to clarify the rights and responsibilities of the Parties pursuant to the Divorce Judgment and OAJ. As relevant here, the 2007 Decision set forth in more detail the Debtor's regular reporting requirements and the Debtor's reporting requirement upon Ms. Steele's exercise of her Right to Suspend. [16] At some time during 2007, the Debtor placed Ms. Steele's capital into an investment vehicle called Maverick Stable Partners, L.P. ("**Maverick**"), which was administered by Citco (Canada) Inc.[17] Ms. Steele's capital has been, and remains, invested in Maverick ever since.

On October 19, 2014, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code initiating the above-captioned bankruptcy case. On November 6, 2014, Ms. Steele filed her Complaint to Determine Nondischargeability of Debt (the "**Complaint**").[18] In the Complaint, Ms. Steele sought a determination that the Debtor's obligations to Ms. Steele as set forth in the Divorce Judgment, OAJ, and 2007 Decision were in the nature of domestic support and, therefore, nondischargeable.[19] Ms. Steele and the Debtor filed cross-motions for summary judgment on the claim asserted in the Complaint on December 12, 2014 and January 2, 2015, respectively.[20] Judge Houser held a hearing on the cross-motions for summary judgment on

---

[14] Hereinafter, the Court will refer to the above-described right to suspend the Debtor's investment management services and the return of her investment as the "**Right to Suspend**."
[15] ECF No. 2242-4.
[16] *Id.* § 3.B.4, 3.B.7.
[17] ECF No. 2226 at 5, ¶ 16; ECF No. 2228 at 2–3, ¶ 2.
[18] Adv. No. 14-3142, ECF No. 1.
[19] *See generally id.*
[20] Adv. No. 14-3142, ECF Nos. 9, 25.

February 2, 2015. Thereafter, on February 19, 2015, Judge Houser entered her Memorandum Opinion and Order granting Ms. Steele's motion for summary judgment and denying the Debtor's (the "**Nondischargeability Opinion**").[21] In the Nondischargeability Opinion, Judge Houser carefully described the factual and procedural history leading to the filing of the Complaint.[22] Judge Houser also carefully described the portions of the Divorce Judgment, OAJ, and 2007 Order relevant to Ms. Steele's nondischargeability action.[23] Importantly, Judge Houser defined the "first substantive provision" of the OAJ as the "**Investment Provision**," a term that the Court will adopt and continue to use for the remainder of this Memorandum Opinion.[24] Ultimately, Judge Houser found that "the *Investment Provision included in the [OAJ]* clearly establishes a debt that is in the nature of support" and that "the obligation *created by the Investment Provision*" was nondischargeable.[25] Judge Houser entered a Judgment (the "**Nondischargeability Judgment**") on March 2, 2015, in which the Court ordered that "the *Investment Provision in the OAJ* establishes a debt that is in the nature of domestic support in accordance with 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 101(14A) of the Bankruptcy Code."[26]

On November 19, 2018, the Debtor filed the Plan.[27] The Debtor classified Ms. Steele's "Allowed Unsecured Claim . . . that is entitled to the priority treatment provided under Bankruptcy Code § 507(a)(1)" as Class 1.[28] The Plan proposed to treat Ms. Steele's claim as follows:

> On the Effective Date, the Plan delegates to the Liquidating Trustee, and the Liquidating Trustee shall assume on behalf of the Liquidating Trust, the obligation to *perform and pay* the Class 1 Claim. The holder of the Class 1 Claim shall therefore receive from the Liquidating Trust on account of such Claim either: (i) the continued timely performance of

---

[21] Adv. No. 14-3142, ECF No. 30.
[22] *Id.* at 2–9.
[23] *Id.* at 2–7.
[24] *Id.* at 4. Which paragraphs of the OAJ were included in the Investment Provision is an issue central to the Motions and this Memorandum Opinion. The Court will discuss its findings on this question in detail below.
[25] *Id.* at 26 (emphasis added).
[26] Adv. No. 14-3142, ECF No. 34 at 2 (emphasis added).
[27] ECF No. 2087.
[28] *Id.* §5.2(a).

    the obligations of the Debtor as ordered in the Judgment entered in Adv. Proc. No. 14-03142-BJH (Adv. Proc. No. 14-03142 ECF 34) and the Order Regarding Motion To Determine Funds Are Not Property of the Estate (ECF 520) for and during the life of the Debtor and terminating immediately upon his death, or (ii) such other treatment upon which the Class 1 Creditor and the Liquidating Trustee, with approval of the IRS, shall agree after the Effective Date, without necessity of an order or other notice to and approval by the Bankruptcy Court.[29]

The Plan also designated Classes 2–4 and noted that only Classes 2 and 3 were impaired.[30] Ms. Steele's claim in Class 1 was unimpaired. Furthermore, attached to the Plan was the Liquidating Trust Agreement, which set forth the terms governing the establishment of the Liquidating Trust and the rights and responsibilities of the Liquidating Trustee.[31] Pursuant to the Liquidating Trust Agreement, the Liquidating Trustee owed "duties of good faith and loyalty to the Liquidating Trust and its beneficiaries in the exercise of his powers."[32] Pursuant to the Plan, the beneficiaries of the Liquidating Trust were the "holders of Allowed Claims in Classes 1–3."[33]

  On June 25, 2019, Judge Houser entered the Confirmation Order.[34] Thereafter, the Debtor filed his Notice of Occurrence of Effective Date Under the Plan on October 2, 2019, stating that the effective date of the Plan occurred, and the Liquidating Trust was established, the day prior.[35] From that date, the Liquidating Trustee made each of the required monthly distributions to Ms. Steele. On February 18, 2020, the Liquidating Trustee filed his Motion for Entry of a Final Decree Closing the Chapter 11 Case,[36] which was subsequently granted after receiving no objections on March 24, 2020.[37]

---

[29] *Id.* (emphasis added).
[30] *Id.* §§ 5.2(b)–(d), 5.3.
[31] ECF No. 2087 at 59–79.
[32] *Id.* at 74, ¶ 6.7.
[33] *Id.* at 32, ¶ 8.1.
[34] ECF No. 2142.
[35] ECF No. 2170.
[36] ECF No. 2222.
[37] ECF No. 2224.

On June 2, 2021, Ms. Steele filed the Steele Motion.[38] On June 22, 2021, the Liquidating Trustee filed his Motion to Reopen the Chapter 11 Case for the Limited Purpose of Enforcing the Plan and the Confirmation Order Against Torie Steele.[39] On the same day, the Trustee filed the Trustee Motion.[40] Ms. Steele filed her Response to the Liquidating Trustee's Motion to Reopen, in which she stated that she was unopposed to reopening the case.[41] Thus, this case was reopened on July 20, 2021 by agreed order.[42] On August 27, 2021, the Parties filed their Stipulation of Briefing and Hearing Schedule, setting the deadline for response briefs as September 13, 2021, and stipulating that no reply briefs would be filed.[43] Both the Liquidating Trustee and Ms. Steele timely filed their response briefs on September 13, 2021.[44] The Court held a hearing on the Motions on September 23, 2021 (the "**Hearing**"), at the conclusion of which the Court took this matter under advisement.

## IV. Analysis

As noted above, the preceding facts and procedural background are almost entirely undisputed by the Parties. The Parties' sole request of this Court is to enforce the Plan in accordance with their competing interpretations of a series of documents consisting of: (1) the Divorce Judgment; (2) the OAJ; (3) the 2007 Order; (4) the Nondischargeability Opinion; (5) the Nondischargeability Judgment; (6) the Plan; and (7) the Confirmation Order. In interpreting these documents, the Court finds it appropriate to begin at the end, with the Plan and the Confirmation

---

[38] ECF No. 2226.
[39] ECF No. 2227.
[40] ECF No. 2228.
[41] ECF No. 2229.
[42] ECF No. 2231.
[43] ECF No. 2237.
[44] ECF Nos. 2239 and 2240, respectively. Hereinafter, the Court shall refer to these filings as the "**Trustee Response**" and the "**Steele Response**."

Order. The Confirmation Order bears little on the substance of the Parties' argument, thus the Court will first address the Plan.

The Parties' primary dispute can be succinctly stated as a dispute over the meaning of the Liquidating Trust's assumed obligation to "perform and pay" Ms. Steele's claim pursuant to the Plan.[45] Ms. Steele asserts that the obligation to "perform," specifically, requires the Liquidating Trust to provide the full suite of rights afforded to Ms. Steele pursuant to the Divorce Judgment, OAJ, and 2007 Order. In particular, Ms. Steele alleges that the Liquidating Trust has refused to *perform* the obligation to provide monthly and annual reporting, to honor Ms. Steele's Right to Suspend, to provide "full health, medical and hospital coverage," and to pay Ms. Steele's health, medical, and hospital expenses in excess of $100,000.00.[46] The Liquidating Trustee, however, argues that the Liquidating Trust's only obligation to Ms. Steele is to make the required monthly distributions to her and to perform the split of any annual earnings in excess of the guaranteed 10% return.

Bankruptcy courts interpret bankruptcy plans in accordance with principles of contract interpretation.[47] The Plan provides, and neither Party disputes, that the Plan should be interpreted in accordance with Texas law.[48] "In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless."[49] Furthermore, the Fifth Circuit has recognized that, in Texas, specific contractual provisions control general provisions.[50] Ordinarily, contract interpretation begins within the "four

---

[45] ECF No. 2087 at 20, § 5.2.
[46] ECF No. 2226 ¶ 23. Ms. Steele also requested other relief, including damages from an alleged failure to honor the Right to Suspend, which will be discussed below.
[47] *LRI III, Ltd. v. Halla (In re LRI III, Ltd.)*, 464 Fed. App'x 263, 267 (5th Cir. 2012).
[48] ECF No. 2087 at 54, § 15.12.
[49] *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).
[50] *Mesdag v. Nancy Sue Davis Trust (In re Davis Offshore, L.P.)*, 644 F.3d 259, 266 (5th Cir. 2011) (citing *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 329 S.W.3d 628, 640–41 (Tex. Ct. App. 2010)).

corners" of the document, and the Court only consults extrinsic evidence when the terms of the contract are ambiguous.[51] A contract is considered ambiguous when it is reasonably susceptible of more than one interpretation.[52] "Once an ambiguity arises, the court may consider the parties' interpretation of the contract and admit extraneous evidence to determine the true meaning of the instrument."[53]

Here, the Plan provision in question is ambiguous. The Plan requires the Liquidating Trust to "perform and pay" Ms. Steele's claim such that she receives on account of her claim "the continued timely performance of the obligations of the Debtor as ordered in the [Nondischargeability Judgment] . . . for and during the life of the Debtor and terminating immediately upon his death."[54] The Plan does not define the phrase "perform and pay," and furthermore does not use the same or a similar phrase with regard to any of the other classes of claims therein.[55] Instead, the Plan refers to extrinsic documents to supply the extent to which the Liquidating Trust must "perform and pay" the Debtor's obligations. Thus, both because the provision in question is ambiguous and because the Plan itself refers to extrinsic evidence, the Court must refer to such extrinsic documents.

The Plan refers expressly to the Nondischargeability Judgment in defining to what extent the Liquidating Trust has assumed the Debtor's obligation to "perform and pay" Ms. Steele's

---

[51] *Vanguard Operating, LLC v. Klein (In re Vanguard Natural Res., LLC)*, 624 B.R. 400, 424–25 (Bankr. S.D. Tex. 2020) (citing *Dean v. City of Shreveport*, 438 F.3d 448, 460–61 (5th Cir. 2006)); *LRI*, 464 Fed. App'x at 267.
[52] *LRI*, 464 Fed. App'x at 267 (citing *Int'l Turbine*, 278 F.3d at 497).
[53] *Id.* (quoting *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008)) (internal quotations omitted).
[54] ECF No. 2087 at 20, § 5.2(a). Section 5.2(a) of the Plan also provides that the Liquidating Trust must "perform and pay" in accordance with the Order Regarding Motion to Determine Funds are Not Property of the Estate this Court entered on March 23, 2015. [ECF No. 520.] Therein, the Court ordered, in relevant part, that Ms. Steele's initial investment of $5 million was *not* property of the bankruptcy estate, that the Debtor was required to disburse $101,234 to Ms. Steele on account of unpaid Monthly Payments, and that the Debtor was required to continue making the Monthly Payments in accordance with the OAJ. [*Id.* at 2–3.] Neither the status of Ms. Steele's capital as her separate property nor the Liquidating Trust's obligation to continue making the Monthly Payments has been disputed in the Motions.
[55] *See generally* ECF No. 2087.

claim. As briefly discussed above, Judge Houser ordered that "the Investment Provision included in the [OAJ] establishes a debt that is in the nature of domestic support" and further ordered that "the aforementioned Investment Provision is a debt which is not dischargeable."[56] The term "Investment Provision" is not separately defined in the Nondischargeability Judgment. Thus, the Court turns to the Nondischargeability Opinion for such a definition. In the Nondischargeability Opinion, Judge Houser defined the Investment Provision as "[t]he first substantive provision of the [OAJ]" that "obligated [the Debtor] to act as 'investment manager and counselor' to [Ms. Steele] for life."[57] Judge Houser begins the next sentence, importantly, with "*specifically*," before going on to describe the obligations created by the OAJ in ¶¶ 1–1.4.[58] The Court therefore finds that the definition Judge Houser gave to the Investment Provision encompasses each of these subparagraphs within the OAJ, not just ¶ 1. Further supporting this finding, Judge Houser began the next paragraph in the Nondischargeability Opinion by stating that "[t]he [OAJ] imposed several *other* obligations" on Ms. Steele and the Debtor.[59] Judge Houser's language here serves to set the previously-described obligations—the Investment Provision—apart from the obligations set forth in the remainder of the OAJ.[60] Thus, the Court finds that the Plan assigned to the Liquidating Trust the obligations set forth in the Investment Provision as Judge Houser defined it: paragraphs 1 through 1.4 of the OAJ.

The Court is admittedly puzzled as to the Liquidating Trustee's argument on this point. On the one hand, the Liquidating Trustee argues that "the Liquidating Trustee and the Liquidating Trust are bound by the terms of the Plan, the Confirmation Order, and the Liquidating Trust

---

[56] Adv. No. 14-3142, ECF No. 34 at 2.
[57] Adv. No. 14-3142, ECF No. 30 at 4 (citing the OAJ, ECF No. 2242-3, ¶ 1).
[58] *Id.* (emphasis added).
[59] *Id.* at 5.
[60] This paragraph beginning Judge Houser's description of the "other obligations" pursuant to the OAJ begins with a description of ¶ 2, and continues to describe each paragraph of the OAJ sequentially. *Id.* at 5–6.

Agreement, *not the Order Amending Judgment*."[61] On the other, the Liquidating Trustee states that "Section 5.2 [of the Plan] provides that (a) the Liquidating Trust will continue to pay the Guaranteed Return and (b) acknowledges that the Invested Capital is not property of the Estate."[62] Section 5.2 of the Plan, however, does not so state. That section obligates the Liquidating Trust to "perform and pay" Ms. Steele's claim in accordance with the *Nondischargeability Judgment* (and, by extension, the Nondischargeability Opinion).[63] At the very heart of the Nondischargeability Opinion, however, is the OAJ of which the Liquidating Trustee purports to be free. Although it is true that the Liquidating Trust is not bound by *the entirety* of the OAJ, this Court may not completely disregard it, as doing so would render the Nondischargeability Opinion and, therefore, the Plan, entirely unworkable as to the performance and payment of Ms. Steele's claim.

Further puzzling the Court is the Liquidating Trustee's apparent cherry-picking of those parts of the Investment Provision he appears to accept and those by which the Liquidating Trust purports not to be bound. The Liquidating Trustee does not dispute that the Liquidating Trust is obligated to make the Monthly Payments pursuant to ¶ 1 of the OAJ.[64] The Liquidating Trustee also emphatically asserts the Liquidating Trust's right to reimbursement of the Monthly Payments from the actual earnings on Ms. Steele's investment, as well as the Liquidating Trust's right to half of any earnings over the guaranteed 10% return pursuant to ¶ 1.1 of the OAJ.[65] Nevertheless, the Liquidating Trustee vehemently disagrees with Ms. Steele's assertion that the Liquidating Trust is

---

[61] ECF No. 2240 ¶ 4.
[62] *Id.* ¶ 6.
[63] ECF No. 2087 § 5.2(a).
[64] *See, e.g.*, ECF No. 2228 ¶ 23 ("Since the Effective Date and continuing through today, the Liquidating Trust has performed its obligations under the Plan by paying each monthly advance of the Guaranteed Return to Ms. Steele in the same manner done prior to and during the Case."); ECF No. 2240 ¶ 6 ("Section 5.2 provides that (a) the Liquidating Trust will continue to pay the Guaranteed Return and (b) acknowledges that the Invested Capital is not property of the Estate.").
[65] ECF No. 2228 at 15–16.

obligated to observe her Right to Suspend pursuant to ¶ 1.4 of the OAJ. Thus, the Liquidating Trustee appears to be happy to accept *certain* of the responsibilities of the Investment Provision and likewise to accept the *benefit* to the Liquidating Trust of ¶ 1.1, but wishes the Court to disregard the remaining duties of reporting and the Right to Suspend. Such a position is entirely inconsistent with Judge Houser's definition of the Investment Provision and with well-established principles of contract interpretation.

The Court's finding, however, is not a total victory for Ms. Steele. As the Court stated previously: the Investment Provision encompasses the entirety of ¶¶ 1–1.4 of the OAJ, but *only* those paragraphs. Ms. Steele urges this Court to order that the Liquidating Trust is obligated under the Plan to provide medical insurance to Ms. Steele pursuant to ¶ 3 of the OAJ and to reimburse her medical expenses over $100,000.00 pursuant to ¶ 3.2 of the OAJ.[66] Ms. Steele also seeks reimbursement of her attorney's fees in bringing the Steele Motion pursuant to ¶ 7 of the OAJ.[67] Each of these paragraphs, however, are separate from the Investment Provision and were not deemed to be in the nature of spousal support in the Nondischargeability Opinion and the Nondischargeability Judgment. As such, the Liquidating Trust's obligation to perform and pay Ms. Steele's claim in accordance with the Nondischargeability Judgment does *not* include the obligation to observe the OAJ beyond the Investment Provision.[68]

The Investment Provision as written in the OAJ, however, is not the end of the story. As previously discussed, the Superior Court entered the OAJ to memorialize a settlement between the Debtor and Ms. Steele as to their specific rights and obligations pursuant to the Divorce

---

[66] ECF No. 2226 ¶¶ 23, 26.
[67] *Id.* ¶ 28.
[68] It is noteworthy to mention that Ms. Steele admitted during her testimony at the Hearing that her medical insurance has not been paid by the Debtor or the bankruptcy estate since at least 2014.

Judgment.[69]  Despite this settlement, the Debtor and Ms. Steele returned to the Superior Court in 2007, yielding the 2007 Order.  As Judge Houser noted in the Nondischargeability Opinion, the 2007 Order "resolved claims between [Ms. Steele and the Debtor] involving the application of the Investment Provision to the complex dealings actually undertaken by the parties after entry of the [OAJ]."[70]  Judge Houser was called upon to interpret the 2007 Order with an eye toward determining whether Ms. Steele and the Debtor intended the Investment Provision to be in the nature of spousal support for nondischargeability purposes.  The Court's present task, however, is not so complicated.  As the Superior Court noted in the 2007 Order, "the OAJ is straightforward and unambiguous as it was originally written and was to be performed."[71]  The Court agrees and further finds that the Superior Court only added to the clarity in the 2007 Order.

As discussed above, the Parties do not appear to meaningfully dispute the meaning of any of the language of the Investment Provision or the 2007 Order.  Thus, the Court need not reinterpret documents that appear to have been interpreted several times over already.  In summary, the Court hereby finds that the Plan's requirement that the Liquidating Trust perform and pay Ms. Steele's claim incorporates into the Plan terms the entirety of the Investment Provision as set forth in the OAJ.  The Plan does *not* require that the Liquidating Trust comply with any portion of the OAJ outside of the Investment Provision, including, but not limited to, the Debtor's prior obligation to provide medical insurance to Ms. Steele, to reimburse Ms. Steele's medical expenses above $100,000.00, and to reimburse Ms. Steele's attorney's fees in seeking enforcement of the OAJ.

Having established what the Investment Provision, the 2007 Order, and the Plan obligate the Liquidating Trust to assume, the Court must now address several other requests for relief raised

---

[69] ECF No. 2242-3 at 1–2.
[70] Adv. No. 14-3142, ECF No. 30 at 6.
[71] ECF No. 2242-4 at 4–5.

in the Motions. In the Steele Response, Ms. Steele stated that she and the Debtor agreed to use an account with BBVA Compass Bank (the "**Compass Account**") to facilitate the Right to Suspend and the annual earnings split.[72] At the Hearing, Ms. Steele, through her counsel, conceded that the use of the Compass Account was merely a convenience for herself and the Debtor, but not *required* pursuant to the Investment Provision or the 2007 Order. Moreover, Ms. Steele, again through counsel, stated that the larger issue with regard to the Compass Account was the Liquidating Trustee's refusal to recognize her Right to Suspend, as Ms. Steele and the Debtor intended primarily to use the Compass Account to "park" Ms. Steele's capital in the event that she elected to exercise her Right to Suspend. The Court agrees with Ms. Steele insofar as she conceded that the Compass Account was a convenience rather than a requirement. No such account is required pursuant to the Investment Provision or the 2007 Order. As such, the Court will not order that the Liquidating Trust utilize the Compass Account or, for that matter, any other specific account absent an agreement reached between the Parties.[73]

Next, a significant portion of testimony was dedicated to the issue of the form of the monthly reporting to be provided to Ms. Steele. Ms. Steele testified to receiving a specific form of monthly reporting (the "**Custom Report**") from the Debtor[74] and, at least on one occasion, from the Liquidating Trustee, that showed certain information about Ms. Steele's investment and summarized the Monthly Payments made as of the date of the respective Custom Report.[75] The

---

[72] ECF No. 2239 ¶ 20–21.
[73] The Court notes that § 5.2 of the Plan allows the Parties to agree upon such matter "with approval of the IRS, . . . without necessity of an order or other notice to and approval by the Bankruptcy Court." [ECF No. 2087 § 5.2(a).]
[74] It became evident at the Hearing that the Debtor delegated, *inter alia*, the reporting tasks under the Investment Provision to an individual employed by his "family office" named Keeley Hennington. The propriety of this delegation was not meaningfully disputed by the Parties. As such, the Court, for simplicity's sake in this Memorandum Opinion, will treat actions by Ms. Hennington and the Debtor's "family office" as actions of the Debtor through delegation.
[75] *See* ECF No. 2242-12 at 3 for a copy of the Custom Report for June 2020 that was admitted into evidence at the Hearing as Ms. Steele's Exhibit 12. Ms. Steele's Exhibit 12 also included email correspondence from the Liquidating

14

Liquidating Trustee, however, disputes that the Liquidating Trust was under any obligation to continue to create and provide the Custom Report. The OAJ, in ¶ 1.3, provides that the Debtor "upon request by [Ms. Steele] . . . shall promptly . . . provide . . . other or further facts, details and information about the present nature and status of the investments being made of [Ms. Steele's] capital."[76] The Court hereby finds that the Liquidating Trust is not obligated to create and provide the Custom Report to Ms. Steele. The only additional information provided in the Custom Report is, as mentioned above, a listing of the Monthly Payments as of the date thereof. The Court finds that this information does not fall within the scope of ¶ 1.3 of the Investment Provision and, as such, the Liquidating Trust did not adopt the obligation to provide it.[77] To be clear, this finding does *not* abrogate the Liquidating Trust's obligation to provide a written monthly accounting to Ms. Steele pursuant to the Investment Provision and the 2007 Order. Thus, the Liquidating Trust remains obligated to provide written monthly accountings to Ms. Steele.

Ms. Steele also requested that this Court order the Liquidating Trust to provide proof of sufficient liquidity to comply with her Right to Suspend. In essence, Ms. Steele seeks assurance from the Liquidating Trust of its financial wherewithal to remit to her the entirety of her investment should she seek to exercise her Right to Suspend. The Court finds absolutely no support for this request in the Investment Provision or the 2007 Order. Neither of these documents obligated the Debtor to report, periodically or otherwise, on his personal finances. As described above, the Debtor's reporting requirements relate only to the investment of Ms. Steele's capital and earnings

---

Trustee indicating that the attached Custom Report was "the form of report [Ms. Hennington] said she used to send . . . revised slightly to fit the [Liquidating] Trust." *Id.* at 1.

[76] ECF No. 2242-3 ¶ 1.3. The 2007 Order provided only that the Debtor was obligated to provide "a monthly accounting" without further discussion or interpretation of the OAJ.

[77] Nevertheless, the Court is compelled to reiterate that the Liquidating Trust has provided the form of report at least once already and conceded at the Hearing that the preparation of the form of report is not complicated nor time consuming. Thus, the Court is left questioning why the Liquidating Trust has objected to providing the Custom Report moving forward.

thereon. In fact, the Investment Provision explicitly addressed the possibility that the Debtor was illiquid at the time of the exercise of the Right to Suspend by holding him "strictly liable to [Ms. Steele] for guaranteeing that upon her demand for return of capital, [Ms. Steele] shall promptly receive all of the capital."[78] Finally, the 2007 Order, despite specifically clarifying the Right to Suspend, made no mention of any liquidity reporting requirement.[79] Because the Debtor was under no obligation to provide proof or other reporting on his liquidity, the Liquidating Trust could not have assumed such a duty pursuant to the Plan. Thus, the Court finds that Ms. Steele is not entitled to any reporting as to the Liquidating Trust's liquidity. Even so, the Liquidating Trustee indicated in the Trustee Response that the Liquidating Trust "has over $33 million of cash" and that the Internal Revenue Service is the only other remaining beneficiary of the Liquidating Trust. Ms. Steele did not challenge this assertion, nor did her counsel seek to question the Liquidating Trustee at the hearing as to the Liquidating Trust's liquidity.

Ms. Steele's final request for relief is a request for damages for an alleged failure to observe her Right to Suspend. Ms. Steele alleges that the balance in the account held by Maverick dropped below $5 million as of both January 31 and February 28, 2021.[80] Ms. Steele further alleges that, had she received the written monthly accountings to which she was entitled pursuant to the Investment Provision, she would have exercised her Right to Suspend, triggering the Liquidating Trust's obligation to remit $5 million to her. Ms. Steele thus argues that she is entitled to damages from the Liquidating Trust in "an amount equal to the difference in $5 million and the amount in her account as of the date that Steel [sic] would have exercised her [Right to Suspend] . . . had the Liquidating Trustee properly recognized such right."[81] The Court finds that such a request is well

---

[78] ECF No. 2242-3 ¶ 1.4.
[79] *See* ECF No. 2242-4 at 12–13.
[80] ECF No. 2226 ¶ 19.
[81] *Id.* ¶ 24.

16

beyond the stated scope of the Motions, which purport to seek enforcement of the terms of the Plan. Additionally, the Court makes no finding as to the propriety of Ms. Steele's claims, but finds that the evidentiary record developed at the Hearing is wholly insufficient to establish that Ms. Steele is entitled to damages from the Liquidating Trust.

The Liquidating Trustee also requests additional relief from the Court. The Liquidating Trustee alleges that $362,755.01, representing invested funds in excess of $5 million as of December 31, 2020, were placed in an escrow account by Maverick due to Ms. Steele's refusal to transfer legal ownership of the Maverick account to the Liquidating Trust. The Liquidating Trustee argues that those funds are property of the Liquidating Trust pursuant to the Investment Provision and that Maverick should be ordered to release such funds to the Liquidating Trust. Ms. Steele, somewhat more tongue-in-cheek than the Court would deem appropriate, stated in the Steele Response that she "has no problem with the [Liquidating Trust] receiving this sum, so long as all of her rights in the [OAJ] are met."[82] Thus, it appears that there is no conflict as to the Liquidating Trust's entitlement to these funds, raising questions as to Ms. Steele's "opposition" to the Liquidating Trustee's request.[83] Nevertheless, and to the extent any dispute remains, the Court finds that, pursuant to the terms of the Investment Provision and the 2007 Order, the Liquidating Trust is entitled to the escrowed funds described above, and to the extent Maverick has demanded Court approval of the change of any legal ownership of the account to the Liquidating Trustee, it is hereby so ordered.

As a final note, the Court expresses some concern with the implications of these findings in terms of the Liquidating Trustee's fiduciary duties to *all* creditors. As previously discussed, the

---

[82] ECF No. 2239 ¶ 38.
[83] The Court notes here that some amount of "gamesmanship" appears to have occurred between the Parties in connection with Ms. Steele's attempts to enforce, and the Liquidating Trust's interpretation of its compliance with, the Plan. The Court sincerely hopes that this Memorandum Opinion and Order brings such actions to a definitive end.

Liquidating Trust Agreement assigns duties of good faith and loyalty to the Liquidating Trustee with regard to the Liquidating Trust and the Debtor's creditors, each of whom, including Ms. Steele, is a beneficiary of the Liquidating Trust. The OAJ and the 2007 Order, on the other hand, assigned discrete fiduciary duties to *the Debtor* with regard to *Ms. Steele*.[84] The Court recognizes that the effect of this Memorandum Opinion is to confirm that certain of those discrete fiduciary duties have been delegated to the Liquidating Trust pursuant to the terms of the Plan, which entitles Ms. Steele to certain disbursements and rights that are not afforded to other creditors. The Court remains confident that the Liquidating Trustee's execution of the duties described in those documents will not result in a breach of his duty of loyalty and will be carried out in good faith, such that the Liquidating Trustee will not run afoul of his duties to the Liquidating Trust and the other beneficiaries. Further to this point, the Court finds reassurance in the 2007 Order, in which the Superior Court found that the Debtor had provided adequate investment advice simply by placing Ms. Steele's capital with Maverick.[85] Ms. Steele testified at the Hearing that, since at least 2008, her investment has remained with Maverick and did not dispute the propriety of that investment. Thus, by maintaining Ms. Steele's capital with Maverick, the Court's concerns about the provision of "investment advice" by the Liquidating Trust are assuaged.

## V.     CONCLUSION

From 2007 until the Debtor filed this bankruptcy case in 2014, it appears to this Court that the Debtor and Ms. Steele had reached, with some court intervention, a tenuous peace amongst themselves with regard to their divorce. That tenuous peace continued, to some extent, despite the Debtor's bankruptcy filing in 2014. With the appointment of the Liquidating Trustee, that peace

---

[84] *See, e.g.*, ECF No. 2242-3 ¶ 1 ("THE COURT ORDERS that . . . [the Debtor] shall serve as investment manager and counselor to . . . [Ms. Steele] in which capacity [the Debtor] *as fiduciary for* [Ms. Steele] . . . .").
[85] ECF No. 2242-4 at 8–9, 10–11.

was broken necessitating yet another judicial intervention to re-emphasize the Parties' respective rights and obligations. The Court was presented with no reason to disrupt the prior arrangement in light of the governing documents, testimony, and other evidence produced at the Hearing. The Court finds that any ambiguity in the Plan language as to what constitutes the Liquidating Trust's "performance and payment" of Ms. Steele's claim is easily remedied by reference to the Nondischargeability Opinion, the OAJ, and the 2007 Order. For the avoidance of doubt, the Court hereby finds as follows:

- The Plan requires the Liquidating Trust and the Liquidating Trustee to perform and pay Ms. Steele's claim in accordance with the Investment Provision contained in the OAJ, as clarified by the 2007 Order;
- The Investment Provision is limited to ¶¶ 1 through 1.4 of the OAJ, including, but not limited to, the Right to Suspend and monthly and annual reporting requirements as set forth therein;
- The Plan *does not* require the Liquidating Trustee to perform or pay any obligation in the OAJ or the 2007 Order beyond the Investment Provision, including, but not limited to, providing Ms. Steele with health insurance or reimbursing Ms. Steele for medical expenses or attorney's fees;

Based upon the foregoing, it is hereby:

**ORDERED** that the Motions are each **GRANTED IN PART** and **DENIED IN PART** in accordance with this Memorandum Opinion; it is further

**ORDERED** that the Parties shall meet and confer and take all steps necessary to facilitate each Party's prompt compliance with this Memorandum Opinion, including transferring legal ownership of the account in which Ms. Steele's investment is held to the Liquidating Trust for the benefit of Ms. Steele; it is further

**ORDERED** that the Parties shall bear their own attorneys' fees; it is further

**ORDERED** that any relief requested by any Party, not expressly granted in this Memorandum Opinion, is hereby **DENIED**, except that nothing in this Memorandum Opinion

shall be construed as forbidding the Parties from reaching consensual resolution as to any relief denied herein; and it is further

      **ORDERED** that this Court shall retain jurisdiction over any matters arising from or related to the implementation, interpretation, or enforcement of this Memorandum Opinion

**###END OF ORDER###**
